JUDGE JONES

Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiffs*

**08 CV 00168**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROOKLYN COMMUNITY MANAGEMENT LLC,
GROSS CARE INC. and SUMNER PLACE LLC, d/b/a
SUMNER HEALTH PROVIDERS,

                    Plaintiffs,

         - against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
JOEL I. KLEIN as CHANCELLOR OF THE NEW
YORK CITY DEPARTMENT OF EDUCATION, AVA J.
MOPPER as DIRECTOR OF THE OFFICE OF
RELATED AND CONTRACTUAL SERVICES OF THE
NEW YORK CITY DEPARTMENT OF EDUCATION,
DAVID N. ROSS as EXECUTIVE DIRECTOR OF THE
DIVISION OF CONTRACTS AND PURCHASING OF
THE NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, THOMAS R.
FRIEDEN, M.D. as COMMISSIONER OF THE NEW
YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, NEW YORK STATE
EDUCATION DEPARTMENT, RICHARD P. MILLS as
COMMISSIONER OF THE NEW YORK STATE
EDUCATION DEPARTMENT, NEW YORK STATE
DEPARTMENT OF HEALTH, RICHARD F. DAINES,
M.D. as COMMISSIONER OF THE NEW YORK
STATE DEPARTMENT OF HEALTH,

                    Defendants.

---

**VERIFIED COMPLAINT**

RECEIVED JAN 09 2008 U.S.D.C. S.D.N.Y.

Plaintiffs Brooklyn Community Management LLC ("BCM"), Gross Care Inc. ("Gross Care") and Sumner Place LLC, d/b/a Sumner Health Providers ("Sumner"), for their complaint, hereby aver:

### Nature of the Action

1.     The City of New York and the Department of Education receive hundreds of millions of dollars a year in federal assistance for its special education programs.  These funds are supposed to be used to provide handicapped children with special education services as part of the federal mandate that each child must be provided with a free, appropriate public education. Plaintiffs have been dedicated and conscientious providers of special education related services to more than 8,000 New York City handicapped children.  This specialized instruction is costly, and the defendants, and especially the New York City Department of Education (the "DOE"), must shoulder this financial burden.

2.     Unfortunately, the defendants, led by the DOE, have embarked on a planned and meticulous scheme to save money on these special education programs at the dear cost to handicapped children.  The tactics include unreasonable delay in reimbursing providers and in trumped up charges of impropriety aimed at disqualifying providers from delivering reimbursable services.  By disqualifying providers, especially in the middle of a school year, the defendants deprive children of their special education because there are not enough qualified substitute therapists to provide these services.

3.     The plaintiffs provide special education services to 893 New York City handicapped students, half of whom are the most severely handicapped cases.  Almost all of these children attend at least two and three sessions per week.  In order to deprive these special children of their sorely needed instruction, the DOE has disqualified plaintiffs from providing services to these

students and has taken egregious steps to try to bankrupt the plaintiffs and deny these children the free public school education the federal government has financed.

4.    The DOE has engaged in this plan by asserting trumped up allegations of false billing against plaintiff BCM.  Between 2004 and 2007, BCM provided 5,000 weekly sessions of special education services to more than 2,300 children and billed the DOE $25 million.  Yet, on December 11, 2007, the DOE concluded that because BCM improperly billed $450 in connection with a single child over an eight-week period in 2006, BCM should be totally disqualified from doing business with the DOE.  To date, DOE has withheld $1.4 million in reimbursements for work BCM has done between 2006 and 2007 all because of this four hundred fifty dollar issue.

5.    Moreover, to further support its outrageous position, in November 2007 the DOE reported to the Internal Revenue Service that BCM's manager owed penalties for unpaid employment taxes in 2001 (which is being vehemently challenged) and has disparaged BCM by telling dozens of other special education providers that BCM is unfit to provide services.

6.    The DOE's disqualification of BCM has already caused over 1,500 handicapped children to lose their special education services.  But the DOE is not satisfied to merely deprive these 1,500 children with an appropriate education.  They seek to deprive another 893 children of their special education services by withholding more than $1,000,000 in reimbursement to plaintiffs Gross Care and Sumner merely because they share BCM's facilities and have some ownership overlap with BCM.

7.    Unless this court orders the DOE to immediately fund Gross Care and Sumner, they will have to cease operations and nearly 900 children will lose their special education services in the middle of the school year.

8.    Plaintiffs bring this action under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, for injunctive relief and monetary relief incidental to injunctive relief, and seek to compel the defendants to reimburse BCM for special education services it provides to New York City handicapped children and to reimburse Gross Care and Sumner for their past and continued special education services.

### · The Parties

9.    Plaintiff Brooklyn Community Management LLC is a New York limited liability company with offices in Kings County, New York.  Between 2003 and 2007, BCM employed more than 100 therapists and provided special education services to more than 8,000 New York City handicapped children.  George Lebovits, a/k/a Israel Lebovits, is a manager of BCM.

10.    Plaintiff Gross Care Inc. is a New York corporation with a principal place of business in Kings County, New York.  Gross Care employs 40 therapists and provides special education related services to New York City handicapped children.

11.    Plaintiff Sumner Place LLC, d/b/a Sumner Health Providers, is a New York limited liability company with offices in Kings County, New York.  Sumner employs 40 therapists and provides special education related services to New York City handicapped children.

12.    Defendant New York City Department of Education is a local education agency as defined under the IDEA, 20 U.S.C. § 1415, *et seq.*  It has a principal place of business in New York County.

13.    Defendant Joel I. Klein is the Chancellor of the New York City Department of Education and is sued herein in his official capacity.  Mr. Klein has responsibility for causing the DOE to comply with the IDEA.

14. Defendant Eva J. Mopper is the Director of the Office of Related and Contractual Services of the New York City Department of Education and is sued herein in her official capacity. Ms. Mopper has responsibility for reimbursing providers of special education and related services to New York City handicapped children.

15. Defendant David N. Ross is the Executive Director of the Division of Contracts and Purchasing of the New York City Department of Education and is sued herein in his official capacity. Mr. Ross has responsibility for reimbursing providers of special education and related services to New York City handicapped children.

16. Defendant New York City Department of Health and Mental Hygiene is a local health department. It has a principal place of business in New York County. Upon information and belief, the New York City Department of Health and Mental Hygiene has responsibility for the City's compliance with the IDEA.

17. Defendant Thomas R. Frieden, M.D. is the Commissioner of the New York City Department of Health and Mental Hygiene and is sued herein in his official capacity. Dr. Frieden is responsible for the New York City Department of Health and Mental Hygiene's compliance with the IDEA.

18. Defendant New York State Education Department is a state educational agency. Upon information and belief, the New York State Education Department is responsible for implementing the IDEA throughout the state.

19. Defendant Richard P. Mills is the Commissioner of the New York State Education Department and is sued herein in his official capacity. Mr. Mills is responsible for the New York State Education Department's compliance with the IDEA.

20.    Defendant New York State Department of Health is a state health agency.  Upon information and belief, the New York State Department of Health has responsibility for the State's compliance with the IDEA.

21.    Defendant Richard F. Daines, M.D. is the Commissioner of the New York State Department of Health and is sued herein in his official capacity.  Dr. Daines is responsible for the New York State Department of Health's compliance with the IDEA.

### Jurisdiction and Venue

22.    This Court has jurisdiction over this action pursuant to 20 U.S.C. § 1415, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

23.    Venue lies in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred in this district.

### FACTS

24.    The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "Act" or the "IDEA"), provides federal money to assist state and local agencies in educating handicapped children, and conditions such funding upon a State's compliance with extensive goals and procedures.

25.    The Act mandates that "all children with disabilities residing in the State between the ages of 3 and 21" be provided a "free appropriate public education" (a "FAPE").  20 U.S.C. § 1412(a)(1)(A).  The Act defines a FAPE to mean special education and related services that (1) have been provided at public expense; (2) meet the state's educational standards; (3) include preschool, elementary or secondary school education; and (4) are provided pursuant to an individualized education program created for that child.  20 U.S.C. § 1401(9).  A handicapped

child referred to a private agency by a public agency has all the rights of a handicapped child serviced by a public agency.

26.    Plaintiffs are private agencies that provide educational and related services to disabled children in New York City.  It has been explicitly held that such providers have standing to bring suit pursuant to the IDEA where the conduct of a state or local educational agency in refusing to reimburse providers such as plaintiffs threatens the IDEA's guarantee of a free, appropriate, public education.

### BCM Provided Exemplary Services to More than 8,000 Handicapped Children

27.    Since 2003, BCM has been involved in providing special education services to handicapped children in the areas of occupational therapy, speech pathology, physical therapy, psychological counseling and paraprofessional services (the shadowing of handicapped children at school).  During the past four years BCM has provided special educational services to more than 8,000 handicapped children between the ages of 3 and 21, who reside in New York City. These children receive instruction 2-3 times a week at BCM's facilities, and at private and public schools throughout the City.

28.    In 2003, George Lebovits started BCM.  BCM employs therapists and office staff that facilitate and directly provide special education related services.  BCM has two instruction facilities in Brooklyn, New York.  One is a 25,000 square foot, 6-story center at 2555 Nostrand Avenue.  It contains the latest state of the art facilities, including a Snoozlyn room that provides light therapy for autistic children (of which only 2 exist in the City), an aqua whirlpool with lift for occupational and physical therapy for crippled students, specialized speech and swallowing equipment for speech and hearing problems, classrooms and therapy rooms.  BCM's remarkable facilities draw parents from all over the City who want the very best instruction for their

handicapped children. BCM's facilities are operated six days a week from 8:00 a.m. until 8:00 p.m.

29.     BCM also leases a second Brooklyn facility at 2935 Avenue S. This is a 12,000 square foot center that provides facilities for special education. Between 2004 and 2007, BCM served over 500 children a day at these two Brooklyn facilities.

30.     There are two ways that providers like BCM provide services to New York City children that are reimbursed by the DOE. The first is through a competitive bidding process which results in an award by the DOE to a special services provider of a certain geographical area in which a provider may provide services at a pre-determined contract rate. Typically these rates vary between $35 and $45 per 30-minute session. The second is through a Related Services Agreement ("RSA") between the DOE, the parent of the handicapped child and a particular special education therapist. The therapist is typically employed or affiliated with a provider, such as BCM, who is also named in the RSA.

31.     Between 2004 and 2007, BCM employed more than 100 therapists and special education professionals. These therapists for the most part are independent contractors who receive bi-weekly checks from BCM.

32.     Therapists do not have the time or resources to navigate through the complicated reimbursement process mandated by the DOE nor can they afford to wait weeks or even months for payment of their services. Therefore, therapists and other special education professionals affiliate themselves with companies such as BCM to insure that they are regularly and reliably paid for their services. Further, these professionals also value a dedicated and resourceful company to provide them with a comfortable work atmosphere and with management that are responsive to their professional and personal needs. BCM has stood out as a dedicated and

reliable provider to these special education professionals and has demonstrated an unwavering commitment to educating New York City's handicapped children. BCM houses at no charge two special education schools at its Brooklyn facilities and has made special efforts to educate the most severely disabled children in the City. This commitment has engendered a loyal and highly motivated group of special education professionals who provide services through BCM and who would not readily work for other agencies.

33.    In 2004, BCM won a contract from the DOE to provide citywide special education to New York City children in Regions 5 and 6 in the areas of speech therapy and services to severely handicapped children referred to as "District 75" children, and for occupational therapy to preschool children ages 3-5 for Region 6. In addition, BCM was named as provider in approximately 6,000 RSA contracts. Between 2004 and 2007, BCM provided special education services at both its Brooklyn facilities, at schools and at other locations to more than 2,300 children at least twice per week. BCM was reimbursed $6-7.5 million a year by DOE for these services.

34.    The 2004 DOE contract was set to expire in September 2007. BCM timely bid for a new contract with the DOE for 2007 through 2010. On June 8, 2007, the DOE informed BCM that it would be awarded the citywide contract for Hearing Education Services for Region 6.

35.    More than half of BCM's special educational services were to District 75 children. These are severely handicapped children that suffer from a variety of mental and physical problems ranging from severe autism to paraplegia to mental retardation. BCM has taken great pride in providing services to these special children. Unfortunately, these children are the most difficult to teach and the DOE does not reimburse providers any more for instruction to these children than to non-District 75 children. Consequently, many therapists avoid taking on District

75 children.  However, BCM has been able to hire one of the best staffs in the City to deal with these children and has been among the leaders in providing special educational services to District 75 children.

### Billing Related to Joseph Moore

36.    One of BCM's District 75 children was Joseph Moore, a now 11 year-old handicapped child.  Joseph's mother, Charlene Moore, is herself handicapped, is confined to a wheelchair and is under constant oxygen therapy.  Between September 2005 and September 2006, Joseph received special educational services from BCM at its Nostrand Avenue facility.  Ms. Moore regularly accompanied Joseph to his sessions.  Joseph received two 30-minute sessions a week from Sharon Sylvan, a highly experienced therapist.  Because Joseph's mother required a wheelchair, the Moore's were provided by the DOE with ambulate transportation to BCM's facilities twice a week.

37.    In July and August 2006, with the exception of two weeks when Joseph was in camp, Joseph received one-on-one instruction twice a week from Ms. Sylvan at BCM's facilities.  At Ms. Moore's insistence, some of those summer sessions were increased to 60-minutes to permit Joseph to make up previous sessions that he had missed.  Ms. Moore was satisfied with Ms. Sylvan's instruction and with Joseph's progress.

38.    In September 2006, the DOE informed the Moore's that it would only provide them with transportation to BCM's facilities once a week.  Further, at that time, the DOE changed Joseph's special education requirements to three 30-minute sessions a week in 3-children groups.

39.    Ms. Moore could not afford to transport Joseph to BCM three times a week.  Thus, she asked Ms. Sylvan whether Joseph could receive his entire weekly instruction in one day.  Ms. Sylvan agreed to see Joseph on Wednesdays and provide him with three, 30-minute, one-on-one

sessions over a four hour period from 4:30 to 8:30 p.m. However, Ms. Moore was satisfied with Joseph's instruction from September through November 2006.

40.    In November 2006, the DOE stopped all transportation services for the Moore's. Thus, Joseph stopped receiving special education services from BCM.

### The DOE Investigates BCM

41.    In November 2006, the DOE began investigating BCM relating to Joseph Moore. It found that although Joseph received instruction twice a week in July and August, BCM's billing reflected services for 30 minutes a day over three days instead of over two days. Notably, all the bills presented to DOE were for sessions during which Joseph received instruction. The issue was that some of the dates were wrong.

42.    The DOE also disapproved of providing Joseph with 90-minute sessions between September and November 2006. However, BCM never billed DOE for those services. Mr. Lebovits spoke with the DOE's investigator on the matter, Ron Vance. He explained that all the services billed were provided to Joseph Moore and that the reason the billing was spread over several days was an oversight by BCM's billing department. Mr. Vance assured Lebovits that he understood the mistake and that nothing would come of the matter.

43.    Remarkably though, in July 2007, the DOE's Special Commissioner for Investigation issued a report that recommended that BCM no longer be qualified to provide special education services to New York City children. The report acknowledged that in July and August 2006 Joseph Moore received instruction two days a week but criticized BCM for billing those sessions over three days. The report also criticized BCM for changing Joseph's instruction regimen by adding make-up classes and by providing three thirty-minute sessions in a single day between September and November 2006. The report further recognized that Joseph's mother, Mrs.

Moore, asked for the changes in instruction because of her transportation problems and was satisfied with the changed instruction.

44.    The report did not make any findings with regard to Mr. Lebovits' personal actions relating to Joseph's instruction or his billing. The report mentions two junior BCM employees who explained how the billing oversight and the change in instruction occurred.

45.    The report concluded that BCM should not receive DOE reimbursement for any sessions in July and August that exceeded 30-minutes a day. Notably, the amount of the alleged improper billing for Joseph Moore over July and August 2006 is ten sessions which totals $450. To put this figure in the proper perspective, between September 2005 and September 2006, BCM provided 5,000 special education sessions a week to more than 2,300 children and billed the DOE $7 million. Yet, the report concluded that for this four hundred fifty dollar mistake involving a single child, BCM should no longer be permitted to provide any special education services to New York City's handicapped children.

46.    After the report was issued Lebovits began corresponding with Jay Miller, Chief Administrator of the Office of Policy and Vendor Performance at the DOE. It was through this correspondence that BCM began to recognize that no matter what it said or how it explained what happened with Joseph Moore, the DOE was bent on preventing BCM from providing special education services.

47.    Although Mr. Miller wrote to BCM in September and again in November 2007 that DOE was reviewing BCM's status as a provider, in fact as early as August 2007, Miller had already instructed DOE's billing department and many other special education providers in an email dated August 17, 2007 that BCM could not provide services to New York City children.

48.    The August 17 email was sent by Catherine Friscia, Deputy Director Office of Related & Contractual Services, a 20-year career official at the DOE.  Shortly after the e-mail was sent, BCM's financial comptroller, Abraham Greenfield, spoke with Ms. Friscia about the e-mail.  Ms. Friscia stated that she was told to send it by Jay Miller's office and that in her career she had never seen the DOE send an e-mail to other providers which informed them that an agency such as BCM was disqualified from conducting business with the DOE.  Indeed, Ms. Friscia stated that she had never known the DOE to ever disqualify an agency such as BCM.

49.    Further, in order to support DOE's outrageous position, Mr. Miller began to assert that Lebovits was not a man of integrity because there were allegedly federal tax liens issued against him.  Lebovits explained that these tax liens had either been vacated or issued against businesses that he was not involved with.  Yet, Miller would not listen.  Further, on November 19, 2007, Lebovits received a $229,479 tax penalty assessment from the IRS dating back to 2001 relating to a purported failure to pay payroll taxes, not by BCM, but by another unaffiliated entity, Community Therapy LLC, a company that Lebovits did not own or control in 2001.  This notice is strange in that it does not assert any interest even though it claims a penalty owed for more than six years.  Of course, Lebovits has contested this notice and does not owe any taxes on this matter.  The timing of this notice and the fact that it does not assert interest compels the sad conclusion that DOE employees asked the IRS to issue this notice to support DOE's attempt to prevent BCM from providing educational services to New York City children.

50.    On December 11, 2007, Mr. Miller wrote to BCM advising that the DOE had concluded to disqualify BCM and any of its affiliated entities from conducting any business with the DOE.  Miller cites the recent IRS $229,000 penalty as a ground for the disqualification.

51.    As of December 2007, the DOE has withheld more than $1.4 million in reimbursement to BCM because of the $450 billing discrepancy involving Joseph Moore.

### Gross Care and Sumner Fill in the Gap

52.    As stated above, as early as August 2007 it appeared that the DOE was not going to reimburse BCM for education services beginning in the 2007-08 school year. And although BCM was tentatively awarded the Region 6 contract for 2007 through 2010, no final award was issued. (Indeed to this day, no provider has been given this award and Region 6 children are not getting their needed services). Thus, beginning in September 2007, BCM began referring its handicapped children's parents to two other companies that Lebovits managed, Gross Care and Sumner. Gross Care and Sumner each registered with DOE to provide RSA services. Presently, Gross Care and Sumner are named as providers in 893 RSAs and provide special education services to these children on a weekly basis. Gross Care and Sumner provide these services to at least half of these children at BCM's Brooklyn facilities, and more than half of these children are District 75 cases.

53.    Although no adverse findings have been made by the DOE in connection with Gross Care or Sumner, the DOE has refused to pay any of their invoices for services provided to these 893 children between September 2007 and the present date.  As a result, Sumner and Gross Care have had to borrow funds to meet their bi-weekly payrolls for therapists and office staff which presently amount to $400,000 a month.  This financial burden is too much to bear and unless this Court orders the DOE to immediately begin paying for these services, Sumner and Gross Care will no longer be able to provide these 893 children with special education services.

54.    Should Sumner and Gross Care cease providing education services, these 893 children will be substantially harmed.  First, their special education instruction will be interrupted in the

middle of the school year which will severely impact their ability to continue to improve. Indeed, it takes months for a handicapped child to regulate to a particular therapist and interrupting instruction in the middle of the year would be devastating. Second, by cutting off their instruction, these children are very likely to regress and lose not only the improvement they have made this year, but also the improvements they have been making since the beginning of their special education instruction. Almost all of the children instructed by Gross Care and Sumner receive special education throughout their elementary and secondary school years. Finally, a suspension or interruption of their special education programs will negatively impact their progress in other areas of their education and social development.

55.    The DOE's actions are disingenuous and are not motivated by any purported wrongdoing by BCM or Lebovits. The DOE's actions here are part of a concerted and planned scheme to save money on the special education needs of New York's handicapped children. By disqualifying BCM, an accomplished and substantial special education provider, and now forcing Gross Care and Sumner out of business, the DOE is able to save millions of dollars a year on reduced special education costs.

56.    Upon information and belief the DOE is presently seeking to disqualify other special education providers under the same type of outrageous charges.

57.    There is no way for the DOE to substitute services for the nearly 900 children being provided for by Sumner and Gross Care in the middle of the school year. There is a severe shortage of qualified therapists in New York City. Between 2004 and 2007, BCM turned away more than 3,000 RSA assignments for eligible New York City children because it could not staff those assignments with qualified therapists.

58.    Further, although DOE, through Mr. Miller, informed all of its registered New York

special education providers in August 2007 that BCM would not receive any more DOE business

in 2007, none of BCM's handicapped children now being served by Gross Care and Sumner

have been transferred to other providers for instruction.  The reason is that other providers do not

have the capacity to take on these children, or regrettably, do not want to deal with the many

District 75 children that Gross Care and Sumner provide for.

59.    In sum, the DOE has engaged in shocking and underhanded tactics to reduce its special

education costs by falsely accusing BCM of wrongdoing.  By cutting off plaintiffs' flow of

funds, DOE is stopping special education services to 893 handicapped children.

60.    It would be futile to attempt to further pursue this matter with the defendants as they

have clearly demonstrated a clear and committed plan to reduce their special education services

by cutting off providers.  Moreover, plaintiffs cannot suffer any further delay in the denial of

their reimbursement, for they are presently on the verge of going out of business.

### AS AND FOR A FIRST CLAIM FOR RELIEF
#### (Injunction – 20 U.S.C. 1400 *et seq.*)

61.    Plaintiffs repeat and reallege the allegations made above as if fully set forth herein.

62.    The defendants are required under the IDEA to provide a FAPE to each New York City

handicapped child.  By cutting off funding to plaintiffs, the defendants have deprived these

children of their FAPE.

63.    Defendants should be enjoined from cutting off reimbursement to plaintiffs and to

continue to reimburse plaintiffs for the special education services they provide to New York City

handicapped children.

64.    Further, by disqualifying BCM, the defendants have caused more than 1,500 students

to lose the special education services that BCM had been previously providing, by among other

things, refusing to award the 2007-2010 citywide contract for Hearing Education Services for Region 6 to BCM even though BCM was the lowest qualified bidder; and by preventing BCM from obtaining RSA assignments.  Defendants should be enjoined to award the aforesaid contract to BCM and to timely reimburse BCM for past and future special education services.

65.    Additionally, pursuant to 20 U.S.C. § 1415(j), during the pendency of this action defendants are required to preserve the educational placement of the handicapped child by insuring that he or she continues with their special education placement until the proceedings have completed.

66.    The only determination a court must make is what are the current educational and related services being provided.  Once that determination is reached, such services must continue until the matter is resolved.

67.    As stated above, Gross Care and Sumner are servicing nearly 900 children.  DOE's refusal to reimburse Gross Care and Sumner for these services means that those 900 children will be without the necessary services they require and which the IDEA mandates.  Additionally, BCM was servicing an additional 1,500 children, who upon information and belief, are no longer being serviced because of defendants' arbitrary and capricious disqualification of BCM and their refusal to reimburse BCM for services previously provided. .

68.    Accordingly, plaintiffs are entitled to a preliminary and permanent injunction (i) requiring defendants to reimburse plaintiffs for special education related services already provided pursuant to their contracts with the DOE; (ii) prohibiting defendants from disqualifying plaintiffs from providing services during the pendency of this proceeding; and (iii) ordering defendants to timely fund plaintiffs for services they provide.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Procedural and Substantive Due Process Violation)

69.    Plaintiffs repeat and reallege the allegations made above as if fully set forth herein.

70.    In June 2007, BCM was awarded a new contract with DOE.  Additionally, Gross Care and Sumner have hundreds of RSAs, contracts requiring them to provide special education related services to specific handicapped children.  All these agreements constitute plaintiffs' property rights and are protected by the United States Constitution.

71.    The DOE, in a letter dated December 11, 2007, informed BCM that it was disqualifying BCM and any of its affiliated entities from conducting any business with the DOE. Although, the letter did not specifically define "affiliates" to include Sumner and Gross Care, the DOE has refused to reimburse Sumner and Gross Care for services they provided.  The DOE has taken this action without providing plaintiffs with a hearing before an independent adjudicator or any administrative right of appeal.  These actions are purportedly based on a $450 billing error by an entity that has billed over $25 million to the DOE during the last four years.

72.    The DOE's actions are arbitrary and capricious and constitute procedural and substantive due process violations of plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution.

73.    As a direct result of the DOE's conduct, plaintiffs have been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Takings Clause and 42 U.S.C. § 1983)

74.    Plaintiffs repeat and reallege the allegations made above as if fully set forth herein.

75. The "Takings Clause" of the Fifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use without just compensation."

76. Gross Care and Sumner have outstanding invoices to the DOE of over $1,000,000. BCM has outstanding invoices of over $1.4 million.

77. Defendants have used the Moore billing error of $450 as a sham justification for refusing to pay these invoices.

78. The services that plaintiffs have provided pursuant to their contracts with DOE, and the amounts that are owed for those services, are a property interest protected by the United States Constitution.

79. Defendants, acting under state law, have refused to reimburse plaintiffs for those services. Such refusal constitutes a taking of the private property of these plaintiffs without just compensation in violation of the "Takings Clause" of the Fifth Amendment of the United States Constitution. This Takings Clause violation is actionable under 42 U.S.C. § 1983.

80. Plaintiffs have no adequate remedy under state law to seek reimbursement short of judicial intervention.

81. As a direct result of defendants' conduct, plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally:

a.      requiring defendants to timely reimburse plaintiffs for services provided pursuant to their contracts with the DOE;

b.      prohibiting defendants from disqualifying plaintiffs from providing reimbursable special education related services;

c.      reinstating BCM as a qualified provider of special education services, awarding to it the 2007-2010 citywide contract for Hearing Education Services for Region 6, and reimbursing BCM for its lost revenues in an amount to be determined at trial;

d.      awarding to plaintiffs all payments, with prejudgment interest, for special education services plaintiffs have provided to New York City handicapped children;

e.      awarding plaintiffs their costs and attorneys' fees; and

f.      for whatever further relief the court deems necessary and proper.

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  New York, New York
        January 8, 2008

Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

BROOKLYN COMMUNITY MANAGEMENT LLC,       :       Civ. A. No.
GROSS CARE INC. and SUMNER PLACE         :
LLC, d/b/a SUMNER HEALTH PROVIDERS,      :
                                         :       **VERIFICATION**
                    Plaintiffs,          :
                                         :
                                         :
            v.                           :
                                         :
NEW YORK CITY DEPARTMENT OF              :
EDUCATION, *et al.*                      :
                                         :
                    Defendants.          :

------------------------------------------------------------------------x

STATE OF NEW YORK    )
                       ss.:
COUNTY OF NEW YORK   )


       GEORGE LEBOVITS, being duly sworn deposes and says that he is the manager of
plaintiffs Brooklyn Community Management LLC, Gross Care Inc. and Sumner Place LLC,
d/b/a Sumner Health Providers; that he has read the foregoing Complaint and knows the contents
thereof; and that the same is true to his knowledge except as to matters therein stated to be
alleged upon information and belief, and as to those matters he believes them to be true.


                                                GEORGE LEBOVITS


Sworn to before me
on January 8, 2008


Notary Public


Howard Kleinhendler
Notary Public, State of New York
No. 02KL5053318
Qualified in New York County
Commission Expires Dec. 11, 2009


21