Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKLYN COMMUNITY MANAGEMENT LLC, GROSS CARE INC. and SUMNER PLACE LLC, d/b/a SUMNER HEALTH PROVIDERS, <br><br> Plaintiffs, <br><br> - against - <br><br> NEW YORK CITY DEPARTMENT OF EDUCATION, JOEL I. KLEIN as CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, AVA J. MOPPER as DIRECTOR OF THE OFFICE OF RELATED AND CONTRACTUAL SERVICES OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, DAVID N. ROSS as EXECUTIVE DIRECTOR OF THE DIVISION OF CONTRACTS AND PURCHASING OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, THOMAS R. FRIEDEN, M.D. as COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK STATE EDUCATION DEPARTMENT, RICHARD P. MILLS as COMMISSIONER OF THE NEW YORK STATE EDUCATION DEPARTMENT, NEW YORK STATE DEPARTMENT OF HEALTH, RICHARD F. DAINES, M.D. as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH, <br><br> Defendants. | Civ. A. No. <br><br><br> **DECLARATION OF GEORGE LEBOVITS IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

George Lebovits, being over the age of eighteen years, hereby declares:

1.    I am a manager of plaintiffs Brooklyn Community Management LLC ("BCM"), Gross Care Inc. ("Gross Care") and Sumner Health Providers ("Sumner"). I submit this declaration in support of plaintiffs' motion for a preliminary injunction seeking to impose on the defendants the "stay put" provision of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1415.

<u>**Summary**</u>

2.    New York City and the Department of Education receive hundreds of millions of dollars a year in federal assistance for its special education programs. These funds are supposed to be used to provide handicapped children with special education related services as part of the federal mandate that each child must be provided with a free, appropriate public education. Plaintiffs have been dedicated and conscientious providers of special education services to the most severely handicapped children in the City. This specialized instruction is costly, and the defendants, and especially the New York City Department of Education (the "DOE"), must shoulder this financial burden.

3.    Unfortunately, the defendants, led by the DOE, have embarked on a planned and meticulous scheme to save money on these special education programs at the dear cost to handicapped children. The tactics include unreasonable delay in reimbursing providers, and in trumped up charges of impropriety aimed at disqualifying providers from delivering reimbursable services.

4.    The plaintiffs presently provide special education services to 893 New York City handicapped students, half of whom are the most severely handicapped cases. Almost all of these children attend at least two and three session per week. In order to

deprive these special children of their sorely needed instruction, the DOE has disqualified BCM from providing services to these students and has taken steps to bankrupt the plaintiffs. DOE knows, and the fact is indisputable, that other providers in the City cannot step in to provide instruction to these children in the middle of school year. Thus, by cutting off reimbursement to the plaintiffs, DOE is preventing these children from receiving special education services.

5.    The DOE has engaged in this plan by asserting trumped up allegations of false billing against BCM. Although between 2004 and 2007 BCM provided special education services to more than 2,300 children a week and billed the DOE between $6-7.5 million a year, the DOE concluded that because of a single incident in 2006 where $450 was improperly billed in connection with a single child, BCM should be totally disqualified from doing business with the DOE. To date, DOE has withheld $1.4 million in reimbursements for work BCM has done between 2006 and 2007 all because of this four hundred fifty dollar mistake, of which I had no knowledge and which BCM has already reimbursed the DOE.

6.    Moreover, to further support their outrageous position, DOE reported to the Internal Revenue Service that I owe penalties for unpaid employment taxes in 2001, which I vehemently deny, and has defamed me by telling dozens of other special education providers that BCM is unfit to provide services.

7.    The DOE's disqualification of BCM has already caused over 1,500 handicapped children, formerly provided for by BCM, to lose their special education services. But the DOE is not satisfied to merely deprive these 1,500 children of an appropriate education. They seek to deprive another 893 children their special education

3

presently being provided by plaintiffs Gross Care and Sumner by withholding more than $1,000,000 in reimbursement to these entities merely because they work from BCM's facilities and have some ownership overlap with BCM.

8.    Unless this court orders the DOE to immediately fund Gross Care and Sumner, they will have to cease operations and 893 children will lose their special education services in the middle of the school year.

### BCM Provided Exemplary Services to More than 8,000 Handicapped Children

9.    Since 2003, I have been involved in providing special education services to handicapped children in the areas of occupational therapy, speech pathology, physical therapy, psychological counseling and paraprofessional services (the shadowing of handicapped children at school). During the past four years I have managed agencies which have provided special educational services to more than 8,000 handicapped children between the ages of 3 and 21, who reside in New York City. These children receive instruction at least 2-3 times a week.

10.    In 2003, I started BCM. BCM is a management company and private agency that provides special educational related services. BCM has two instruction facilities in Brooklyn, New York. One is a 25,000 square foot, six-story building at 2555 Nostrand Avenue. It contains the latest, state of the art facilities, including a Snoozlyn room that provides light therapy for autistic children (of which only 2 exist in the City), an aqua whirlpool with lift for occupational and physical therapy for crippled students, specialized speech and swallowing equipment for speech and hearing problems, classrooms and therapy rooms. BCM's remarkable facilities draw parents from all over

the City who want the very best instruction for their handicapped children. BCM's facilities are operated six days a week from 8:00 a.m. until 8:00 p.m.

11.    BCM leases a second Brooklyn facility at 2935 Avenue S. This is a 12,000 square foot center that provides facilities for special education. Between 2004 and 2007 BCM served over 500 children a day at these two Brooklyn facilities.

12.    There are two ways that providers like BCM provide services to New York City children that are reimbursed by the DOE. The first is through a competitive bidding process which results in an award by the DOE to a special services provider of a certain geographical area in which a provider may provide services at a pre-determined contract rate. Typically these rates vary between $35 and $45 per 30-minute session. The second is through a Related Services Agreement ("RSA") between the DOE, the parent of the handicapped child and a particular special education therapist. The therapist is typically employed or affiliated with a provider, such as BCM, who is also named in the RSA.

13.    Between 2004 and 2007, BCM employed more than 100 therapists and special education professionals. These therapists for the most part are independent contractors who receive bi-weekly checks from BCM.

14.    Therapists do not have the time or resources to navigate through the complicated reimbursement process mandated by the DOE nor can they afford to wait weeks or even months for payment of their services. Therefore, therapists and other special education professionals affiliate themselves with management companies such as BCM to insure that they are regularly and reliably paid for their services. Further, these professionals also value a dedicated and resourceful company to provide them with a comfortable work atmosphere and with management that are responsive to their

professional and personal needs. BCM has stood out as a dedicated and reliable provider to these special education professionals and has demonstrated an unwavering commitment to educating New York City's handicapped children. BCM houses at no charge two special education schools at its Brooklyn facilities and has made special efforts to educate the most severely disabled children in the City. This commitment has engendered a loyal and highly motivated group of special education professionals who provide services through BCM and who would not readily work for other agencies.

15.    In 2004, BCM won a contract from the DOE to provide citywide special education to New York City children in Regions 5 and 6 in the areas of speech therapy and services to severely handicapped children referred to as "District 75" children, and for occupational therapy to preschool children ages 3-5 for Region 6. (See **Exhibit 1**, attached). In addition, BCM was named as provider in approximately 6,000 RSA contracts. Between 2004 and 2007 BCM provided special education services at both its Brooklyn facilities, at schools and at other locations to more than 2,300 children per week. During these four years, BCM was reimbursed approximately $25 million by DOE for these educational services.

16.    The 2004 DOE contract was set to expire in September 2007. BCM timely bid for a new contract with the DOE for 2007 through 2010. On June 8, 2007, the DOE informed BCM that it would be awarded the citywide contract for Hearing Education Services for District 6. (See **Exhibit 2**).

17.    More than half of BCM's special educational services were to District 75 children. These are severely handicapped children that suffer from a variety of mental and physical problems ranging from severe autism to paraplegia to mental retardation.

BCM has taken great pride in providing services to these special children. Unfortunately, these children are the most difficult to teach and the DOE does not reimburse providers any more for instruction to these children than to non-District 75 children. Consequently, many therapists avoid taking on District 75 children. However, BCM has been able to hire one of the best staffs in the City to deal with these children and has been among the leaders in providing special educational services to District 75 children.

## Billing Related to Joseph Moore

18.    One of BCM's District 75 children was Joseph Moore, a now 11 year-old disabled child. Joseph's mother, Charlene Moore, is herself handicapped, is confined to a wheelchair and is under constant oxygen therapy. Between September 2005 and September 2006, Joseph received special educational services from BCM at its Nostrand Avenue facility. Ms. Moore regularly accompanied Joseph to his sessions. Joseph received two 30-minute sessions a week from Sharon Sylvan, a highly experienced therapist. Because Joseph's mother required a wheelchair, the Moore's were provided by the DOE with ambulate transportation to BCM's facilities twice a week.

19.    In July and August 2006, with the exception of two weeks when Joseph was in camp, Joseph received one-on-one instruction twice a week from Ms. Sylvan at BCM's facilities. At Ms. Moore's insistence, some of those summer sessions were increased to 60-minutes so that Joseph could make up previous sessions that he had missed. Ms. Moore was satisfied with Ms. Sylvan's instruction and with Joseph's progress. Ms. Sylvan did not notify me that she had changed Joseph's instruction schedule.

20.    In September 2006, the DOE informed the Moore's that they would only provide them with transportation to BCM's facilities once a week. Further, at that time,

7

the DOE changed Joseph's special education requirements to three 30-minute sessions a week in 3-children groups.

21.    Ms. Moore could not afford to transport Joseph to BCM three times a week. Thus, she asked Ms. Sylvan whether Joseph could receive his entire weekly instruction in one day. Ms. Sylvan agreed to see Joseph on Wednesdays and provide him with three, 30-minute, one-on-one sessions over a four hour period from 4:30 to 8:30 p.m. Again, Ms. Sylvan did not notify me of this change. However, Ms. Moore was satisfied with Joseph's instruction in September through November 2006.

22.    In November 2006, the DOE stopped all transportation services for the Moore's. Thus, Joseph stopped receiving special education services from BCM at that time.

### The DOE Investigates BCM

23.    In November 2006, the DOE began investigating BCM relating to Joseph Moore. It found that although Joseph received instruction twice a week in July and August, BCM's billing reflected services for 30 minutes a day over three days instead of over two days. Notably, all the bills presented to DOE were for sessions during which Joseph received instruction. The issue was that some of the dates were wrong.

24.    The DOE also disapproved of providing Joseph with 90-minute sessions in September and November 2006. However, BCM never billed DOE for those services. I spoke with the DOE's investigator on the matter, Ron Vance. I explained that all the services billed were provided to Joseph Moore and that the reason the billing was spread over three days was an oversight by our billing department. Mr. Vance assured me that he understood the mistake and that nothing would come of the matter.

25.    Remarkably though, in July 2007, the DOE's Special Commissioner for Investigation issued a report that recommended that BCM no longer be qualified to provide special education services to New York City children. I received a heavily redacted version of the report on July 30, 2007 (See **Exhibit 3**).

26.    The report acknowledged that in July and August 2006 Joseph Moore received instruction two days a week but criticized BCM for billing those sessions over three days. The report also criticized BCM for changing Joseph's instruction regimen by adding make-up classes and by providing three thirty-minute sessions in a single day between September and November 2006. The report further recognized that Joseph's mother, Ms. Moore, asked for the changes in instruction because of her transportation problems and was satisfied with the changed instruction.

27.    The report did not make any findings with regard to my personal actions relating to Joseph's instruction or his billing. The report mentions two junior BCM employees who explained how the billing oversight and the change in instruction occurred.

28.    The report concluded that BCM should not receive DOE reimbursement for any sessions in July and August that exceeded 30-minutes a day. Notably, the amount of the alleged improper billing for Joseph Moore over July and August 2006 is ten sessions which totals $450. To put this figure in the proper perspective, between September 2005 and September 2006, BCM provided 5,000 special education sessions a week to more than 2,300 children and billed the DOE $7 million. Yet, the report concluded that for this four hundred fifty dollar mistake, BCM should no longer be permitted to provide any special education services to New York City's handicapped children.

29.    After the report was issued I began corresponding with Jay Miller, Chief Administrator of the Office of Policy and Vendor Performance at the DOE. It was through this correspondence that I began to recognize that no matter what I said or how I explained what happened with Joseph Moore, the DOE was bent on preventing BCM from providing special education services.

30.    Although Mr. Miller wrote to me in September and again in November 2007 that DOE was reviewing BCM's status as a provider (see **Exhibit 4**), in fact as early as August 2007, Miller had already instructed DOE's billing department and many other special education providers in an email dated August 17, 2007 that BCM could not provide services to New York City children. (See **Exhibit 5**).

31.    The August 17 email was sent by Catherine Friscia, a 20-year career official at the DOE. Shortly after the e-mail was sent, my colleague Abraham Greenfield spoke with Ms. Friscia about the e-mail. Ms. Friscia stated that she was told to send it by Jay Miller's office and that in her career she had never seen the DOE send an e-mail to other providers which informed them that an agency was disqualified from conducting business with the DOE. Indeed, Ms. Friscia stated that she had never known the DOE to ever disqualify an agency such as BCM.

32.    Further, in order to support DOE's outrageous position, Mr. Miller began to assert that I was not a man of integrity because there were tax liens issued against me. I explained that these tax liens had either been vacated or issued against businesses that I was not involved with. Yet, Miller would not listen. Further, on November 19, 2007, I received a $229,479 tax penalty assessment from the IRS dating back to 2001 relating to a failure to pay payroll taxes, not of BCM, but of Community Therapy LLC, a company

that I did not own or control in 2001. (See **Exhibit 6**). This notice is strange in that it does not assert any interest even though it claims a penalty owed for more than six years. Of course, I have contested this notice and do not owe any taxes on this matter. The timing of this notice and the fact that it does not assert interest compels the sad conclusion that DOE employees asked the IRS to issue this notice to support DOE's attempt to prevent me from providing educational services to New York City children.[1]

33.    On December 11, 2007, Mr. Miller wrote to me advising that the DOE had concluded to disqualify BCM and any of its affiliated entities from conducting any business with the DOE. (See **Exhibit 7**). Miller cites the recent IRS $229,000 penalty as a ground for BCM's disqualification.

34.    As of December 2007, the DOE has withheld more than $1.4 million in reimbursement to BCM because of the $450 billing discrepancy involving Joseph Moore.

### Gross Care and Sumner Fill in the Gap

35.    As explained above, as early as August 2007 it appeared that the DOE was not going to reimburse BCM for education services beginning in the 2007 school year. And although BCM was tentatively awarded the Region 6 contract for 2007 through 2010, no final award was issued. (Indeed to this day, no provider has been given this award and Region 6 children are not getting their needed services). Thus, beginning in September 2007, I began referring our handicapped children's parents to two other companies that I manage, Gross Care and Sumner. Gross Care and Sumner each registered with DOE to

---

[1]    Mr. Miller also criticized BCM for failing to list various affiliate entities on a February 2007 questionnaire. I explained to him that BCM did not provide special education services under these other entities and that Gross Care and Sumner only began providing special education services in September 2007, long after the questionnaire was returned. Miller also asserted that a 2007 principal questionnaire that identified me as principal of BCM was improperly filled out because I merely certified the document but had by financial comptroller Abraham Greenfield sign it. I explained that I believed that Greenfield had the right to sign as an officer of BCM. But, Miller would not accept anything I said for he obviously had his own agenda.

provide RSA services. (See **Exhibit 8**). As of this date, Gross Care and Sumner are named as providers in 893 RSAs (see sample RSAs, **Exhibit 9**) and provide special education services to these children on a weekly basis. (See **Exhibit 10**, list of RSA students currently served by Gross Care and Sumner). Gross Care and Sumner provide these services to at least half of these children at BCM's Brooklyn facilities, and more than half of these children are District 75 cases.

36.    Although no adverse findings have been made by the DOE in connection with Gross Care or Sumner, the DOE has refused to pay any of their invoices for services provided to these 893 children between September 2007 and the present date. As a result, Sumner and Gross Care have had to borrow funds to meet their bi-weekly payrolls for therapists and office staff which presently amount to $400,000 a month. This financial burden is too much to bear and unless this Court orders the DOE to immediately begin paying for these services, Sumner and Gross Care will no longer be able to provide these 893 children with special education services. Indeed, Gross Care and Sumner continue to receive new RSAs on a weekly basis even though DOE has said that it will not pay for these services.

37.    Should Sumner and Gross Care cease providing education services, these 893 children will be substantially harmed. First, their special education instruction will be interrupted in the middle of the school year which will severely impact their ability to continue to improve. Indeed, it takes months for a handicapped child to regulate to a particular therapist and interrupting instruction in the middle of the year would be devastating. Second, by cutting off their instruction, these children are very likely to regress and lose not only the improvement they have made this year, but also the

12

improvements they have been making since the beginning of their special education instruction. Almost all of the children instructed by Gross Care and Sumner receive special education throughout their elementary and secondary school years. Finally, a suspension or interruption of their special education programs will negatively impact their progress in other areas of their education and their social development.

38.    The DOE's actions are disingenuous and are not motivated by any purported wrongdoing on my part. The DOE's actions here are part of a concerted and planned scheme to save money on the special education needs of New York's handicapped children. By disqualifying BCM, an accomplished and substantial special education provider, and now forcing Gross Care and Sumner out of business, the DOE is able to save millions of dollars a year on reduced special education costs.

39.    There is no way for the DOE to substitute services for the 893 children being provided for by Sumner and Gross Care in the middle of the school year. There is a severe shortage of qualified therapists in New York City. Between 2004 and 2007, BCM turned away more than 3,000 RSA assignments for eligible New York City children because it could not staff those assignments with qualified therapists.

40.    Further, although DOE, through Mr. Miller, informed all of its registered New York special education providers in August 2007 that BCM would not receive any more DOE business in 2007, none of BCM's handicapped children now being served by Gross Care and Sumner have been transferred to other providers for instruction. The reason is that other providers do not have the capacity to take on these children, or regrettably, do not want to deal with the many District 75 children that Gross Care and Sumner provide for.

41.    In sum, the DOE has engaged in shocking and underhanded tactics to reduce its special education costs by falsely accusing me of wrongdoing. By cutting off plaintiffs' flow of funds, DOE is stopping special education services to nearly 900 handicapped children. Pursuant to the IDEA, during the pendency of this action defendants are required to preserve the educational placement of the handicapped child. To achieve this result, the DOE should be ordered to immediately begin reimbursing Gross Care and Sumner pursuant to RSAs that the DOE has approved.

42.    It would be futile to attempt to further pursue this matter with the defendants as they have clearly demonstrated a clear and committed plan to reduce their special education services by cutting off providers. Moreover, plaintiffs cannot suffer any further delay in the denial of their reimbursement, for they are presently on the verge of going out of business.

43.    No previous application for similar relief has been sought.


I declare, under the penalties of perjury, that the foregoing is true.


Dated:  New York, New York
        January 8, 2008

_George Lebovits_
George Lebovits

New York City Department of Education

OFFICE OF RELATED AND CONTRACTUAL SERVICES

SERVICES, REGIONS, VENDORS, AND RATES

PRESCHOOL RELATED SERVICES
RFP 1C116

Counseling

| Region | Vendor | Language(s) | Rate per 30 Minute Session |
|--------|--------|-------------|----------------------------|
|  |  |  |  |
| 7 | Yeled V'Yalda<br>571 McDonald Avenue<br>Brooklyn, NY 11218 | Yiddish<br>Hebrew | $40<br>$40 |

Health Services by a Health Aide

| Region | Vendor | Rate per 30 Minute Session |
|--------|--------|----------------------------|
| 1 | RCM Technologies<br>1156 Avenue of the Americas<br>New York, NY 10036 | $12 |
| 2 | RCM Technologies | $12 |
| 3 | RCM Technologies | $18 |
| 4 | RCM Technologies | $16 |
| 5 | RCM Technologies | $12 |
| 6 | Care Net Group<br>1675 East 16th Street<br>Brooklyn, NY 11229 | $19 |
| 7 | Millennium Rehab Resources<br>1302 Kings Highway<br>Brooklyn, NY 11229 | $18 |
| 8 | Foremost Home Care, Inc.<br>1328 Broadway, Suite 506<br>New York, NY 10001 | $ 9 |
| 9 | Foremost Home Care, Inc. | $ 9 |
| 10 | Foremost Home Care, Inc. | $ 9 |

1C116 Award Letter - Attach

Health by a Registered Nurse in a School Program

| Region | Vendor | Rate per 30 Minute Session |
|--------|--------|----------------------------|
| 1 | RCM Technologies<br>1156 Avenue of the Americas<br>New York, NY 10036 | $40 |
| 2 | RCM Technologies | $40 |
| 3 | RCM Technologies | $40 |
| 4 | RCM Technologies | $40 |
| 5 | RCM Technologies | $40 |
| 6 | RCM Technologies | $40 |
| 7 | RCM Technologies | $40 |
| 8 | RCM Technologies | $40 |
| 9 | RCM Technologies | $40 |
| 10 | RCM Technologies | $40 |

Occupational Therapy

| Region | Vendor | Rate per 30 Minute Session |
|--------|--------|----------------------------|
| 1 | RCM Technologies<br>1156 Avenue of the Americas<br>New York, NY 10036 | $44 |
| 2 | RCM Technologies | $44 |
| 3 | RCM Technologies | $44 |
| 4 | RCM Technologies | $44 |
| 6 | Brooklyn Community Management, LLC<br>2555 Nostrand Avenue<br>Brooklyn, NY 11210 | $45 |
| 7 | FTH Audiology & Speech Pathology<br>1651 Coney Island Avenue<br>Brooklyn, NY 11230 | $44 |
| 8 | RCM Technologies | $44 |
| 9 | RCM Technologies | $44 |
| 10 | RCM Technologies | $44 |

New York City Department of Education
OFFICE OF RELATED AND CONTRACTUAL SERVICES

RELATED SERVICES
RFP 1C116

Speech/Language Therapy
English

| REGION | DISTRICTS | VENDOR | RATE per 30 Minute Session |
|---|---|---|---|
| 1 | Bronx 9 (w/HS) | RCM Technologies 1156 Avenue of the Americas New York, NY 10036 | $40 |
|  | Bronx 10 (w/o HS) | Consultants on Call 1663 East 17th Street Brooklyn, NY 11229 | $44 |
| 2 | Bronx 8 (w/HS) | RCM Technologies | $44 |
|  | Bronx 11 (w/o HS) | Consultants on Call | $41 |
|  | Bronx 12 (w/o HS) | Consultants on Call | $44 |
| 3 | Queens 25 (w/HS) | RCM Technologies | $39 |
|  | Queens 26 (w/o HS) | TheraCare of NY | $44 |
|  | Queens 29 (w/o HS) | TheraCare of NY | $44 |
| 4 | Queens 24 (w/HS) | RCM Technologies | $39 |
|  | Queens 30 (w/o HS) | TheraCare of New York 116 West 32nd Street, 8th Floor New York, NY 10001 | $44 |
| 5 | Brooklyn 19 (w/o HS) | TheraCare of New York | $44 |
|  | Brooklyn 23 (w/HS) | RCM Technologies | $44 |
|  | Citywide/D 75 (w/o HS) | Brooklyn Community Management 2555 Nostrand Avenue Brooklyn, NY 1210 | $45 |
| 6 | Brooklyn 17 (w/o HS) | Yeled V'Yalda Early Childhood Center, Inc. 571 McDonald Avenue Brooklyn, NY 11218 | $44 |
|  | Brooklyn 18 (w/HS) | RCM Technologies | $40 |
|  | Brooklyn 22 (w/o HS) | FTH Audiology & Speech Pathology | $42 |
|  | Citywide/D 75 | Brooklyn Community Management | $45 |

1C116 Award Letter - Attach

- 17 of 19 -

# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

June 8, 2007

Abraham Greenfield
Brooklyn Community Management, LLC
2555 Nostrand Avenue
Brooklyn, NY 11210

Dear Rabbi Greenfield:

As stated in the <u>Requests for Proposal for the Provision of Assessments and Related Services for 2007-2010</u>, contractors for these services are required to present for security clearance, the minimum number of personnel required by the <u>Requests for Proposal for the Provision of Assessments and Related Services for 2007-2010</u> in the areas for which contracts may be awarded, prior to the transmittal of any work to the contractor as stated below:

## Assessments – Section 10.1.2/3 (page 11)

From the list of personnel to provide . . . . . evaluations which the contractor submitted with its proposal, the contractor must present for fingerprinting **seventy-five percent (75%) of your English and Spanish evaluators and one hundred percent (100%) of your evaluators who speak languages other than English and Spanish** prior to the fingerprinting of any substitute and/or additional personnel not listed in the contractor's proposal.

## Related Services - Section 3.2.33 (page 31)

From the list of personnel which the contractor submitted with its proposal, the contractor must present for fingerprinting a minimum of **seventy-five percent (75%)** of the personnel required to provide a specific Related Service in a service sector, prior to the fingerprinting of any substitute and/or additional personnel not listed in the contractor's proposal.

We are writing to you at this time to inform you that you are being recommended for an award in the following area(s):

School-Age Related Services

| RELATED SERVICE | REGION | District | LANGUAGE |
|---|---|---|---|
| Hearing Education Services | 6 | Citywide | English |

**Please note that this letter does not constitute an offer on the part of the Department of Education.** You will be further notified of an award at a future time. In order to ensure that services begin promptly at the beginning of the new school-year, we are recommending that you adhere to the above fingerprinting procedures. The procurement process is still in the preliminary approval stage and is still subject to contract formalization and registration.

Your agency has been given a date and time to have your staff appear for fingerprinting and registration. Please make every effort to ensure that all appropriately licensed staff appear.

At the time of fingerprinting, each **new** member of the contractor's staff shall:
1. Present an official letter of introduction from the contractor to the Office of Related and Contractual Services (Attachment A).
2. Bring a copy of their New York State Education Department license/registration. Nurses must also bring a copy of their current Cardio-Pulmonary Resuscitation/Automated External Defibrillator (CPR/AED) certification card.
3. Bring a money order, check, Visa or MasterCard in the amount of one hundred and fifteen dollars ($115) as payment for the fingerprinting fee.
4. Complete a New York City Employment History Form (Attachment B)
5. Complete a Referral Form and be fingerprinted.
6. Complete an application for an identification card and be photographed for an official New York City Department of Education photo-identification card.

Abraham Greenfield                                    - 2 -                              June 8, 2007

At the time of fingerprinting, **a representative or current member of the contractor's staff shall:**

- Present an official letter of introduction from the contractor to the Office of Related and Contractual Services (Attachment A).
  <u>Note</u>: Signatures on Letters of Introduction must match those signatures in the RFP.
- Bring a copy of their New York State Education Department license/registration. Nurses must also bring a copy of their current Cardio-Pulmonary Resuscitation/Automated External Defibrillator (CPR/AED) certification card.
- Present that employee's New York City Department of Education Identification Card for revalidation.
  <u>Note</u>: Agency's whose staff have already had their ID cards validated by another agency must present an official letter of introduction signed by that staff member with a note on the reverse side indicating that their cards were validated by another agency.

In this regard, the following date(s) have been scheduled for contract agency personnel from your agency to appear for security clearance, fingerprinting, etc.:

| DATE: MONDAY, JULY 16, 2007 |
| --- |
| TIME: 9:30AM – 12:00 PM – Fingerprinting of new Staff/Staff requiring ID Cards |
| TIME: 3:00PM – 4:00 PM – Revalidation of Identification Cards for current staff |

Please note that all personnel appearing for security clearance should be scheduled on a staggered basis by your agency. All contract agency personnel should report to the following address:

St. Francis College
182 Remsen Street
Brooklyn, NY 11201
Ground Floor Cafeteria

Only those personnel whose names appear on the contractor's proposal will be fingerprinted at this time. No substitute or additional personnel will be accepted on the date(s) or time indicated unless prior arrangements have been made for when additional personnel may appear for fingerprinting.

Please note that only two (2) representatives from your agency will be allowed to assist contract agency staff in this process. Please feel free to contact Catherine Friscia at (212) 374 – 2319 or Hermes Dastas at (212) 374-2321 if there are further questions in this regard.

Thank you for your cooperation in this regard.

Sincerely,

*Ava J. Mopper*
Ava J. Mopper, Director
Office of Related and Contractual Services

Enclosures


| David N. Ross, Executive Director | Jay G. Miller, Chief Administrator |
|---|---|
| Division of Contracts and Purchasing | Office of Policy and Vendor Performance |

<u>Express Mail</u>

July 30, 2007

Israel Leibowitz, Chief Executive Officer
Brooklyn Community Management, LLC
2555 Nostrand Avenue
Brooklyn, NY 11210

and

Abraham Greenfield, President
Brooklyn Community Management, LLC
2555 Nostrand Avenue
Brooklyn, NY 11210

Re:    **Integrity Issues**
       **SCI Case #2006-4061**

Dear Messrs. Leibowitz and Greenfield:

The New York City Department of Education (NYCDOE) is in receipt of a July 6, 2007 report (redacted copy attached hereto) from the Office of the Special Commissioner of Investigation (SCI), which found that Brooklyn Community Management (BCM) submitted false billing forms regarding a student. Specifically, the investigation found:

- That erroneous information regarding the dates and length of services of the student's therapy sessions were recorded on the forms and concealed the fact that BCM was violating the terms of the student's Individualized Education Program.

These are serious allegations. Therefore, the NYCDOE is providing you ten (10) days from the date of this letter to submit a comprehensive response, which, if the report's findings are uncontested, includes a corrective action plan delineating how BCM intends to address and resolve the issues identified in the SCI report.

Please send your response via overnight carrier to my attention. Its sufficiency will weigh on future NYCDOE responsibility determinations, and potentially on other governmental agency contracting decisions as well.

If you have any questions, please contact me at (718) 935-4394.

Sincerely,

Jay G. Miller

Attachment

cc:    Kathleen Grimm, Deputy Chancellor
       Michael Best, Esq. General Counsel to the Chancellor
       David Ross, Executive Director, Division of Contracts and Purchasing
       Theresa Europe, Esq., Deputy Counsel to the Chancellor, Office of Special Investigation
       Regina A. Loughran, Esq., First Deputy Comm., Office of the Special Comm. of Invest.
       Stacey Reeves, Esq., Chief Administrator, Professional Services Procurement
       Ava Mopper, Director, School Programs and Support Services, Office of School Health

CITY OF NEW YORK

THE SPECIAL COMMISSIONER OF INVESTIGATION
FOR THE NEW YORK CITY SCHOOL DISTRICT

80 MAIDEN LANE, 20TH FLOOR
NEW YORK, NEW YORK 10038

RICHARD J. CONDON
SPECIAL COMMISSIONER

TELEPHONE: (212) 510-1400
FAX: (212) 510-1550
WWW.NYCSCI.ORG

July 6, 2007

Hon. Joel I. Klein
Chancellor
New York City Public Schools
Department of Education
52 Chambers Street, Room 314
New York, NY 10007

Re:    Brooklyn Community Management
       SCI Case #2006-4061

Dear Chancellor Klein:

An investigation conducted by this office has substantiated that Brooklyn
Community Management ("Brooklyn Community"), a Department of Education
("DOE") vendor which provides related services, submitted false billing forms regarding
a ▓▓▓▓▓▓▓▓▓▓student ("Student A").[1]  We found that erroneous information
regarding the dates and length of service of Student A's therapy were recorded on the
forms and concealed the fact that Brooklyn Community was violating the terms of
Student A's Individualized Education Program ("IEP").

This investigation began on November ▓ 2006, when ▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓contacted the office of the Special
Commissioner of Investigation ("SCI") and reported discrepancies between the billing
forms submitted by Brooklyn Community relating to Student A and the invoices
submitted ▓▓▓▓▓▓▓▓▓▓▓▓to transport Student A and his mother to therapy
sessions.

▓▓▓▓▓▓▓▓ provided additional information to SCI investigators. ▓▓▓▓▓▓
explained that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓had been paying for the transportation of
Student A and his mother to Brooklyn Community where the boy received related

---

[1] Brooklyn Community no longer provides services to Student A.

Hon. J. I. Klein                                   -2-                              July 6, 2007

services. In June 2006, ██████████████████ notified ███████ that the cost to transport Student A's mother was unreasonable and the DOE would no longer pay ████████ ████████ to take her to Brooklyn Community. ████████ continued that, because Student A's IEP required 12-month services, ████████ decided to pay the transportation cost out of its budget. According to ████████ after doing so for July through September ████████ then learned that Student A was above average in scholastic standings and might be borderline in requiring an IEP. ████████ determined that the transportation for Student A's mother should be terminated and she should be persuaded to accept a DOE service provider.

███████████ reported that ██ took part in a conference call with ████████████ ██████████████████████████████████ and Student A's mother, in which they discussed ████████ decision to terminate payments to the ████████ service. ████████ and ████████ also attempted to convince the mother that Student A should receive therapy from DOE service providers who were available for her son either during school hours or after school at her residence. According to ████████ the mother rejected both suggestions. ████████ added that the mother asserted: "What's the big deal? It's only one day a week," referring to the transportation costs. ████████ responded that Student A's IEP required separate days for services and that the ████████ billing reflected multiple days of transportation. ████████ said that ██ questioned the mother who again said that she and Student A traveled to Brooklyn Community only once a week.

████████ informed investigators that ██ was unaware of any DOE employee who authorized a change in the schedule of service for Student A or authorized a "doubling up" of the services provided. ████████ explained that if the mandated services were two 30 minute sessions and the provider doubled up the service into one 60 minute session, then the provider should be paid for only the first 30 minutes. According to ████████, if Brooklyn Community doubled up services for Student A and submitted billing forms reflecting separate visits, then the vendor had been overpaid and was in violation of its contractual agreement.

████████████ confirmed that there had been ongoing issues with transportation costs for Student A's mother. ████████████████████ indicated that the cost to transport the mother with her son by ████████ was unreasonable. The DOE ████████ pay for a livery service, but the mother refused, citing the fact that ████████ ████████████████████████████████████████████ continued that, when ████████████████████ ended the payments for ████████ services ████████ decided to fund the transportation so that Student A's services would not be disrupted. ████████ said that several attempts were made to introduce car service transportation, but the mother refused. ████████ explained that, when DOE service providers became

Hon. J. I. Klein                         -3-                          July 6, 2007

available, ███████ discontinued paying for ███████ transportation for Student A and his mother. According to ███████, it always has been the rule that parents must accept DOE service providers when they are available.

█████████ confirmed being involved in the conference call with ███████ and Student A's mother, during which they tried to explain to the mother that DOE service providers were available to meet with Student A at his school or to come to her home after school. The mother would not accept either suggestion. According to ███████ Parent A was angry and vehemently asserted that the law allowed her the use of an ███████; that she was comfortable and satisfied with Brooklyn Community, and that she did not want to interrupt Student A's schedule or the services he was accustomed to receiving. ███████ added that ███ and ███████ informed the mother that transportation costs for the ███████ service would not be paid after November 30, 2006.

In a telephone conversation with the assigned investigator in December 2006, Student A's mother explained that for the past two years she and her son had been transported by ████████████████████████ twice a week to Brooklyn Community. The mother added that she had been notified by the ███████ service that the DOE had failed to pay its invoices and ███████████ would no longer transport her or her son.

According to the mother, ███████ a DOE employee who worked for ███████, arranged for ████████████ to pick up her and her son. According to the mother, ███████ also arranged for all of Student A's related services – counseling, speech, and occupational therapy – to be provided in one day instead of two days. As a result, three or four months earlier – August or September 2006 – she and Student A began going to Brooklyn Community only on Wednesdays. She added that they were picked up at 4:30 p.m. at their residence and arrived back home at 8:30 p.m.

SCI investigators visited Brooklyn Community where they met with Director Allen Hymowitz and Vice-President Chuck Hefter. Both Hymowitz and Hefter were questioned about Student A's schedule and both responded that Student A and his mother came to the Brooklyn Community facility twice a week ███████. When investigators informed Hymowitz that the mother indicated that she and her son had started coming only once a week and that all of the services had been provided in that one appearance, Hymowitz, as well as Hefter, still insisted that Student A and his mother came twice a week.

The assigned investigator again spoke with Student A's mother to obtain additional information. According to the mother, she spoke with ███████ about finding ███████ service to replace ██████████ and ███████ said that ██ had found one ███████ however, to cut cost, the mother would have to agree to allow all of Student A's therapy sessions to occur in one day. After assurances from Brooklyn Community

Hon. J. I. Klein                               -4-                            July 6, 2007

that services could be provided in one day, she informed ▓▓▓▓▓▓▓ that she agreed to the arrangement. The mother added that Brooklyn Community and the CSE also had to agree to the new arrangement because the terms of Student A's IEP were not being followed. The mother claimed that she had conversations with both Hymowitz and Hefter and she was "positive" that they had spoken with the CSE and agreed to the new arrangement.

Student A's mother confirmed the conference call conversation with ▓▓▓▓▓▓▓ and ▓▓▓▓▓▓ but claimed to have no recollection of being told that the ▓▓▓▓▓▓ service funding would cease on November 30th. The mother reported being angry and asserted that the DOE had no right to stop Student A from receiving the services required by his IEP. She added that, by denying her ▓▓▓▓▓ transportation, she had no way to accompany her son to Brooklyn Community.

Thereafter, SCI investigators met with Student A's mother ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The mother reiterated that, for two years, she and her son had been transported to Brooklyn Community by ▓▓▓▓▓▓▓, twice a week. According to the mother, at some point, ▓▓▓▓▓▓▓▓ notified her that the DOE had stopped paying invoices for Student A's transportation and the company would no longer provide ▓▓▓▓▓▓ service for her and her son.

The mother continued that ▓▓▓▓▓▓ found another ▓▓▓▓▓▓ service, ▓▓▓▓▓▓, but to cut back on expenses, services had to be provided in one day rather than the multiple days mandated by Student A's IEP. The mother added that ▓▓▓▓▓▓ told her that the arrangement would have to be approved by ▓▓▓▓▓▓▓. According to the mother, after confirming that Brooklyn Community could provide all of Student A's required services in one day, she called ▓▓▓▓▓▓ and agreed to the arrangement. The mother said that she received a call from ▓▓▓▓▓ and learned that the company would be transporting her and her son to Brooklyn Community by ▓▓▓▓▓▓ once a week. The mother maintained that officials at Brooklyn Community were "afraid to admit" that they had agreed with ▓▓▓▓▓ to circumvent the terms of Student A's IEP and change her son's therapy schedule to one day.

In a telephone conversation with the assigned investigator, conducted on speaker phone, Hymowitz and Hefter admitted that they were not truthful during their initial meeting with SCI investigators. Both said that, for about two years, Brooklyn Community had provided services to Student A twice a week as stipulated in his IEP. Hymowitz and Hefter asserted that they were contacted by ▓▓▓▓▓▓▓ who mentioned the transportation issue and asked whether Student A's services could be provided during one visit. According to Hymowitz and Hefter, when they told ▓▓▓▓▓ that it could be arranged, ▓▓▓▓▓ said to continue to reflect two sessions in billing documents. Hymowitz and Hefter confirmed that Brooklyn Community then provided all of Student A's services in one day.

Hon. J. I. Klein                                    -5-                                    July 6, 2007

In a subsequent face-to-face meeting with SCI investigators conducted two days later, Hymowitz and Hefter changed their account. When the assigned investigator asked Hymowitz and Hefter to provide details about the conversation with ████████ regarding the scheduling change in services provided to Student A, they both looked bewildered and asserted that they never had a conversation with ████████ about providing all of the services to Student A in one day rather than the multiple sessions required by the boy's IEP. Hefter said that his last conversation with ████████ involved Student A's transportation issues. Hefter had no plausible explanation when asked why he would discuss transportation with ████████ when Brooklyn Community had nothing to do with transportation. Specifically asked about their statements during the telephone conversation two days earlier, both Hymowitz and Hefter maintained that they must have been misinterpreted. They denied saying that they had a conversation with ████████ regarding a change in Student A's schedule.

Both Hymowitz and Hefter said that, after their initial meeting with the assigned investigator, they looked into the matter and learned that Student A was coming for therapy only one day a week. According to Hefter, Student A's mother arrived at Brooklyn Community at the beginning of the 2006-2007 school year and spoke with Tanya Gershin, a case worker, who changed Student A's schedule. Both men asserted that they did not question Gershin about her failure to notify them of the change in Student A's schedule. When asked whether a case worker had the authority to circumvent the terms of an IEP, neither man answered.

SCI investigators then met with Tanya Gershin who provided relevant information. Gershin maintained that Student A's mother came to Brooklyn Community in early September 2006, and asked to change her son's schedule to only one day a week, Wednesday. According to Gershin, she found that all of Student A's providers were available on Wednesday and so she changed his schedule. Gershin continued that she did not tell Director Hymowitz or Vice-President Hefter about the scheduling changes because she did not feel that it was necessary to do so. Gershin acknowledged that she knew Student A received services twice a week, which were the terms of IEP. Gershin added that she did not know the ramifications for not following the guidelines of an IEP.

Brooklyn Community billing secretary Connie Ettlinger, assigned to a location other than the center where Student A received services, provided relevant information. Ettlinger was questioned about a letter received by ████████, dated November █ 2006, which listed the dates when Brooklyn Community provided services to Student A. Ettlinger confirmed that she prepared the letter and sent it to ████████ Ettlinger was asked to explain why the letter indicated that Student A received services twice weekly when, since September 2006, services had been provided only once a week. Ettlinger responded that she had not received any billing information from Student A's service center and did not have updated information in the computer. Ettlinger added that ████ ████████ was constantly calling her for the letter in question because the DOE could not

Hon. J. I. Klein                             -6-                        July 6, 2007

pay the ▓▓▓▓ service without confirmation that the therapy sessions had been
provided. Ettlinger said that she informed ▓▓▓▓▓ that she had not received any
confirmation from Student A's center and ▓▓▓▓ told her "something about
transportation issues."

Ettlinger was asked how she arrived at the dates listed in the letter and she
responded that she "probably looked at old bills." Ettlinger was confronted with a prior
letter from Brooklyn Community to ▓▓▓▓ which indicated that Student A received
services mostly on Sundays and Tuesdays, while the letter she recently had sent to
▓▓▓▓ showed that services were provided on Wednesdays and Thursdays. According
to Ettlinger, she did not recall how she arrived at the Wednesday and Thursday dates, but
suggested that she called the center and someone – whom she could not or would not
name – gave her those dates.

An examination of ▓▓▓▓▓▓▓ billing records revealed that the company
transported Student A and his mother from their residence to Brooklyn Community twice
weekly, Wednesday and Thursday, between June 6, 2006 and September 14, 2006. The
documents also showed that, from September 20, 2006 through November 29, 2006,
Student A and his mother were transported to Brooklyn Community only once a week, on
Wednesday.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ also provided information. ▓▓▓▓▓▓
explained that her responsibilities included data entry and reimbursement for
transportation. ▓▓▓▓▓▓ recalled some issues concerning ▓▓▓▓▓▓ service that was
not being paid by the DOE in a timely fashion and therefore refused to continue
transporting Student A and his mother. ▓▓▓▓▓▓ added that ▓▓ found ▓▓▓▓ which
provided ▓▓▓▓ transportation for Student A and his mother from their residence to
Brooklyn Community.

▓▓▓▓▓ explained that ▓▓ received transportation invoices, compared the dates
to the service provider confirmation letter, prepared a package for payment, and sent it to
▓▓▓▓▓▓▓▓. According to ▓▓▓▓▓ was not aware of the actual terms of
Student A's IEP and had learned only recently from ▓▓▓▓▓▓▓ that services which
had been provided in two visits had been changed to one session.

▓▓▓▓▓▓ denied having any involvement in changing Student A's schedule from
two days to one day. ▓▓ added that such an action was well beyond ▓▓ job
responsibilities. ▓▓▓▓▓ reiterated that ▓▓ had only just learned about the change and
denied having a conversation with anyone about deviating from the terms of Student
A's IEP. Confronted with Student A's mother's claimed conversation with ▓▓▓▓▓
about cutting costs by reducing the number of days the boy and his mother were
transported by ▓▓▓▓, ▓▓▓▓▓ denied having such a conversation with the mother.

Hon. J. I. Klein                              -7-                              July 6, 2007

████████ asserted that an enormous amount of money was spent on Special Education and questioned why anyone would conceive of an idea to save money on transportation by changing a student's IEP schedule.

████████ acknowledged that ████ repeatedly contacted Brooklyn Community because ████ had not received confirmation date letters and said that ████████ could not be paid without that information.

The assigned investigator had a conversation with ████████████, assigned to ████ ████████████ who participated in the preparation of Student A's IEP. ████████ reviewed a copy of Student A's most recent IEP which was prepared in June 2006. ████ ████noted that the IEP recommended that, on a weekly basis, Student A should receive three 30 minute sessions of speech therapy in a group no larger then three. According to ████████, it was the professional opinion of psychologists that Special Education students would have an absorption problem after 30 minutes. With the change in Student A's schedule, he would receive his 90 minutes of speech therapy in one session. ████ ████said that Student A definitely would not benefit from that type of service. ████████ explained that an IEP was an official document to which the service provider agreed to adhere. ████████reiterated that the recommendation of 30 minute sessions for any type of therapy were Psychology based.

A comparison of billing records submitted to the DOE by Brooklyn Community and ████████showed that Brooklyn Community was submitting false documentation. A form ostensibly prepared and signed by Brooklyn Community Speech Therapist Sharon Sylvan indicated that she provided services to Student A on July 5, 6, 7, 12, 13, 14, 19, 20, 21, 26th, 27, and 28, 2006. Each session was listed as 30 minutes in duration. An invoice from ████████ showed transportation of Student A and his mother on July 5, 6, 12, 13, 19, and 20, 2006. There was no record of ████████ having supplied transportation to Student A and his mother on July 7, 14, 21, 26, 27, and 28, 2006.

A second form bearing Sharon Sylvan's signature indicated that she provided speech therapy services to Student A on August 2, 3, 4, 9, 10, and 11, 2006. ████████ invoice showed that Student A and his mother received transportation on August 9, 10, 16, and 17, 2006.

In a telephone conversation with the assigned investigator, Student A's mother provided information about her son's therapy sessions in the summer of 2006. The mother said that she and Student A did not go to Brooklyn Community three days a week in July and August 2006. According to the mother, Student A's 2005-2006 IEP required two sessions per week and those terms were followed. She added that, in September, the 2006-2007 IEP went into effect and required three speech sessions. The mother reiterated that, by late September, all of the services were being provided in one day

Hon. J. I. Klein                                    -8-                                    July 6, 2007

rather than the two or three days which were mandated by the IEPs. Moreover, the mother reported that Student A was away at camp on July 26, 27, 28, 2006 and August 2, 3, and 4, 2006.[2]

An examination of billing records revealed that, from June 6, 2006 to September 14, 2006, ███████ transported Student A and his mother from their residence to Brooklyn Community twice a week, on Wednesday and Thursday. The documentation further showed that from September 20, 2006 to November 29, 2006, ███████ transported Student A and his mother only once a week, on Wednesday.

In an interview with SCI investigators, Sharon Sylvan reported that she began providing speech therapy to Student A in approximately March 2006. Sylvan explained that Student A was not her client, but one day she filled in for another therapist, the boy's mother admired her skills, and asked whether she would take over as Student A's speech therapist. Sylvan admitted that, initially, her session with Student A was 60 minutes in duration. Sylvan said that she was not aware that Student A's IEP required two 30 minute sessions.

According to Sylvan, Student A's mother mentioned that her son's new June 2006 IEP required three 30 minute sessions; however, the mother asked whether Sylvan could provide the service in one 90 minute session. Sylvan responded that her schedule would allow the 90 minute session, but told the mother to obtain approval from the management at Brooklyn Community. According to Sylvan, in late September 2006, she retrieved her daily schedule at the front desk and discovered that Student A had been scheduled for a 90 minute session. Sylvan said that she assumed the mother had received permission from management. Sylvan added that, from that point on, she only conducted 90 minute sessions with Student A.

Sylvan provided information about her billing records. According to Sylvan, she submitted her time sheets to the front desk on a daily basis and then, once a month, Hefter would have her sign all of the billing forms for each client she serviced. Sylvan said that she signed approximately 30 to 35 forms each month and reported that she did not examine each form for accuracy.

Sylvan's daily time reports for July 5, July 12, July 19, August 9, and August 23, 2006, which she acknowledged preparing, indicated that Student A received one 90 minute session, rather than the three 30 minute sessions required by his IEP. Sylvan then reviewed the billing forms and confirmed that it was her signature on the bottom of each. Sylvan acknowledged that, in contrast to the information on her time reports, the billing forms indicated that she provided three 30 minute sessions to Student A. Sylvan

---

[2] The assigned investigator confirmed that, from July 23, 2006 through August 5, 2006, Student A attended a summer camp in ███████.

Hon. J. I. Klein                              -9-                              July 6, 2007

explained that her daily time reports were accurate, that she did not prepare the billing forms, and that she merely signed what was presented to her without reviewing the documents.

In a subsequent telephone conversation, the assigned investigator asked Sylvan about the billing forms relating to the dates when Student A was at camp. Although Sylvan was unable to locate relevant notes, she recalled that Student A attended camp and that his mother demanded that the therapist make up the sessions which the boy had missed. According to Sylvan, she held 90 minute sessions with Student A on August 23 and August 30, 2006. Advised that there were no corresponding ▮▮▮▮▮▮ invoices for those dates, Sylvan asserted that his sister or another relative transported Student A on his last visits that summer.[3]

In a telephone conversation with the assigned investigator, Brooklyn Community Director Allen Hymowitz confirmed that Student A did not appear for therapy for several weeks when he was at camp. Hymowitz added that the mother wanted the missed sessions made up and that Sylvan did so on August 23 and August 30, 2006. Hymowitz admitted that the billing forms were not accurate, but maintained that the services were provided. Asked to explain the inaccurate information on the forms, Hymowitz pointed to the notation on the form which indicated that services were approved between July 5 and August 11, 2006. Hymowitz again acknowledged that information on the billing forms – specifically dates of service – was not accurate, but reiterated that the service was provided. Hymowitz blamed the "entire mess" on Student A's mother who was "impossible to deal with" so that Brooklyn Community "just caved in" and gave Student A what his mother wanted, which was to provide the services all in one day rather than the three separate sessions which were required by his IEP.

In another telephone conversation with the assigned investigator, Student A's mother adamantly maintained that she did not initiate the changes in the number of sessions provided to her son. The mother reiterated that, in order to provide uninterrupted transportation to her and her son, ▮▮▮▮▮▮ asked whether she would be amenable to having all therapy services provided in one day at Brooklyn Community. The mother acknowledged that her son's revised IEP required three sessions per week, but she agreed to let ▮▮▮▮▮▮ change her son's schedule, even though it eventually cut off funding for her transportation.

The CEO of Brooklyn Community, Israel Leibowitz, informed the assigned investigator that the company did not submit any invoices for September or October 2006. Leibowitz said that Brooklyn Community took the loss for the services provided in September and October because it had acknowledged that the invoices would have been

---

[3] Sylvan's time reports for August 23 and August 30, 2006, showed that she provided services to Student A on those dates.

Hon. J. I. Klein                        -10-                      July 6, 2007

inaccurate. According to Leibowitz, Brooklyn Community submitted a proper invoice for three sessions in November 2006. He added that, thereafter, the company stopped servicing the student.

It is the recommendation of this office that Brooklyn Community Management be required to repay all funds it received for sessions which violated Student A's IEP. Moreover, Brooklyn Community should be found to be unqualified as a vendor for the DOE.



We are forwarding a copy of this letter and of our report concerning this investigation to the Office of Legal Services. We also are sending our findings to the State Education Department for whatever action it deems appropriate. Should you have any inquiries regarding the above, please contact ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ the attorney assigned to the case. ▓▓▓ can be reached a▓▓▓▓▓▓▓▓▓▓ Please notify ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ within 30 days of receipt of this letter of what, if any, action has been taken or is contemplated regarding Brooklyn Community Management. Thank you for your attention to this matter.

Sincerely,

RICHARD J. CONDON
Special Commissioner
of Investigation for the
New York City School District

By:     Regina A. Loughran
        Regina A. Loughran
        First Deputy Commissioner





# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

David N. Ross, Executive Director
Division of Contracts & Purchasing

Jay G. Miller, Chief Administrator
Office of Policy and Vendor Performance

Overnight Mail

September 25, 2007

Israel Leibowitz, Chief Executive Officer and
Abraham Greenfield, President
Brooklyn Community Management, LLC
2555 Nostrand Avenue
Brooklyn, NY 11210

**RE: Integrity Issues**
    **SCI Case #2006-4061**

Dear Gentlemen:

I am in receipt of the letter dated August 31, 2007, from Mr. Allen Hymowitz, in which Brooklyn Community Management responds to the findings of the Special Commissioner of Investigation for the New York City School District (SCI), Case #2006-4061. The August 31 letter provides a detailed response to the SCI findings, unlike the prior letter from Mr. Leibowitz, dated August 1, 2007 (received by my office on August 6, 2007). A review of both letters and the SCI findings demonstrates the following:

1. You indicate that ". . . Mr. Condon's letter recognizes, Mrs. M can easily become angry and agitated." Instead, the letter merely indicates what others, namely BCM representatives, reported to SCI investigators. Regardless, the conduct of a client's parent does not absolve BCM from its obligation to provide services in accordance with the terms and conditions of its contract with The New York City Department of Education (NYCDOE).

2. You attribute a statement that the "entire situation was the DOE employee's fault" to the SCI investigator. Instead, the SCI findings do not reflect that the investigator believed this, nor is it demonstrated that such a characterization is accurate.

3. You acknowledge that your employee "was wrong" to make changes to the child's schedule that were inconsistent with the Individualize Education Plan (IEP). Further, you acknowledge "mistakes were made concerning the IEP services that were provided to the [student] and the billing for these services." However, you indicate that BCM did not profit from these mistakes and that the SCI report does not state that BCM billed for services not provided to the student. We are unable to find a basis for these assertions and offer the following seemingly contradictory information derived from the SCI investigation:

Brooklyn Community Management
September 25, 2007
Page 2

    a. Submission by BCM of erroneous billing forms for the following dates: July 5, 6, 7, 12, 13, 14, 19, 20, 21, 26, 27, 28, August 2, 3, 4, 9, 10, 11, 23, and 30, 2006. All of the requests for payments made by BCM for those dates failed to accurately represent the truth either because there was no services provided on the date(s) in question, or the service provided was not in compliance with the student's IEP.

    b. On the following dates included in the list above, July 26, 27, 28, August 2, 3, and 4, 2006, the student was at camp and was not even in New York City.

    c. On the following dates included in the list above, July 5, 12, 19, August 9, 23, and 30, 2006, BCM provided services in one 90 minute session, thereby violating the student's IEP and undermining the benefit that could be derived by the student from the services rendered from a single 30 minute session. Specifically, the most recent IEP, prepared in June 2006, recommended that on a weekly basis the student should receive three 30 minute sessions of speech therapy in a group no larger than three. According to the psychologist who participated in the preparation of the IEP, it was his professional opinion that a special education student would have an absorption problem after 30 minutes. The psychologist offered that the student would not benefit from 90 minutes of speech therapy received in one session.

    d. Your letter denies any "deliberate attempt by BCM to conceal the facts with false billing forms," yet the facts demonstrate otherwise. BCM submitted a form that was supposedly prepared and signed by Ms. S, the speech therapist providing service to the student, indicating that she provided services to the student on July 5, 6, 7, 12, 13, 14, 19, 20, 21, 26, 27, and 28, 2006. Another form supposedly prepared by Ms. S, indicated she provided services to the student on August 2, 3, 4, 9, 10, and 11, 2006. Ms. S offered records and information that demonstrated that the billing forms BCM submitted to DOE requesting reimbursement for the services she provided do not match her time reports that show the actual dates of service. She indicates that she provided BCM with her daily time reports from which BCM prepared the billing forms. Further, Ms. S indicated that as early as March 2006, when she began providing services to the student, she was conducting 60 minute sessions, rather than the two 30 minutes sessions weekly, required by the IEP at that time.

4. During our telephone conversation of August 20, 2007, you indicated that Mr. Hymowitz is not actually a Vice President of BCM although you permit him to carry business cards falsely identifying him as such.

5. You have stated during numerous phone conversations and messages that "I did nothing wrong. My employee made a mistake." These comments demonstrate a failure to understand that BCM is responsible and liable for the actions of its employees.

6. BCM indicates that it has taken action to prevent these circumstances from reoccurring by instituting a "new computer program." If the NYCDOE decides to consider

Brooklyn Community Management
September 25, 2007
Page 3

maintaining a contractual relationship with BCM for these services, it will be necessary to verify that these and other efforts taken by BCM are real and reliable.

Before the NYCDOE makes a final determination regarding whether BCM possesses the requisite business integrity to continue to do business with the Department of Education, it will be necessary to determine the extent to which BCM's invoices were in error either because services were not rendered or were offered inappropriately to this student. As part of the effort to make such a determination and in accordance with Sections 20.2, 26, et al. from your contract, please provide NYCDOE with all written records BCM has prepared relating to this student, showing the services provided to the student and the student's attendance *during the entire term of the contract.*

NYCDOE is providing you ten (10) days from the date of this letter to submit a comprehensive response to this letter. Please send your response via overnight carrier to my attention. The sufficiency of your response may influence your current contracts with the NYCDOE, future responsibility decisions, as well as your ability to receive any future contracts from NYCDOE and potentially other governmental agencies.

If you have any questions, please contact me at (718) 935-4394.

Sincerely,

Jay G. Miller

cc:    David Ross, Executive Director, Division of Contracts and Purchasing
       William Joyce, Deputy Counsel, Office of Legal Services



**THE NEW YORK CITY DEPARTMENT OF EDUCATION**
JOEL I. KLEIN, *Chancellor*

| | |
|---|---|
| David N. Ross, Executive Director | Jay G. Miller, Chief Administrator |
| Division of Contracts and Purchasing | Office of Policy and Vendor Performance |

<u>By Facsimile & Overnight Mail</u>

November 8, 2007

George Lebovits, Owner
Abraham Greenfield, Director
Brooklyn Community Management, LLC
2555 Nostrand Avenue
Brooklyn, NY 11210

**RE:     Integrity Issues/**
**Special Commissioner of Investigation for the New York City School District (SCI)**
**Case Number 2006-4061**

Dear Gentlemen:

I am in receipt of Mr. Israel Lebovits' October 3, 2007 letter and the New York City Department of Education (NYCDOE) finds Brooklyn Community Management's (BCM) response unacceptable for the following reasons:

1. Regardless of whether services were provided pursuant to its contract or a related services agreement, BCM circumvented the method of service outlined in the child's Individual Education Plan (IEP) and submitted erroneous invoices to disguise this. Further, BCM alleges that in separate conversations with the SCI investigator and NYCDOE General Counsel, SCI and DOE acknowledged that the student's parent was "difficult." Any such conversations notwithstanding, the actions of the student's parent did not justify BCM's conduct in disregarding the students IEP and submitting false invoices.

2. BCM indicated that it "had no choice but to provide the student with services...only one day each week." In our view, BCM was obligated to comply with the IEP. At best, BCM was entitled to request payment for the initial 30 minutes of the sessions that ran longer than the half hour authorized by the IEP.

3. BCM attributes responsibility for the unilateral changes to the student's IEP to a single employee with the duty of scheduling student services. However, a review of the SCI report indicates that other individuals at BCM were aware of the failure to comply with the IEP either at the point of scheduling or when invoicing DOE. For example, and though subsequently recanted, the report identifies two individuals serving in managerial capacities that acknowledged participating in the initial decision to deviate from the IEP.

P.02
P.02/04

NOV 26 2007 12:26

NOV-08-2007  13:32
NOV-08-2007  14:21

PAGE.02

Brooklyn Community Management
Messrs. Lebovits and Greenfield
11/8/2007
Page 2

4. The letter asserts that the student's parent demanded that BCM "make up" for speech therapy lessons not conducted while the student was at camp. BCM apparently acceded, but submitted inaccurate bills showing dates during which no therapy had been provided.

5. BCM's letter went to some lengths to justify a different service methodology than the one identified in the IEP and in doing so directly contradicts the opinion of the psychologist on the Committee on Special Education (CSE) that created the IEP in the first place.

Further, DOE's customary and ordinary practice when considering the findings contained in an SCI report includes a review of the business integrity of the vendor and its principals. Such a review has revealed information that requires DOE to inquire about the following:

6. BCM's recent VENDEX submissions appear to contain numerous errors and/or inconsistencies. Please advise about the following and any other instances of inconsistent, incomplete and/or incorrect information:

   a. Although George Lebovits is identified as the owner in a Principal Questionnaire, he failed to execute the certification page. Instead, Abraham Greenfield did. Mr. Lebovits is also not identified as the principal owner in the Vendor Questionnaire, as the Principal Questionnaire suggests he should have been. Moreover, Chuck Hefter, who BCM previously acknowledged is a (non-officer) director, is otherwise permitted to represent himself as an officer of the company.

   b. We have information identifying Israel Lebovits (also listed as Leibowitz on search engines) and Alan Hymowitz, as CEO and Director of BCM, respectively, yet they are not listed in your recent VENDEX submission. Our information appears to indicate the Israel Lebovits and George Lebovits are one and the same person, however we are not certain.

   c. The following entities were not mentioned in the vendor or principal VENDEX questionnaires submitted by BCM, yet they appear to be possible affiliates and/or subsidiaries:
      1. Brooklyn Community Medical
      2. Community Occupational Therapy
      3. Community Occupational Therapy Rehab
      4. Community Occupational Therapy Rehab Services
      5. Community Occupational Therapy Rehabilitation Services
      6. Community Therapy and Rehabilitation Facility
      7. Community Therapy Corp
      8. Community Therapy Rehabilitation
      9. Tech Rehab Inc.
      10. Sumner Health Providers

65 Court Street, 12th Floor, Brooklyn, N.Y. 11201
Client Services 718-935-4444 • Vendor Hotline 718-935-2300
www.schools.nyc.gov/dcp

P.03
P.03/04

NOV 26 2007 12:26

NOV-08-2007 13:33
NOV-08-2007 14:21

PAGE.03

Brooklyn Community Management
Messrs. Lebovits and Greenfield
11/8/2007
Page 3

Be advised that you should read all definitions carefully in advance of responding to any VENDEX related questions.

7.  We came across numerous outstanding liens against Community Occupational Therapy Rehab and George Lebovits. Community Occupational Therapy Rehab is listed in VENDEX as an for which George Lebovits was a principal owner or officer from September 2000 through August 2003. Our information shows the following:

   a.  Community Occupational Therapy Rehab
      Federal Tax Lien                              $571,690.71
      NYS Individual Commissioner's Warrant       $   1,237.48
      NYS Commissioner of Labor                   $   7,222.46
      NYS Commissioner of Labor                   $   1,043.00

   b.  George Lebovits
      NYS - 1991                                  $   3,087.00
      NYS - 1993                                  $   1,474.00

As you know, the SCI report recommended that BCM be found to be unqualified to serve as a vendor for the DOE. Notwithstanding, the NYCDOE is affording BCM an opportunity to address all the issues raised previously and newly herein. Once the NYCDOE receives and reviews your response it will make a final determination. Please provide your response within ten (10) days from the date of this letter, sending it overnight to my attention.
If you have any questions, please contact me at (718) 935-4394.

Sincerely,

Jay G. Miller

cc:   Kathleen Grimm, Deputy Chancellor
      Michael Best, Esq., General Counsel to the Chancellor
      David Ross, Executive Director, Division of Contracts and Purchasing
      Theresa Europe, Esq., Deputy Counsel to the Chancellor, Office of Special Investigation

| | |
|---|---|
| **From:** | Friscia Catherine [CFrisci@schools.nyc.gov] |
| **Sent:** | Friday, August 17, 2007 1:35 PM |
| **To:** | Allied Medix Resources Inc.; Allied Medix Resources Inc.; Bilingual Network/DRG Resources Group, Inc.; Binet, Inc./Comprehensive Center/Comprehensive Counseling/Related Services Associates/Sign Talk/Therapists Network; Carenet Group, Inc.; Community Rehabilitation Services; Comprehensive Resources, Inc.; Consultants on Call; Diagnostic Assessment, Inc Egypt Tone; Emilia's Kids; Emilia's Kids; Eval Care, Inc.; Feigi Halberstam; Miriam Selig, Miriam Selig; Gotham Per Diem; Gotham Per Diem; Hear Me Speak, Inc.; Hear Me Speak, Inc.; Horizon Health Care Staffing; Interim Health Care of Greater NY; Interim Health Care of Greater NY; Manual Therapy Center; Millennium Rehab Services, LLC; Millennium Rehab Services, LLC; Multilingual Interdisciplinary Services, Inc.; MultiLink Group, Inc.; New York Therapy Placement Services Inc.; New York Therapy Placement Services, Inc.; New York Therapy Resources OT, PT, and ST, PLLC; Perfect Playground; Physical Rehabilitation Consultants; Physical Therapists On Call P.C.; Prime Time Care; RCM Health Care Services; RCM Health Care Services; Richmond Uni Home Care; Staten Island University Hospital; Staten Island University Hospital; Strivright, Inc.; Suncare Rehab Inc.; Sunny Days Corp; TemPositions Health Care, Inc.; TemPositions Health Care, Inc.; TheraCare; TheraCare; Therapeutic Resources Physical Therapy LLP; Therapeutic Resources Physical Therapy LLP; Top Rehab, Inc.; Unique Nurses Registry Inc; University Optometric Center - SUNY; VTA Management Services; VTA Management Services; Yeled v'Yalda Early Childhood Center Inc; Yeled v'Yalda Early Childhood Center Inc |
| **Cc:** | Mopper Ava; Dastas Hermes; Douyon Marie; Kanian Louise; Gersch Michael; Mulligan John, Maldonado Lillian; Sprecher Marilyn; Beatty Michele; BrownLee Rosetta; Cuffey-Jackson Deborah; Donegan Gerard; Donnellan Claire (31J831); Linder Ivy; Morell Esther; Rosenstock Arlene |
| **Subject:** | Arrest/Investigation Notifications |
| **Importance:** | High |

# !!! ATTENTION !!!

## Please Share This Information With All Your Assessment/Related Service Personnel

The Office of Related and Contractual Services has been informed by the Department of Education's Office of Personnel Investigations and/or the Office of Special Investigations that as a result of an investigation, the following individuals or agencies have been placed on the DOE's Ineligible List and should not be hired to provide Assessments or Related Services to either pre-school or school-age students either through a contract agency or as an independent provider until further notice.

Thank you.

| Name | Discipline | Last Known Agency |
|---|---|---|
| Grace Jones Roberts | Occupational Therapist | Unknown |
| Tanya Cabeal | Occupational Therapist | Unknown |
| Nicola Sinclair | Occupational Therapist | Unknown |

8/21/2007

Richard Primps, Jr.          Therapist          Unknown

**Notice of Agency Ineligibility**

Please note that due to the results of an investigation conducted by the Office of the Special Commissioner, **Brooklyn Community Management, LLC** has been deemed ineligible to provide any services to students through the New York City Department of Education until further notice. This means that they may not serve as agency providers, RSA providers or Pre-School providers.

Thank you for your cooperation in this regard.

*Catherine Friscia*
*Deputy Director*
*Office of Related & Contractual Services*
*52 Chambers Street, Room 219*
*New York, NY 10007*
*Phone: (212) 374-2319*
*Fax: (212) 374 5752*
*E-Mail: CFrisci@schools.nyc.gov*

*Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.*



Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0010

For instance, call:
Your Caller ID: 644760

Notice Number: CP15B
Date: November 19, 2007

Taxpayer Identification Number:
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
Tax Form: CVL PEN
Tax Year: December 31, 2001

041464.442470.0186.005 1 MB 0.360 760
|..|.||||.|..|..|.|..|.|.|.|||.||..|..|||...|..|.|.|..|

GEORGE  LEBOVITS
8 RONALD DR
MONSEY  NY  10952-2607080

64

## We Charged You A Penalty For Not Paying Employment Tax

According to our records, you have not paid the Employment Taxes that you were responsible for withholding on the following tax account(s).

| Employer Identification Number | Tax Form | Tax Period Ended | Employer Identification Number | Tax Form | Tax Period Ended |
|---|---|---|---|---|---|
| 22-3706370 | 941 | December 31 | | | |

The law allows us to charge a penalty if you don't collect, account for, or pay over Employment Taxes. The penalty is the amount of unpaid Employment Taxes withheld from employees. We usually refer to these taxes as "Trust Fund Taxes." Therefore, we call the penalty the "Trust Fund Recovery Penalty."

We figured the penalty and interest you owe as follows:

| | |
|---|---|
| Interest Figured to November 19, 2007 | $.00 |
| Total Amount Due | $229,479.99 |

If you agree with our figures, please pay the amount shown above by December 4, 2007 to avoid further interest charges.

If you don't agree, the law allows you to file suit for refund. To do so, you must:

-pay the withheld tax for one employee for one quarter of liability; and

-file a claim for refund on Form 843, Claim for Refund and Request for Abatement, for the amount paid by December 19, 2007.

However, we will charge interest on any amount you don't pay by December 4, 2007.

If you want us to suspend collection of the penalty while the suit is pending before the court, you must:

-post a bond with the Internal Revenue Service for one and a half times the balance (the penalty amount shown above minus the amount you paid) by December 19, 2007

However, if we determine that the collection of the amount due is in jeopardy, we may collect it immediately without waiting until December 19, 2007.

✂ **CUT HERE** ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Return this voucher with your payment or correspondence.

| | |
|---|---|
| Your Telephone Number: | Best Time to Call: |
| ( ) | AM ___ PM |

**Amount you owe:**     <u>$229,479.99</u>

* You will avoid additional penalties and/or interest if we receive your full payment by **December 4, 2007**

☐ **Amount enclosed:**     $ _____

* Make payable to United States Treasury
* Write Taxpayer Identification Number, tax period and tax form number on payment

☐ **Correspondence enclosed**

SB          200745          0440          29254-705-52754-7

15B     Internal Revenue Service
        Ogden, UT  84201-0010

GEORGE LEBOVITS
8 RONALD DR
MONSEY NY  10952-2607080

068440258 HA LEBO 55 0 200112 670 00022947999

# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

| | |
|---|---|
| David N. Ross, Executive Director | Jay G. Miller, Chief Administrator |
| Division of Contracts & Purchasing | Office of Policy and Vendor Performance |

Via Facsimile and Express Mail

December 11, 2007

Julius Berman
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022

Re: **Integrity Issues**
    **SCI Case #2006-4061**

Dear Mr. Berman:

I am in receipt of your letter of November 14, 2007, to William Joyce, Deputy Counsel of the New York City Department of Education's (DOE) Office of General Counsel and of November 26, 2007, to Michael Best, the NYCDOE General Counsel. In addition, I am in receipt of a letter from your client Mr. George Lebovits, dated November 13, 2007. This letter responds to all of the aforementioned correspondence.

## Introduction

The items raised for the first time in my letter of November 8 could not have been raised in the earlier letter of July 30. When that initial letter was sent, DOE just was starting the customary background check that we do upon receiving an SCI report. Our background review encompasses the company, all principal owners and officers, and any other individuals that may be cited in the SCI report. It also includes a consideration of VENDEX submissions and all information that is, or should have been, provided therein. When the background check raises issues that warrant further examination, we follow through. In July, DOE was not aware of the tax issues, nor had the questions regarding affiliates become evident. However, all items presented in my letter of November 8 are related to DOE's review and consideration of whether BCM, Mr. Lebovits and the others cited in the SCI report possess the requisite responsibility to do business with DOE.

## VENDEX Submissions / Other Entities / Outstanding Taxes

Mr. Lebovits' assertions regarding BCM's VENDEX submissions are not correct. As I indicated in my letter of November 8, Mr. Lebovits did not execute the certification page of his Principal Questionnaire, rather Mr. Abraham Greenfield did. It is a requirement that a principal execute his own Principal Questionnaire (the first sentence atop the certification page for the Principal Questionnaire states: "The Principal Questionnaire must be certified by the Principal completing the Questionnaire)." Moreover, Mr. Levovits is not identified as the principal owner in response to Question 6a of the Vendor Questionnaire. Question 5c, where Mr. Lebovits was identified, is a question that asks about ownership or lease interests in real estate.

Page 2
BCM – Response to Berman
12/11/2007

I asked about the other companies because information gathered from the background check demonstrates that BCM does business under various corporate names and/or shares office space with a number of other entities located at 2555 Nostrand Avenue. Despite this, the answer to question 5a of the Vendor Questionnaire did not indicate that BCM shared office space and with one exception, none of these other names or entities was identified in the answer to question 2 of the Vendor Questionnaire. Except for the example cited below, these matters suggest that Mr. Lebovits also may have failed to include these entities in his response to question 5 of the Principal Questionnaire.

Mr. Lebovitz stated that none of the companies listed in my letter of November 8 are connected to BCM and therefore were not included in the VENDEX questionnaires. Yet, he did identify himself as a principal of Community Occupational Therapy and Rehab and indicated that he became an officer as a method of securing a loan made to the company. Moreover, in his Principal Questionnaire, Mr. Lebovits identifies himself as the owner of Community Therapy and Rehabilitation, LLC, with EIN 22-3706370.

My letter of November 8 listed a number of entities that the information gathered during our background check demonstrates are either the same company or are affiliates of BCM. Moreover, and as also indicated in that letter, we discovered that one of these entities has a number of outstanding liens and or warrants owing to New York State, and a Federal tax lien of $571,690. In your letter of November 26, 2007, you acknowledge the existence of a tax penalty of $299,479, being assessed by the Internal Revenue Service (IRS) against one of the "Community entities." The copy of the IRS document you provided, sent to Mr. Levovits at this home address in Monsey, New York, shows an EIN that is the same as the one given by Mr. Lebovits for Community Therapy and Rehabilitation, LLC.

### Failure to Follow IEP / Falsified Invoices

BCM has acknowledged that the conduct of a client's parent does not absolve it of the obligation to provide services in accordance with the Individualized Education Plan (IEP). However, BCM has continued to insist that it did not submit false invoices and denies any attempt to conceal the facts. As delineated in my letter of September 25, 2007, BCM submitted erroneous billing forms on numerous occasions. Further, BCM presented billing forms that did not show the actual dates of service and falsely depicted the length and frequency of the therapy sessions to the speech therapist for signature. The evidence clearly demonstrates that BCM knowingly submitted falsified billing forms to the NYCDOE requesting payment for services that were not provided in the manner defined by the IEP and not on the dates specified on the forms.

BCM's claim that it "never submitted any invoices for any sessions when the IEP was not followed for this student because it did not bill for any sessions from September – November 2006,…" demonstrates a profound lack of understanding of the impropriety that is the subject of the SCI report. BCM did submit billing forms for sessions when the IEP was not followed. The subsequent decision to not bill for September to November 2006, apparently made after BCM became aware of the SCI investigation, does not undo BCM's prior act of submitting falsified invoices.

Mr. Lebovits, as he has in prior communications, claims that DOE employees authorized a change in the provision of service, yet the SCI report indicates that none of the DOE employees acknowledges authorizing any changes to the IEP.

BCM attempts to justify its failure to comply with the method of service provision defined in the IEP by implying that the psychologist that created the IEP somehow does not agree with DOE's position. The psychologist participating in the preparation of the student's IEP clearly indicated to the SCI investigator that providing service in the manner done by BCM would not benefit the student.

Mr. Lebovits claims that BCM's erroneous billing for services while the student was away at camp was attributable to a clerical error. Of course, even this claim fails to explain the other dates for which BCM submitted erroneous billing forms.

**Other Matters**
Although Mr. Lebovits stated that Mr. Hefter does not represent himself as an officer, the SCI investigator clearly identified Mr. Hefter as Vice President in the report. Moreover, Mr. Lebovits confirmed in a conversation with me on August 20 that although Hr. Hefter is not a Vice President or officer, he is permitted to carry business cards that identify him as such. Clearly, Mr. Levovits' statement that Mr. Hefter does not represent himself as an officer is not accurate.

**Conclusion**
BCM has persisted in referring to this situation as one that was created by DOE and, in so doing, continues to refuse to accept responsibility for its failure to comply with the IEP and for having submitted false billing forms. DOE has afforded BCM numerous opportunities to address and fully acknowledge the findings contained in the SCI report and instead, BCM continues to deflect responsibility elsewhere. Moreover, DOE's customary background review, conducted after the receipt of an SCI report, revealed additional information that has demonstrated BCM's failure to answer accurately all questions on its VENDEX forms. In addition, DOE has learned that at least one entity that is either the same company as, or an affiliate of BCM, has outstanding tax warrants or liens owing to New York State, as well as a Federal tax lien of $571,690. Further, you have acknowledged the existence of an Internal Revenue Service tax penalty of $299,479.

The entirety of information known to DOE leads to a conclusion that it is prudent that we follow the recommendation of the SCI report and find BCM unqualified to do business with the DOE. BCM, any of its corporate aliases, any affiliates and all principal owners or officers will not be able to provide service as a contracted vendor, nor as a provider under related services agreements (RSA's).

DOE also finds that this SCI investigation raises serious concerns and doubts about the accuracy of the billing forms submitted by BCM for services it claims to have rendered. Therefore, in accordance with BCM's contract, 1C115, Sections 5 (B), (D) and (F), DOE intends to exercise

65 Court Street, 12th Floor, Brooklyn, N.Y. 11201
Client Services 718-935-4444 • Vendor Hotline 718-935-2300
www.schools.nyc.gov/dcp

DEC 11 2007 16:45                                                                    PAGE.04

its right to audit all billings made by BCM under that contract and examine all records, materials and documents related thereto.  You will be contacted shortly about the audit.

Sincerely,

Jay G. Miller

cc:    Kathleen Grimm, Deputy Chancellor
       Michael Best, Esq., General Counsel to the Chancellor
       Brian Fleischer, Auditor General
       David Ross, Executive Director, Division of Contracts and Purchasing
       Regina Loughran, First Deputy Commissioner, SCI
       Israel Lebovits, BCM

DO NOT SUBMIT FORM TO IRS -
SUMBIT FORM TO REQUESTING
AGENCY.

1/07 Revision

# SUBSTITUTE FORM W-9: REQUEST FOR
## TAXPAYER IDENTIFICATION NUMBER & CERTIFICATION

*TYPE OR PRINT INFORMATION NEATLY. PLEASE REFER TO INSTRUCTIONS FOR MORE INFORMATION.*

## Part I: Vendor Information

1. Legal Business Name:

**GROSS CARE INC.**

2. If you use DBA, please list below:

3. Entity Type (Check one only):

- [ ] Non-Profit Corporation
- [ ] Church or Church-Controlled Organization
- [ ] Personal Service Corporation
- [X] Corporation
- [ ] Government
- [ ] City of New York Employee
- [ ] Individual / Sole Proprietor
- [ ] Trust
- [ ] Joint Venture
- [ ] Partnership
- [ ] Limited Liability Co.
- [ ] Resident/Non-Resident Alien
- [ ] Non-United States Business Entity
- [ ] Estate

## Part II: Taxpayer Identification Number (TIN) & Taxpayer Identification Type

1. Enter your TIN here: *(DO NOT USE DASHES)*

**2 6 1 0 9 3 4 2 4**

2. Taxpayer Identification Type (check appropriate box):

- [X] Employer ID No. (EIN)
- [ ] Social Security No. (SSN)
- [ ] Individual Taxpayer ID No. (ITIN)
- [ ] N/A (Non-United United States Business Entity)

## Part III: Primary 1099 Vendor & Remittance Address

1. Primary 1099 Vendor Address:

Number, Street, and Apartment or Suite Number

**5314 - 16 AVE. #71**

City, State, and Nine Digit Zip Code or Country

**BROOKLYN, NY 11204**

2. Remittance Address:

Number, Street, and Apartment or Suite Number

**SAME**

City, State, and Nine Digit Zip Code or Country

## Part IV: Exemption from Backup Withholding

For payees exempt from Backup Withholding, check the box below. Valid explanation required for exemption. See instructions.

- [ ] **Exempt from Backup Withholding**

## Part V: Certification

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Under penalties of perjury, I certify that the number shown on this form is my correct Taxpayer Identification Number (TIN).

Sign Here: *Leah Gross*      **347-823-1374**   **9-19-07**

Signature      Phone Number     Date

**LEAH GROSS**

Print Preparer's Name     Phone Number

Contact's E-Mail Address: **GROSSCARE@THEJNET.COM**

### FOR SUBMIITTING AGENCY USE ONLY

Submitting Agency Code: | | |

Contact Person:

Contact's E-Mail Address:

Telephone Number: ( )

Payee/Vendor Code: | | | | | | |

*DO NOT FORWARD W-9 TO COMPTROLLER'S OFFICE. Fax completed W-9 form to the school/requestor.*

Form **W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

Give form to the requester. Do not send to the IRS.

*Print or type / See Specific Instructions on page 2.*

**Name (as shown on your income tax return)**

**Business name, if different from above**
GROSS CARE INC.

**Check appropriate box:** ☐ Individual/Sole proprietor  ☑ Corporation  ☐ Partnership  ☐ Other ▶ .................   ☐ Exempt from backup withholding

**Address (number, street, and apt. or suite no.)**
5314 16th AVE #71

**Requester's name and address (optional)**

**City, state, and ZIP code**
BROOKLYN NY 11204

**List account number(s) here (optional)**

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**
| | | | | | | | |

or

**Employer identification number**
| 2 | 6 | 1 | 0 | 9 | 3 | 4 | 2 | 4 |

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**   Signature of U.S. person ▶ *Len Gross*   Date ▶ *Sept. 19 2007*

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X      Form **W-9** (Rev. 11-2005)

DO NOT SUBMIT FORM TO IRS -
SUBMIT FORM TO REQUESTING
AGENCY.

1/07 Revision

# SUBSTITUTE FORM W-9: REQUEST FOR
## TAXPAYER IDENTIFICATION NUMBER & CERTIFICATION

*TYPE OR PRINT INFORMATION NEATLY. PLEASE REFER TO INSTRUCTIONS FOR MORE INFORMATION.*

## Part I: Vendor Information

1. Legal Business Name: **SUMNER PLACE LLC**

2. If you use DBA, please list below: **SUMNER HEALTH PROVIDERS**

3. Entity Type (Check one only):

- [ ] Non-Profit Corporation
- [ ] Corporation
- [ ] Church or Church-Controlled Organization
- [ ] Government
- [ ] City of New York Employee
- [ ] Personal Service Corporation
- [ ] Individual / Sole Proprietor
- [ ] Trust
- [ ] Joint Venture
- [ ] Partnership
- [x] Limited Liability Co
- [ ] Resident/Non-Resident Alien
- [ ] Non-United States Business Entity
- [ ] Estate

## Part II: Taxpayer Identification Number (TIN) & Taxpayer Identification Type

1. Enter your TIN here: *(DO NOT USE DASHES)*  **2 0 5 2 2 2 0 8 5**

2. Taxpayer Identification Type (check appropriate box):

- [x] Employer ID No. (EIN)
- [ ] Social Security No. (SSN)
- [ ] Individual Taxpayer ID No. (ITIN)
- [ ] N/A (Non-United United States Business Entity)

## Part III: Primary 1099 Vendor & Remittance Address

1. Primary 1099 Vendor Address:

Number, Street, and Apartment or Suite Number
**PO BOX 297039**

City, State, and Nine Digit Zip Code or Country
**BROOKLYN, NY 11229**

2. Remittance Address:

Number, Street, and Apartment or Suite Number
**16 SUMNERS PLACE**

City, State, and Nine Digit Zip Code or Country
**BROOKLYN, NY 11211**

## Part IV: Exemption from Backup Withholding

For payees exempt from Backup Withholding, check the box below.  Valid explanation required for exemption.  See instructions

- [ ] **Exempt from Backup Withholding**

## Part V: Certification

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Under penalties of perjury, I certify that the number shown on this form is my correct Taxpayer Identification Number (TIN).

Sign Here: _(signature)_    Phone Number: _____    Date: **7/17/07**

Print Preparer's Name: **NAOMI LEBOVITS**    Phone Number: _____

Contact's E-Mail Address: **SUMNERHEALTH@THEJNET.COM**

### FOR SUBMITTING AGENCY USE ONLY

Submitting Agency Code: _____    Contact Person: _____

Contact's E-Mail Address: _____    Telephone Number: ( )

Payee/Vendor Code: _____

*DO NOT FORWARD W-9 TO COMPTROLLER'S OFFICE.  Fax completed W-9 form to the school/requestor.*

Form **W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the requester. Do not send to the IRS.

Name (as shown on your income tax return)

**SUMNER PLACE LLC**

Business name, if different from above

**SUMNER HEALTH PROVIDERS**

Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☑ Other ▶ LLC    ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

**PO BOX 297039**

Requester's name and address (optional)

City, state, and ZIP code

**BROOKLYN NY 11229**

List account number(s) here (optional)

*Print or type — See Specific Instructions on page 2.*

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

2 0 5 2 2 2 0 8 5

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here   Signature of U.S. person ▶   *[signature]*    Date ▶ 7/17/07

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

   1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

   2. Certify that you are not subject to backup withholding, or

   3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X      Form **W-9** (Rev. 11-2005)



# The New York City Department of Education  872587

Joel I. Klein,
Chancellor

## RSA - 2 Independent Provider Approval

Date: November 13, 2007

Dear Independent Provider,

The New York City Department of Education has approved your request to provide the service of **Speech** for Pin Number **20074592325**. Your approved start date for this service is **10/02/2007** assigned to:

**Student Information:**

Name of Student: **Charlie Bautista**

School: **K050 - J.H.S. 050 John D. Wells**          Student ID No. : **268087087**

Region: **08**                                       District: **14**

Student's Address: **191 BEDFORD AVENUE, APT. 13**   City, State and Zip: **BROOKLYN, NY 11211**

**Related Service:**

Recommended: **Speech**                              Language: **English**

No. of Sessions: Per Week: **2**                     Length of Session: **45 Minutes**

**Parent/Guardian Information:**

Name: **Soledad Balbuena**

Home Telephone No.: **(718) 302-9336**               Work Telephone No.:

**Provider Information:**

Name: **SHAINDY GROSS**    SS#: **134586176**        NYS License/Certificate #: **0135821**

Residing at: **5314 16 AVENUE, BROOKLYN NY 11204**

Name of Agency (if Appropriate): **Gross Care Inc.**

Agency Address: **5314 16th Avenue**                 City, State and Zip: **Brooklyn NY 11204**

Employer Tax ID No. (if agency ): **261093474**

**If you have any questions regarding this letter, please contact:**

Region/ District/ High School CSE/ Citywide Issuing RSA: **Region 08**

Address: **131 Livingston Street**                   City, State and Zip: **Brooklyn, NY 11201**

or call:

Contact Person: **Andrea Mcleod**                    Telephone No.: **(718) 935 - 568**

* **Please Note:** Agencies under contract to the Department of Education for the period of 2004-2007 serving as an independent provider for the provision of a specific Related Service shall be paid for those assignments at the same rate as the original contractor who was unable to provide the service.

_November 13, 2007_
Date RSA-2 Form Approved                             _Andrea McLeod_
                                                     Authorizing Signature

Name of Individual Authorized to Approve Services:

**Andrea Mcleod**



Joel I. Klein,
*Chancellor*

# The New York City Department of Education  899565

## RSA - 2 Independent Provider Approval

Date: **November 29, 2007**

Dear Independent Provider,

The New York City Department of Education has approved your request to provide the service of **Occupational Individual** for Pin Number  **20075350432**.  Your approved start date for this service is  **09/20/2007** assigned to:

**Student Information:**

    Name of Student: **Harrison Berman**          Student ID No. : **268559556**

    School:  **K188 – Special Torah Education Program**

    Region: **06**                       District: **22**

    Student's Address: **535 EAST 8 STREET**      City, State and Zip: **BROOKLYN, NY 11218**

**Related Service:**

    Recommended: **Occupational Individual**      Language: **English**

    No. of Sessions:  Per Week: **3**           Length of Session: **30** Minutes

**Parent/Guardian Information:**

    Name:  **Judit Berman**

    Home Telephone No.: **(718) 462-3183**     Work Telephone No.:  **7184386420**

**Provider Information:**

    Name:  **OLGA GOMEZ**    SS#: **094729118**    NYS License/Certificate #: **5828428**

    Residing at: **2555 Nostrand Ave, Brooklyn NY 11210**

    Name of Agency (if Appropriate):  **Sumner Health Providers**

    Agency Address: **POB 297039**         City, State and Zip : **Brooklyn NY 11229**

    Employer Tax ID No. (if agency ): **205222085**

If you have any questions regarding this letter, please contact:

    Region/ District/ High School CSE/ Citywide Issuing RSA: **Region 06**

    Address: **5619 Flatlands Ave.**       City, State and Zip: **BROOKLYN, NY 11234**

    **or call:**

    Contact Person: **Arlene Rosenstock**     Telephone No.: **(718)968-6263**

\*  <u>**Please Note:**</u>   Agencies under contract to the Department of Education for the period of 2004-2007 serving as an independent provider for the provision of a specific Related Service shall be paid for those assignments at the same rate as the original contractor who was unable to provide the service.

**November 29, 2007**
_____
Date RSA-2 Form Approved                      Authorizing Signature

Name of Individual Authorized to Approve Services

_____
    Arlene Rosenstock

SUMNER HEALTH PROVIDERS   CPSE CONTRACTS

| | | | |
|---|---|---|---|
| 1 | AIKEN, BRIANA | SP | 1X60 |
| 2 | ALLWOOD, KIRK | SP | 2X30 |
| 3 | BERGER, ETHEL | PT | 3X30 |
| 4 | BERKOWITZ, JOSEPH | PT | 2X30 |
| 5 | BROWN, TYLER | OT | 2X30 |
| 6 | CADET, ANDREW | SP | 3X30 |
| 7 | COOK, CARDIRE | SP | 2X30 |
| 8 | DUNCAN, KYLE | OT | 1X30 |
| 9 | DUNCAN, KYLE | PT | 2X30 |
| 10 | ELSHAER, ISLAM | SP | 3X30 |
| 11 | ETTIENNE, JASMINE | SP | 3X30 |
| 12 | GREENSPAN, MENACHEM | PT | 2X30 |
| 13 | HARRIS, DONTE | SP | 2X30 |
| 14 | HARRIS, DONTE | OT | 2X30 |
| 15 | HILL, ZAVIER | SP | 1X60 |
| 16 | KLEIN, AARON | SP | 3X60 |
| 17 | KLEIN, AARON | OT | 3X60 |
| 18 | KWAN, JENNY | PT | 3X60 |
| 19 | KWAN, JENNY | OT | 1X60 |
| 20 | MUNOZ, ADAM | SP | 2X45 |
| 21 | MUNOZ, ADAM | OT | 2X30 |
| 22 | MUNOZ, ADAM | PT | 2X45 |
| 23 | OPPENHEIMER, REBECCA | SP | 2X30 |
| 24 | OSTOPOWITZ, SEBASTIAN | OT | 2X30 |
| 25 | PRATT, EMANUEL | OT | 2X30 |
| 26 | PRATT, EMANUEL | SP | 1X30 |
| 27 | PRATT, EMANUEL | SP | 1X30 |
| 28 | SHASHO, MARILYN | OT | 2X30 |
| 29 | SHASHO, MARILYN | PT | 2X30 |
| 30 | SHILMAN, AVI | SP | 2X30 |
| 31 | SINGLETARY, ISIA | SP | 2X30 |
| 32 | SINGLETARY, ISIA | OT | 2X30 |
| 33 | SINGLETARY, ISIA | PHD | 2X30 |
| 34 | STAMM, SHMUEL | OT | 2X45 |
| 35 | TOMLIN, SHANA | SP | 2X30 |
| 36 | TOUSSIE, SAMUEL | OT | 2X30 |
| 37 | WILLIAMS, KARIM | OT | 1X30 |
| 38 | WILLIAMS, KARIM | OT | 1X30 |
| 39 | WILLIAMS, KARIM | SP | 2X30 |

SUMNER HEALTH PROVIDERS

2007-2008

| | LAST NAME | FIRST NAME | SLP | OT | PT | DIST | STARTING DATE |
|---|---|---|---|---|---|---|---|
| 1 | BECKER | AVROHOM | | 3X30 | | 22 | 9/19/07 |
| 2 | ALEXANDER | JAHEIM | | 3X30 | | 88 | 9/7/07 |
| 3 | ALEXANDER | JAHEIM | | | 3X45 | 88 | 9/7/07 |
| 4 | ALEXANDER | JAHEIM | 3X30 | | | 88 | 9/7/07 |
| 5 | ALLWOOD | SHAMEEKA | | 2X60 | | 21 | 9/24/07 |
| 6 | BALAKHANEH | MAYERA | | 2X30 | | 22 | 9/28/07 |
| 7 | BALAKHANEH | MAYERA | | | 2X30 | 22 | 9/28/07 |
| 8 | BENN | CECILIO | | 2X30 | | 23/5 | 10/2/07 |
| 9 | BERELOWITZ | MOSHE | | 2X30 | | 22 | 9/20/07 |
| 10 | BERELOWITZ | MOSHE | | | 2X30 | 22 | 9/20/07 |
| 11 | BERMAN | HARRISON | | | 2X30 | 22 | 9/20/07 |
| 12 | BERMAN | HARRISON | | 3X30 | | 22 | 9/20/07 |
| 13 | BERNABLE, GISSELV | 207-317-926 | 5X30 | 3X30 | 3X30 | R7/75 | |
| 14 | BERNARD** | KEON | 1X30 | PSYCH | | 15 | 9/20/07 |
| 15 | BROWN | CHESKEL | | 1X60 | | 22 | 9/20/07 |
| 16 | BUREKHOVITZ, HARRY | 268-045-754 | 2X30 | 2X30 | | R7/20 | |
| 17 | CARDICHON, ALEXANDR | 203-924-790 | 2X30 | | | R6/22 | |
| 18 | COHEN | MICHAEL | | 3X30 | | 22 | 10/1/07 |
| 19 | CUEVAS, JUAN | 262-377-427 | 2X30 | | | R7/21 | |
| 20 | DANINO | BAT EL | | 2X30 | | 29 | 9/24/07 |
| 21 | ETTINGER | DAVID | | 4X30 | | 22 | 9/19/07 |
| 22 | ETTINGER | DAVID | | | 3X30 | 22 | 9/20/07 |
| 23 | FAKS | MARK | | | 3X30 | 22 | 9/20/07 |
| 24 | FAKS | MARK | | 3X30 | | 22 | 9/20/07 |
| 25 | FAKS, MARK | 258-001-718 | | Para | | R6/22 | |
| 26 | FARERI | ADRIAN | | 2X30 | | 78 | 9/19/07 |
| 27 | FARERI | ADRIAN | | | 2X30 | 78 | 9/19/07 |
| 28 | FREILICH, CHANA | 268-526-407 | | 2X30 | | R6/22 | |
| | GIACOMAZZI | LAUREN | 2X30 | | | 20 | |
| 29 | GLASSMAN | GEDALYA | | | 1X45-1X45 | 22 | 9/19/07 |
| 30 | GLASSMAN, GEDALYA | 248-712-747 | | 2X45 | | R6/22 | |
| 31 | GOODMAN | SHALOM | | 2X30 | | 22 | 9/20/07 |
| 32 | GOTTLIEB | CHANA | | | 2X30 | 22 | 9/20/07 |
| 33 | GRUENSWEIG | SHOLOM | | 3X60 | | 22 | 9/20/07 |
| 34 | HALEVY | SHMUEL | | 2X30 | | 22 | 9/20/07 |
| 35 | HELLMAN | SHAYNA | | 2X30 | | 22 | 9/20/07 |
| 36 | HERSCHKOWITZ | JOEL | | | 2X30 | 22 | 9/20/07 |
| 37 | HERSCHKOWITZ | JOEL | | 1X30 | | 22 | 9/20/07 |
| 38 | HOWARD, NOAH | 265-760-967 | | 2X30 | | R7/21 | |
| 39 | HUTSON | KENYAH | | 2X30 | | 17 | 9/26/07 |
| 40 | JAMOUR | ILIAS | | 2X30 | | 22 | 9/20/07 |
| 41 | JEAROLMAN | DOV | | 2X30 | | 22 | 9/28/07 |
| 42 | KIRKLAND | DAYVON | | 2X30 | | 17 | 9/12/07 |
| 43 | KIRKLAND | JOSHUA | | 2X30 | | 17 | 10/1/07 |

| # | Last | First / ID | | | | | |
|---|---|---|---|---|---|---|---|
| 44 | KLEIN | CHAYA | | 2X30 | | 22 | 11/1/07 |
| 45 | KLITNICK | GERSHON | | 2X30 | | 22 | 9/24/07 |
| 46 | KRANCZER, YOEL | 268-255-098 | | 2X30 | | R6/22 | |
| 47 | KRITZLER | YOSEF | | | 3X60 | 22 | 9/20/07 |
| 48 | KRITZLER | YOSEF | | 3X60 | | 22 | 9/20/07 |
| 49 | LANDAU | JOEL | | 4X60 | | 22 | 9/20/07 |
| 50 | LANDAU | JOEL | | | 4X60 | 22 | 9/20/07 |
| 51 | LEUNG | KEVIN | | 2X30 | | 22 | 9/28/07 |
| 52 | LITVINCHOCK, DAVID | 260-106-075 | | 2X30 | | R6/22 | |
| 53 | LO | EMILY | | 1X30 | | 22 | 9/25/07 |
| 54 | LORD** | MICHAEL | 2X30 | | | 17 | 9/21/07 |
| 55 | MARK, ALYSSA | 209-553-742 | 4X30 | | | R8/13 | |
| 56 | MAYNARD | JOSHUA | 3X30 | | | 88 | 10/3/07 |
| 57 | MAYNARD | JOSHUA | | 2X30 | | 88 | 10/3/07 |
| 58 | MODES, YITZCHOK | 271-032-294 | | 2X30 | | R6/22 | |
| 59 | MOHABER | SHARONA | | 2X60 | | 78 | 9/20/07 |
| 60 | MOHABER | SHARONA | | | 2X45 | 78 | 9/20/07 |
| 61 | MONDELICE, CHRISTOPH | 215-298-605 | | | | R6 | P-3 |
| 62 | MONDESIR, GIOVANNI | 274-672-542 | | | | R6 | P-3 |
| 63 | MONDESIR, JOSHUA | 208-229-252 | | | | R6 | P-3 |
| 64 | MURATOV | AHARON | | 2X30 | | 22 | 9/20/07 |
| 65 | NAGEL, MICHAEL | 259-462-547 | | | 2X30 | R7/20 | |
| 66 | NAPOR | SAM | | 2X30 | | 15 | 9/25/07 |
| 67 | NEWMARK** | EZRIEL | | 1X30 | | 22 | 10/1/07 |
| 68 | NEWMARK** | EZRIEL | | 2X30 | | 22 | 9/20/07 |
| 69 | NOJOWITZ | BARUCH | 1X30 | SPLIT | | 21 | 9/10/07 |
| 70 | NOJOWITZ | BARUCH | 4X30 | SPLIT | | 21 | 9/10/07 |
| 71 | NOJOWITZ | BARUCH | | 5X30 | | 21 | 9/10/07 |
| 72 | OBRIEN | JAMES | | 2X30 | | 22 | 9/28/07 |
| 73 | ODONNELL | CHRIS | | | 2X30 | 20 | 9/17/07 |
| 74 | ODONNELL | CHRIS | 2X30 | | | 20 | 9/17/07 |
| 75 | OHAYON | ABRAHAM | | 3X30 | | 22 | 9/19/07 |
| 76 | OTTENSTEIN | SHOLOM | | 2X30 | | 22 | 10/1/07 |
| 77 | OTTENSTEIN | SHOLOM | | | 2X30 | 22 | 10/1/07 |
| 78 | OWEN | NIAGARA | | 2X45 | | 22 | 9/25/07 |
| 79 | OZONE, DANNY | 212-646-038 | P-3 | | | R6 | P-3 |
| 80 | PIERRE, JEAN DONALD | 215-755-869 | P-3 | | | R6 | P-3 |
| 81 | PIERRE, JEAN KELLY | 211-792-379 | P-3 | | | R6 | P-3 |
| 82 | PINKESZ | ISAAC | | 2X30 | | 22 | 9/20/07 |
| 83 | PLUSHNICK | JACOB | | 2X30 | | 22 | 9/28/07 |
| 84 | RABINOWITZ | DOVID | | | 1X30 | 22 | 9/20/07 |
| 85 | ROBERT, RANDELL | 274-876-358 | | | | R6 | P-3 |
| 86 | SALAMANCA, CAROLINE | 211-551-569 | | 2X30 | | R7/75 | |
| 87 | SALAMON | ARYEH | | | 3X30 | 22 | 9/20/07 |
| 88 | SALAMON | ARYEH | | 3X30 | | 22 | 9/20/07 |
| 89 | SARIBEKYAN | ANGELIKA | | | 4X30 | 22 | 9/17/07 |
| 90 | SAUNDERS, SOREN | 203-823-505 | | Para | | | |

| # | Name | | | | | | |
|---|---|---|---|---|---|---|---|
| 91 | SCHMELCZER, ABRAHAM | 248-711-525 | | 3X30 | 2X30 | R6/22 | |
| 92 | SHAPIRO | LANCE | | 3X30 | | 22 | 9/25/07 |
| 93 | SHAPIRO, LANCE | 254-166-820 | | | 5X30 | R6/22 | |
| 94 | SHARP, TYREKE | 207-608-019 | | 2X30 | | R7/75 | |
| 95 | SHEMTOUB | MICHAEL | | 2X30 | | 22 | 9/20/07 |
| 96 | SHILMAN | ALIZA | | | 5X30 | 22 | 9/28/07 |
| 97 | SMITH | RYAN | | 1X30 | | 1 | 9/25/07 |
| 98 | SMITH | RYAN | | | 1X30 | 1 | 9/25/07 |
| 99 | SMITH | RYAN | 2X30 | | | 1 | 9/24/07 |
| 100 | SOCHET | RACHEL | | | 3X30 | 22 | 9/28/07 |
| 101 | SOLOMON | MALKIE | | 2X30 | | 22 | 9/19/07 |
| 102 | TELLER | NOACH | | | 2X30 | 22 | 9/20/07 |
| 103 | TELLER | NOACH | | 3X30 | | 22 | 9/20/07 |
| 104 | WIEDER | DOV | | 2X30 | | 22 | 9/20/07 |
| 105 | WIEDER | DOV | | 1X30 | | 22 | 9/20/07 |
| 106 | WILLIAMS | KAMARIA | | 2X30 | | 18 | 9/7/07 |
| 107 | WILLIAMS | KAMARIA | | | 2X30 | 18 | 9/7/07 |
| 108 | WILLIAMS, KAMARIA | 274-685-965 | | 1X30 | | R6/18 | |
| 109 | WORRELL, KIA | 254-418-842 | | | | R6 | P-3 |

Sumner Health Providers                                    3

**Gross Care**

| | LAST NAME | FIRST NAME | SLP | OT | PT | SCHOOL | DIST | STARTING DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | ABDELEZAM | ALY | 2X30 | | | | 20 | 12/11/07 |
| 2 | ABDELFATTAH | ADAM | 2X30 | | | | 20 | 12/11/07 |
| 3 | ABER | SUSAN | 3X30 | | | | 22 | 10/10/07 |
| 4 | ABER | SUSAN | | 4X30 | | | 11 | 10/1/07 |
| 5 | ABER | SUSAN | | | 5X30 | | 22 | 10/1/07 |
| 6 | ACOSTA | AYANA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 7 | ACOSTA | VERONICA | 2X30 | | | | 20 | 12/11/07 |
| 8 | ADAMO** | MICHAEL | 2X30 | | | 186 | 20 | 10/15/07 |
| 9 | ADDONISIO** | NICK | 3X30 | | | 186 | 20 | 10/15/07 |
| 10 | AHMED | TAMEEM | | 4X30 | | | 21 | 10/15/07 |
| 11 | AHMED | TAMEEM | 4X30 | | | | 21 | 10/15/07 |
| 12 | AHMED | TAMEEM | | | 2X30 | | 21 | 10/15/07 |
| 13 | ALDARONDO | MATHEW | 2X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 14 | ALEXANDRA | GALUS | 1X30 | | | | 20 | 12/11/07 |
| 15 | ALLENDE | AMANDA | 2X30 | | | 226 | 10 | 10/25/07 |
| 16 | ALMONTE | LUIS | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 17 | ALMONTE** | FRANCESKA | 3X30 | | | 273 | 12 | 10/18/07 |
| 18 | AMIN | OMAR | 3X30 | | | | 20 | 12/11/07 |
| 19 | ANDERSON | MARC | | 1X30 | | | 78 | 10/16/07 |
| 20 | ANDINA** | BRANDON | 2X30 | | | 186 | 20 | 10/15/07 |
| 21 | ANDREWS | DARIUS | | 2X30 | | | 18 | 9/17/07 |
| 22 | ANDREWS** | DARIUS | 2X30 | | | | 18 | 9/17/07 |
| 23 | ANDREWS, DARIUS | 207-635-491 | | 2X30 | | | R6/18 | |
| 24 | APONTE** | KENDALL | 2X30 | | | | 14/8 | 10/2/07 |
| 25 | APORTELA | KEVIN | | | | 102 | 24/4 | |
| 26 | AROUJO | DAYANARA | 2X30 | | | | 20 | 12/11/07 |
| 27 | ARREAGA** | OSWALDO | 2X45 | | | 125 | 24 | 10/22/07 |
| 28 | ARUJO | NATHANIEL | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 29 | ASHKENAZI | AHARON | | 3X30 | | | 22 | 10/18/07 |
| 30 | ASHKENAZI | AHARON | | 1X30 | | | 22 | 10/18/07 |
| 31 | ASHKENAZI | AHARON | | | 3X30 | | 22 | 10/16/07 |
| 32 | ASHKENAZI | AHARON | 3X30 | | | | 22 | 10/16/07 |
| 33 | ASHKENAZI, AHARON | 264-379-702 | | Para | | | R6/22 | |
| 34 | BABAYOFF, NECHAMA | 268-243-169 | **PSYCH** | **1X30** | | | R8/14 | |
| 35 | BACCHUS | ZARIF | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 36 | BAEZ | FRANCISCO | 2X40 | | | 610 | 14/8 | 11/5/07* |
| 37 | BAEZ | IRIS | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 38 | BAHAMONDE** | FRANK | 2X45 | | | | 14/8 | 10/2/07 |
| 39 | BAKARAT | WORWOOD | 1X30 | | | 821 | 15/8 | 10/30/2007* |
| 40 | BALLINAS | KEVIN | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 41 | BANEGAS** | JOHN | 2X30 | | | | 14/8 | 10/2/07 |
| 42 | BARBER | JUAN | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 43 | BARBIER | JUAN | 2X30 | | | 226 | 10/1 | 11/1/2007* |
| 44 | BARRICO | YANSELL | 2X30 | | | 226 | 10/1 | 10/25/2007* |

| # | Last Name | First Name | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 45 | BARRIOS, LUIS | 267971489 | 2X45 | | | IS 125 | R4/24 | |
| 46 | BAUM | HADASSAH | | 2X30 | | | 22 | 9/28/07 |
| 47 | BAUTISTA** | CHARLIE | 2X45 | | | | 14/8 | 10/2/07 |
| 48 | BECKER | AVROHOM | PSYCH | 2X30 | | | 22 | |
| 49 | BEDIAKO | SELMA | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 50 | BELGOURMAZ | ZAKARIA | 2X30 | | | | 20 | 12/11/07 |
| 51 | BELTRAN** | TAISHA | 2X30 | | | 273 | 12 | 10/23/07 |
| 52 | BELTRE | MELLISSA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 53 | BENABE | ASHLEY | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 54 | BERDECIA** | LUIS | 3X45 | | | | 14/8 | 10/2/07 |
| 55 | BERELOWITZ | MOSHE | 4X30 | | | | 22 | 10/10/07 |
| 56 | BERMAN, HARRISON | 268-559-556 | | Para | | | R6/22 | |
| 57 | BERNANDEZ** | JOSEPH | 2X30 | | | 273 | 12 | 10/23/07 |
| 58 | BERNARD, KEON | 275-078-442 | 3X30 | | | | R8/15 | |
| 59 | BERNETT, KENTON | 269-732-020 | 2X30 | | | | R8/13 | |
| 60 | BERTE | JANISSA | 2X30 | | | 821 | 15/8 | 10/29/2007* |
| 61 | BETANCOURT** | EDDIE JEREMY | 2X45 | | | | 14/8 | 10/2/07 |
| 62 | BIBERAT | AHMET | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 63 | BISONO** | JESSE | 2X45 | | | | 14/8 | 10/2/07 |
| 64 | BLYDEN | KADEEM | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 65 | BOARON | YOSEF | | 2X30 | | | 22 | |
| 66 | BOARON | YOSEF | 2X30-1X30 | PSYCH | | | 22 | |
| 67 | BOATENG | BERNARD | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 68 | BOLIS | ALICIA | | | 2X30 | | 78 | 11/14/07 |
| 69 | BOLIS | GERARD | | 2X30 | | | 15 | 10/16/07 |
| 70 | BOLIS | GERARD | | | 2X30 | | 15 | 10/24/07 |
| 71 | BOLIS | JAMES | | 1X60 | | | 15 | 10/16/07 |
| 72 | BOLIS | JAMES | | | 1X30 | | 15 | 10/24/07 |
| 73 | BOLIS** | ALICIA | 3X30 | | | | 78 | 11/19/07 |
| 74 | BOLIS** | GERARD | 3X30 | | | | 15 | 11/19/07 |
| 75 | BOLIS** | JAMES | 1X60 | | | | 15 | 11/19/07 |
| 76 | BOLIS, PAUL | 205-324-361 | 3X30 | | | | R8/15 | |
| 77 | BONNETTE, JUSTIN | 203-756-168 | | 2X30 | | | R8/14 | |
| 78 | BOTHWELL | LYMAN | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 79 | BOTHWELL DEJESUS | JOANN | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 80 | BOUSKILA | NATHANEL | | | 1X30 | | 22 | 10/11/07 |
| 81 | BOUSKILA, NATHANEL | | | | 1X30 | | R6/22 | |
| 82 | BOYETTE | GLENN | 2X40 | | | 86 | 10/1 | 11/7/2007* |
| 83 | BRADLEY | DYLAN | | 3X30 | | | 14 | 10/26/07 |
| 84 | BRADLEY | DYLAN | 3X30 | | | | 14 | 10/19/07 |
| 85 | BRADLEY | TYLER | | 3X30 | | | 14 | 10/26/07 |
| 86 | BRADLEY | TYLER | 2X30 | | | | 14 | 10/19/07 |
| 87 | BRADLEY, DYLAN | | | | 1X30 | | R8/14 | |
| 88 | BRADLEY, TYLER | | | | 1X30 | | R8/14 | |
| 89 | BROWN | CHESKEL | 3X30 | | | | 22 | 10/25/07 |
| 90 | BROWN | CHESKEL | 3X30 | PSYCH | | | 22 | 10/25/07 |
| 91 | BROWN | MATES | | 3X30 | | | 22 | 10/1/07 |
| 92 | BROWN | MATES | | | 2X30 | | 22 | 10/1/07 |
| 93 | BROWN | MATES | 3X30 | | | | 22 | 10/11/07 |

SCHOOLS GROSS CARE 2007-2008                    2

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 94 | BROWN | YEHUDA | | 2X30 | | | 22 | 10/19/07 |
| 95 | BROWN | YEHUDA | **1X30** | **PSYCH** | | | 22 | 10/21/07 |
| 96 | BROWN | YEHUDA | | | 3X30 | | 22 | 10/19/07 |
| 97 | BROWN** | DAMALIA | 2X30 | | | 226 | 10 | 10/25/07 |
| 98 | BROWN, ALEC | | 1X30 | | | | R8/17 | |
| 99 | BRYANT | DYKQUAN | 2X40 | | | 610 | 14/8 | 11/5/2007* |
| 100 | BUCHANAN | ALTON | | 2X30 | | | 17 | 10/3/07 |
| 101 | BUCHANAN | ALTON | | | 3X30 | | 17 | 10/3/07 |
| 102 | BYRNES** | JAMEL | 2X45 | | | | 14/8 | 10/2/07 |
| 103 | CABA** | CASSANNDRA | 1X30 | | | | 14/8 | 10/2/07 |
| 104 | CABALLERO | CATHYRIA | 2X30 | | | 273 | 12/2 | 10/23/2007* |
| 105 | CABALLERO | JEAN CARLOS | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 106 | CACERES | JEREMY | 2X30 | | | 86 | 10/1 | 11/13/2007* |
| 107 | CADANER | SHMULI | | 2X30 | | | 22 | |
| 108 | CALIXTO | ERICK | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 109 | CALLER, BENJAMIN | 203-654-017 | | | 3X30 | | R6/22 | |
| 110 | CAMACHO | CHRISTOPHER | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 111 | CAMILLE | RICKY | | 1X30 | | | 23 | 11/2/07 |
| 112 | CAMILLE | RICKY | | | 3X30 | | 23 | 10/30/07 |
| 113 | CAMILLE | RICKY | 1X30 | | | | 23 | 11/5/07 |
| 114 | CANTOS | WILLIAM | 2X30 | | | | 20 | 12/11/07 |
| 115 | CAPPUCCIO | ANDREW | | 2X30 | | | 22 | 11/11/07 |
| 116 | CARBONARO | ANTONIO | 2X30 | | | | 20 | 12/11/07 |
| 117 | CARDENAS | MAXS | 2X45 | | | 125 | 24/4 | 10/22/2007* |
| 118 | CARDICHON | ALEXANDRA | | 2X60 | | | 22 | 10/10/07 |
| 119 | CARUSO** | MASSIMO | 2X30 | | | 186 | 20 | 10/15/07 |
| 120 | CASELLA | MICHAEL | | | | | 20 | 12/11/07 |
| 121 | CASTILLO | KEVIN | 2X30 | | | PS 377 | D-32 | |
| 122 | CASTILO | LUIS | 2X30 | | | 226 | 10/1 | |
| 123 | CASTRO | JESSICA | 2X30 | | | 273 | 12/2 | 10/23/2007* |
| 124 | CEPEDA | JOEL | 2X30 | | | | 20 | 12/11/07 |
| 125 | CERON** | DAVID | 2X30 | | | 186 | 20 | 10/15/07 |
| 126 | CHABEL | RYAN | | 2X30 | | | 21 | 9/19/07 |
| 127 | CHAN | HARMON | 2X45 | | | | 20 | 12/11/07 |
| 128 | CHARLEY | XAVIER | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 129 | CHAU | TERRANCE | | | | | 20 | 12/11/07 |
| 130 | CHAYA | MOSHE | **1X30** | **PSYCH** | | | 22 | |
| 131 | CHEN | WILLIAM | 2X30 | | | | 20 | 12/11/07 |
| 132 | CHEN** | MAGGIE | 2X30 | | | 186 | 20 | 10/15/07 |
| 133 | CHEN** | SUKIE | 2X30 | | | 186 | 20 | 10/15/07 |
| 134 | CHEN** | TERRY | 2X30 | | | 186 | 20 | 10/15/07 |
| 135 | CICILINA | JONATHAN | 2X40 | | | 610 | 14/8 | 11/5/2007* |
| 136 | CIRA | BRYAN | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 137 | CIRA | BRYANT | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 138 | CLARKE | BRUCE | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 139 | COHEN | CHARLES | | 2X30 | | | 22 | 10/29/07 |
| 140 | COHEN | MICHAEL | **3X30** | **PSYCH** | | | 22 | 10/5/07 |
| 141 | COHEN | MICHAEL | | | 2X30 | | 22 | 10/21/07 |
| 142 | COHEN | MICHAEL | 2X30 | | | | 22 | 10/30/07 |
| 143 | COHEN, J. | 208-944-785 | | 2X30 | 2X30 | psych 1X30 | R7/21 | |

SCHOOLS GROSS CARE 2007-2008          3

| # | Last Name | First Name | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 144 | COHN | DEVON | | 2X40 | | | 20 | 9/18/07 |
| 145 | COHN | DEVON | | | 2X40 | | 20 | 9/18/07 |
| 146 | COHN** | DEVON | 2X40 | | | | 20 | 9/18/07 |
| 147 | COLON** | JOSHUA | 2X45 | | | | 14/8 | 10/2/07 |
| 148 | COLON** | MICHAEL | 2X45 | | | | 14/8 | 10/2/07 |
| 149 | CONNER | CAMERON | | | 1X30 | | 17 | 10/1/07 |
| 150 | CRUMPS | EGYPT | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 151 | CRUZ | CHRISTINA | 2X30 | | | | 20 | 12/11/07 |
| 152 | CRUZ | DAVID | 2X30 | | | 821 | 15/8 | 10/31/2007* |
| 153 | CUEVAS | EZEQUIEL | | | 1X30 | | 14 | 10/19/07 |
| 154 | CUEVAS** | EZEQUIEL | | | 1X30 | | 14 | 10/30/07 |
| 155 | DAHAN | MICHAEL | | | 2X45 | | 22 | 11/2/07 |
| 156 | DAVIS | VICTORIA | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 157 | DEAN | SHAREEF | | | 2X30 | | 14 | 11/16/07 |
| 158 | **DEAN, SHAREEF** | 203-695-564 | 3X30 | | 2X30 | | R8/14 | |
| 159 | DEER | DONOVIN | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 160 | DELACRUZ | JOEMIN | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 161 | DELEON | JULIAN | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 162 | DELGADO | BRIAN | 2X40 | | | 610 | 14/8 | 11/5/2007* |
| 163 | DELLAROSA** | DONATO | 2X30 | | | 186 | 20 | 10/15/07 |
| 164 | DESALVATORE** | LOUIS | 2X30 | | | 186 | 20 | 10/15/07 |
| 165 | DEWGARG | TONY | 2X45 | | | K 610 | 14/8 | 11/1/2007* |
| 166 | DIAZ | ALLISSA | 2X30 | | | PS 377 | 32/4 | 11/13/07 |
| 167 | DIAZ | BRIAN | 3X30 | | | 273 | 12/2 | 10/18/2007* |
| 168 | DIAZ | CLARA | 2X30 | | | IS 821 | 15/8 | 10/30/2007** |
| 169 | DIAZ** | JOHN | 1X30 | | | 125 | 24 | 10/22/07 |
| 170 | DIAZ** | STEVEN | 2X45 | | | | 14/8 | 10/2/07 |
| 171 | DICKSON | NIGEI | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 172 | DIMAIO** | BENEDETTO | 2X30 | | | 186 | 20 | 10/15/07 |
| 173 | DOJO | ANTHONY | 2X40 | | | 821 | 15/8 | 10/30/2007** |
| 174 | DOUGLAS | TALITHA | 2X30 | | | 273 | 12/2 | 10/18/2007* |
| 175 | DOVIDOV | YAKOV | **1X30** | PSYCH | | | 22 | |
| 176 | DOWLING** | DELVON | 2X45 | | | | 14/8 | 10/2/07 |
| 177 | DUHANEY** | CARL | 2X45 | | | | 14/8 | 10/2/07 |
| 178 | DUPERVAL | DESTINY | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 179 | **EBBIN, ANDREW** | | | | 2X30 | | R6/22 | |
| 180 | EDWARDS | DARIEL | | | 2X30 | | 17 | 10/1/07 |
| 181 | EDWARDS | KHAIRE | 1X30 | | | 226 | 10 | 10/25/07 |
| 182 | EDWARDS | SCHQWAN | 3X40 | | | 610 | 14/8 | 11/5/2007* |
| 183 | EDWARDS** | KHAIRE | 1X30 | | | 226 | 10 | 10/25/07 |
| 184 | EISENBERG | YECHIEL | | | 3X30 | | 22 | 10/15/07 |
| 185 | EISENBERG | YECHIEL | 3X30 | | | | 22 | 10/10/07 |
| 186 | **EISENBERG, YECHIEL** | 263-917-627 | | | 3X30 | | R6/22 | |
| 187 | ELKIND | ISAAC | | | 2X30 | | 22 | 9/28/07 |
| 188 | EMMANUEL | LINTON | 2X30 | | | PS 377 | D-32 | |
| 189 | ENNAKAB | HAM | 1X30-2X30 | PSYCH | | | 22 | |
| 190 | ESPINAL | DANIELLE | 2X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 191 | FAKS | MARK | **1X30** | PSYCH | | | 22 | 10/21/07 |
| 192 | FAKS** | MARK | 3X30 | | | | 22 | 11/9/07 |
| 193 | FALCON | CHARLES | 1X30 | | | IS 190 | 12/2 | 11/1/2007* |

| # | Name | First | | | | | | |
|---|------|-------|---|---|---|---|---|---|
| 194 | FALCONER** | AUDLEY | 2X30 | | | 226 | 10 | 10/25/07 |
| 195 | FAMILIA | JAVIER | 2X30 | | | | 20 | 12/11/07 |
| 196 | FAMILIA | WILSON | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 197 | FARRISH | SHAQUILLE | 2X30 | | | 273 | 12/2 | 10/18/2007* |
| 198 | FEIGENBAUM | PINCHUS | | | 2X30 | | 22 | 10/18/07 |
| 199 | FELICIANO | JADEN | | 2X30 | | | 21 | 10/16/07 |
| 200 | FELICIANO | MIRANDA | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 201 | FELTON** | SHEANNA | 2X30 | | | | 14/8 | 10/2/07 |
| 202 | FERNANDEZ | ERIC | 3X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 203 | FERNANDEZ | ERIC | 3X30 | | | 86 | 10/1 | 10/30/2007* |
| 204 | FERNANDEZ | JEREMIAH | | | | | 20 | 12/11/07 |
| 205 | FISCHER | MELANIE | | 2X30 | | | 22 | 9/28/07 |
| 206 | FLEETWOOD | GLENN | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 207 | FLORES | MIGUEL | 2X40 | | | 610 | 14/8 | 11/5/2007* |
| 208 | FLORES | PEDRO | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 209 | FLORES** | MELISSA | 2X30 | | | 273 | 12/2 | 10/23/2007* |
| 210 | FLORES** | SHEILA | 2X40 | | | 273 | 12 | 10/18/07 |
| 211 | FORD | ASTDIN | 2X30 | | | 273 | 12/2 | 10/30/2007* |
| 212 | FORTUNA | JONATHAN | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 213 | FRAIMAN | CHAIM | | 3X30 | | | 22 | |
| 214 | FRAIMAN | CHAIM | | | 3X30 | | 22 | |
| 215 | FRANCISCO | ANEVY | 2X30 | | | 86 | 10/1 | 10/31/2007* |
| 216 | FRANCO | BENJAMIN | 2X30 | | | 86 | 10/1 | 11/9/2007* |
| 217 | FRAUENBERG | ASIA | 2X30 | | | | 20 | 12/11/07 |
| 218 | GABOUREL, ABIGAIL | 270-016-454 | | | 2X30 | | R6/17 | |
| 219 | GADISON** | ANTHONY | 2X45 | | | | 14/8 | 10/2/07 |
| 220 | GADSON | JONATHAN | 2X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 221 | GALARZA | MARGARITA | 1X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 222 | GALARZA | WILLIE | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 223 | GARCIA | DANIEL | 2X45 | | | 610 | 14/8 | 11/5/2007* |
| 224 | GARCIA | ISABELLA | 2X30 | | | 226 | 10/1 | 11/1/2007* |
| 225 | GARCIA | OSCAR | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 226 | GARCIA | RAUL | 1X30 | | | 821 | 15/8 | 11/2/2007* |
| 227 | GARCIA | VARGAS ALJAND | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 228 | GARCIA** | EDWIN | 2X45 | | | | 14/8 | 10/2/07 |
| 229 | GARCIA** | VIELKA | 2X45 | | | | 14/8 | 10/2/07 |
| 230 | GARNER | NIKIA | 1X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 231 | GARNER | NIKIA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 232 | GARTH** | ALLAN | 2X30 | | | 186 | 20 | 10/15/07 |
| 233 | GATICA | OSCAR | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 234 | GAVIN | QUINDELLE | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 235 | GENAO | DAYVLAN | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 236 | GENARO | AMANDA | 2X30 | | | 821 | 15/8 | 10/31/2007* |
| 237 | GIACOMAZZI, LAUREN | 205-975-832 | 2X30 | | | | R7/20 | |
| 238 | GIBBS | SAEEF | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 239 | GIL PEREZ** | BRYAN | 2X30 | | | 226 | 10 | 10/25/07 |
| 240 | GIRON | ENRIQUE | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 241 | GLASSMAN | SHAMSHON | **1X30** | PSYCH | | | 22 | 10/21/07 |
| 242 | GLASSMAN | SHAMSHON | | | 2X30 | | 22 | 10/21/07 |
| 243 | GLASSMAN | SHAMSON | | | 2X30 | | 22 | 10/1/07 |
| 244 | GLASSMAN** | SHAMSHON | 2X30 | | | | 22 | 10/25/07 |

| # | Surname | Given / Phone | Act1 | Act2 | Act3 | PS | Num | Date |
|---|---------|---------------|------|------|------|-----|-----|------|
| 245 | GLASSMAN, SHAMSHON | 262-317-357 | 2X30 | | | | R6/22 | |
| 246 | GOBERNIK | BRANDON | 1X30 | | | | 20 | 12/11/07 |
| 247 | GOLDBERGER, RACHEL | 248-718-421 | | Para | | | R7/75 | |
| 248 | GOMEZ | JULLISA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 249 | GOMEZ** | LEONELA | 2X30 | | | 273 | 12 | 10/18/07 |
| 250 | GOMEZ** | RAFAELITO | 2X45 | | | | 14/8 | 10/2/07 |
| 251 | GONZALEZ | DANIEL | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 252 | GONZALEZ | GABRIELLE | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 253 | GONZALEZ | JOSE | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 254 | GONZALEZ | JOSEPH | 2X30 | | | | 20 | 12/11/07 |
| 255 | GONZALEZ** | NEIDA PAXTOR | 2X30 | | | 186 | 20 | 11/14/07 |
| 256 | GOODMAN | JOSIAH | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 257 | GOODMAN | SHALOM | 1X30 | | | | 22 | 10/21/07 |
| 258 | GOODMAN** | SHALOM | 3X30 | | | | 22 | 10/11/07 |
| 259 | GOTTLIEB | CHANA | | | 2X30 | | 22 | 9/20/07 |
| 260 | GOTTLIEB, CHANA | 262-462-385 | 4X30 | | | | R6/22 | |
| 261 | GRAHAM | CORY | 2X30 | | | | 20 | 12/11/07 |
| 262 | GROSSBERG, YEKUSIEL | 203-632-401 | | 3X30 | | | R7/21 | |
| 263 | GRUENZWEIG, SHALOM | 263-913-659 | 3X60 | | | | R6/22 | |
| 264 | GRULLON | CHRISTIAN | 2X30 | | | 821 | 15/8 | 10/30/2007* |
| 265 | GUAMAN** | DIEGO | 2X30 | | | 125 | 24 | 10/22/07 |
| 266 | GUERRERO** | MARIA | 2X45 | | | | 14/8 | 10/2/07 |
| 267 | GUTIERREZ** | JOHN ANTHONY | 2X30 | | | 186 | 20 | 10/15/07 |
| 268 | GUVEN** | YASIN | 2X30 | | | 186 | 20 | 10/15/07 |
| 269 | GUY** | DAVID | 1X30 | PSYCH | | | 22 | 10/21/07 |
| 270 | GUZMAN | STEPHANIE | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 271 | GUZMAN** | GABRIEL | 2X30 | | | 125 | 24 | 10/22/07 |
| 272 | HAKAKZADEH | SHOSHANA | 1X30 | | | | 22 | 10/1/07 |
| 273 | HAKAKZADEH, SHOSHANA | 248-715-510 | X | 3X30 | | | R6/22 | |
| 274 | HALEVY | SHMUEL | 2X30 | | | | 22 | 10/10/07 |
| 275 | HALEVY, SHMUEL | 268-188-026 | 2X30-2X30 | | 2X30 | | R6/22 | |
| 276 | HALTON | MOSHE | 2X45 | PSYCH | | | 22 | |
| 277 | HANNIBAL | NAZYIA | 2X30 | | | | 17 | 10/29/07 |
| 278 | HANNIBAL, NA,ZVIA | 207-142-217 | | X | | | R6/17 | |
| 279 | HARBINE | DONNELL | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 280 | HARDMAN | FRANK | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 281 | HARRIS | KEISHA | 1X30 | | | 610 | 14/8 | 11/5/2007* |
| 282 | HART | ISIAH | 2X30 | | | 610 | 14/8 | 11/1/2007* |
| 283 | HARTE** | GERARD | 2X45 | | | | 14/8 | 10/2/07 |
| 284 | HELLMAN | SHAYNA | | | 2X30 | | 22 | 9/20/07 |
| 285 | HENRIQUEZ** | CRYSTAL | 2X45 | | | | 14/8 | 10/2/07 |
| 286 | HEREDIA | ABRAHAM | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 287 | HEREDIA | ABRAHAM | 2X30 | | | 86 | 10/1 | 11/9/2007* |
| 288 | HERNANDEZ | CHRISTIAN | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 289 | HERNANDEZ | DAVID | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 290 | HERNANDEZ | SAMANTHA | 2X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 291 | HERNANDEZ** | CHRISTIAN | 2X30 | | | 186 | 20 | 10/15/07 |
| 292 | HERRING | CHRISTOPHER | 2X30 | | | K 610 | 14/8 | 11/1/2007* |
| 293 | HERRON | ROBERT JR | | 3X30 | | | 88 | 9/20/07 |

| No. | Last Name | First Name | | | | | | Date |
|---|---|---|---|---|---|---|---|---|
| 294 | HERSCHKOWITZ | JOEL | | 1X60 | | | 22 | 10/1/07 |
| 295 | HERSCHKOWITZ** | JOEL | 2X30 | | | | 22 | 10/11/07 |
| 296 | HOHLAKIS** | LEWIS | 2X30 | | | 186 | 20 | 10/15/07 |
| 297 | HOWARD** | SHAQUEENA | 2X45 | | | | 14/8 | 10/2/07 |
| 298 | HUANG | NELSON | 2X30 | | | 610 | 14/8 | 11/1/2007* |
| 299 | HUANG | BAO LING | | | | | 20 | 12/11/07 |
| 300 | HUANG** | CALVIN | 2X30 | | | 186 | 20 | 10/15/07 |
| 301 | HUANG** | JANET | 2X30 | | | 186 | 20 | 10/15/07 |
| 302 | HUERTA | MAKO | 2X30 | | | 610 | 14/8 | 11/1/2007* |
| 303 | HUERTERO | JANET | 3X30 | | | 821 | 15/8 | 10/29/2007* |
| 304 | HUTTNER | MENACH | | 1X30 | | | 22 | 10/1/07 |
| 305 | IMBERT | LUIS | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 306 | INOA | KENNETH | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 307 | JACKSON | RAVIN | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 308 | JAMES | DACORI | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 309 | JAMIE | VINCENT | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 310 | JAMOUR | ILIAS | 1X30 | | | | 22 | 10/15/07 |
| 311 | JAQUEZ** | MICHAEL | 2X45 | | | | 14/8 | 10/2/07 |
| 312 | JAWAD | YOUSIF | 2X30 | | | | 20 | 12/11/07 |
| 313 | JAXELL | LARIOS | 2X30 | | | 226 | 10/1 | 11/1/2007* |
| 314 | JEAN PHILIPPE | PROSPER | | 2X30 | | | 22 | 9/11/07 |
| 315 | JIMENENZ | ANDREW | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 316 | JONES | OSSOANE | 2X40 | | | 610 | 14/8 | 11/1/2007* |
| 317 | JOSEPH, ANSLEM | 206-735-227 | 1X30 | | | | R6/17 | |
| 318 | JULE | DIETRICH | 2X30 | | | 610 | 14/8 | 11/5/2007* |
| 319 | JUNIK | NISSAN | | | 2X30 | | 17 | 10/26/07 |
| 320 | JUNIK, NISSAN | 274-942-440 | 2X30 | | | | R6/17 | |
| 321 | KABARITI | NISSIM | | 1X30 | | | 22 | 10/1/07 |
| 322 | KADEH | ELI | | 3X30 | | | 22 | 10/22/07 |
| 323 | KADEH | NOURIL | | 2X30 | | | 22 | 10/14/07 |
| 324 | KADEH | NOURIL | **2X30** | **PSYCH** | | | 22 | 10/15/07 |
| 325 | KADEH | NOURIL | | | 1X30 | | 22 | 10/15/07 |
| 326 | KELLY | SAMUEL | 3X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 327 | KERSHAW** | ANGEL | 2X30 | | | 226 | 10 | 10/25/07 |
| 328 | KHAN | KHALID | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 329 | KINDELL | ELIYAHU | | 2X30 | | | 22 | |
| 330 | KINDELL | ELIYAHU | **1X30** | **PSYCH** | | | 22 | |
| 331 | KLEIN | TALYA | 3X30 | | | | 20 | 10/29/07 |
| 332 | KLEIN | ZISHA | **5X10** | **PARA** | | | 15 | 10/16/07 |
| 333 | KLITNICK | GERSHON | **1X30** | **PSYCH** | | | 22 | |
| 334 | KOKO | EMMANUEL | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 335 | KOSI, KOFI NAJJA N. | 209-825-926 | 1X30-2X30 | | | | R6/17 | |
| 336 | KRANCZER | YOEL | | 2X30 | | | 22 | 10/3/07 |
| 337 | KRAUS | YIDES | **5X60** | **CISIS PARA** | | | 22 | 9/5/07 |
| 338 | KRAUS | YIDES | | 3X30 | | | 22 | 11/13/07 |
| 339 | KRAUS | YIDES | | | 3X30 | | 22 | 10/22/07 |
| 340 | KRAUS | YIDES | 5X30 | | | | 22 | 10/11/07 |
| 341 | KUPLEVATSKY | SYLVIO MICHAEL | | 2X40 | | | 22 | 10/3/07 |
| 342 | KUPLEVATSKY | SYLVIO MICHAEL | | | 3x30 | | 22 | 10/3/07 |
| 343 | KUPLEVATSKY | SYLVIO MICHAEL | 1X40 | | | | 22 | 10/3/07 |

SCHOOLS GROSS CARE 2007-2008

| # | Last Name | First Name / ID | | | | | | Date |
|---|---|---|---|---|---|---|---|---|
| 344 | KUPLEVATSKY** | SYLVIO MICHAEL | 1x40 | | | | 22 | 10/3/07 |
| 345 | KUPLEVATSKY, SYLVIO | 267-774-727 | | Para | | | R6/22 | |
| 346 | LADA | ALBERT | 2X30 | | | | 20 | 12/11/07 |
| 347 | LARIOS | JAXELL | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 348 | LAVEAUX, KATIANNA | 269-896-981 | | | 3X60 | | R6/22 | |
| 349 | LAVERAZ | LIZBETH | 2X30 | | | 226 | 10/1 | 10/26/2007* |
| 350 | LAWRENCE | JOVANI | | | 2X30 | | 22 | 9/27/07 |
| 351 | LAWTON** | DEMANUEL | 2X30 | | | 273 | 12 | 10/18/07 |
| 352 | LEBOVIC, LEBOVIC | 207-208-158 | | | 2X30 | | R7/21 | |
| 353 | LEBOVIC, TZVI | 207-208-208 | | | 2X30 | | R7/21 | |
| 354 | LEE** | ANITA | 2X30 | | | 186 | 20 | 10/15/07 |
| 355 | LEONCE | CHRISTIAN | | | 2X30 | | 17 | 10/22/07 |
| 356 | LEONCE | CHRISTIAN | | 2X30 | | | 17 | 10/1/07 |
| 357 | LEONCE** | CHRISTIAN | 2X30 | | | | 17 | 10/18/07 |
| 358 | LEUNG | KEVIN | 1X30 | PSYCH | | | 22 | 11/5/07 |
| 359 | LEUNG | VICTOR | | | | 102 | 24/4 | |
| 360 | LEUNG, JACKSON | 204-206-650 | | | 3X30 | | R7/21 | |
| 361 | LEVINE | BINYOMIN | | | 3X30 | | 22 | |
| 362 | LEVINE | BINYOMIN | 1X30-2X30 | | | | 22 | |
| 363 | LEWIS | MICHAEL | 2X30 | | | K 610 | 14/8 | 11/1/2007* |
| 364 | LI | JIA MING | 2X30 | | | | 20 | 12/11/07 |
| 365 | LIANG** | KENDRICK | 2X30 | | | 186 | 20 | 10/15/07 |
| 366 | LIRIANO | BRIANA | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 367 | LIRIANO | JESUS | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 368 | LIRIANO | LIZ ANJELA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 369 | LISBETH | KARINA TULES | 2X30 | | | 821 | 15/8 | |
| 370 | LLANOS | JOHN | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 371 | LOPEZ | MECHELLEN | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 372 | LOPEZ | NATALIA | 2X30 | | | 273 | 12/2 | 10/23/2007* |
| 373 | LOPEZ** | CHRISTIAN DAVI | 2X30 | | | 186 | 20 | 10/15/07 |
| 374 | LOPEZ** | JORGE | 2X45 | | | | 14/8 | 10/2/07 |
| 375 | LORD** | MICHAEL | 1X30 | PSYCH | | | 17 | 11/27/07 |
| 376 | LOVEAZ | LISBETH | 2X30 | | | PS 226 | 10/1 | 10/25/2007* |
| 377 | LOZANO** | ARLENE | 2X30 | | | 226 | 10 | 10/26/07 |
| 378 | LUMSHI** | ARTHUR | 2X30 | | | 186 | 20 | 10/15/07 |
| 379 | LUNA** | FRIDA | 1X30 | | | 102 | 24 | 11/19/07 |
| 380 | MAI | ANDY | 2X40 | | | | 20 | 12/11/07 |
| 381 | MANZUETA** | JOHN | 2X45 | | | | 14/8 | 10/2/07 |
| 382 | MARIN | JENCELYN | 1X45 | | | 190 | 12/2 | 11/1/2007* |
| 383 | MARQUEZ | LUIS | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 384 | MARTIN | UNIQUE | 2X30 | | | 190 | 12/2 | 11/1/2007* |
| 385 | MARTINEZ | DAVID | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 386 | MARTINEZ | EDWIN | 2X30 | | | 226 | 10/1 | 10/26/2007* |
| 387 | MARTINEZ | JOSEPH | 2X30 | | | 610 | 14/8 | 11/1/2007* |
| 388 | MARTINEZ | KIMBERLY | 2X30 | | | 86 | 10/1 | 11/7/2007* |
| 389 | MARTINEZ | MARCELINO | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 390 | MATTHEWS GEORGE | MICHAEL | 1X40 | | | 610 | 14/8 | 11/1/2007* |
| 391 | MAURAT | ANDERSON | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 392 | MAYNARD, JABARI | 204-205-942 | | 1X30-1X3 | X30-1X30 | | R8/15 | |

SCHOOLS GROSS CARE 2007-2008                    8

| # | Last Name | First Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 393 | MCCALL | ANTHONY | 1X30 | | | | PS 084 | 14/8 | 11/19/2007* |
| | | | | | | | | 14/8 | 10/2/07 |
| 394 | MCCOLLUTA** | RAQUAN | 2X30 | | | | | | |
| 395 | MCGREGOR | KIMORA | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 396 | MCKOY | TREVOR | 2X30 | | | | PS 035 | 9/2 | 10/31/2007* |
| 397 | MCLEOD | MAKAVELLI | 2X30 | | | | 35 | 9/2 | 10/31/2007* |
| 398 | MEDINA | AMAURE | 2X30 | | | | IS 821 | 15/8 | 10/30/2007* |
| 399 | MEI** | CARMEN | 2X30 | | | | 186 | 20 | 10/15/07 |
| 400 | MELENDEZ** | ALBERTO | 3X45 | | | | | 14/8 | 10/2/07 |
| 401 | MENDEZ | BRANDON | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 402 | MENDEZ | GERMAN | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 403 | MENDEZ | JOSHUA | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 404 | MENDEZ** | JENSON | 2X30 | | | | 186 | 20 | 10/15/07 |
| 405 | MENDLOVITZ, NECHAMA | 263-753-808 | 2X30 | | | | | R6/22 | |
| 406 | MENDLOWITZ | NECHAMA | | | 2X30 | | | 22 | 9/19/07 |
| 407 | MENDLOWITZ | NECHAMA | | 2X30 | | | | 22 | 10/1/07 |
| 408 | MERCADO | ADRIAN | 2X30 | | | | PS 084 | 14/8 | 11/19/2007* |
| 409 | MEYER, DAVID | 268-116-977 | | 2X30 | PSYCH | 2X30 | | R6/22 | |
| 410 | MEZON | ARELIS | 2X45 | | | | IS 190 | 12/2 | 11/1/2007* |
| 411 | MIGUEL | DEAQUINO | 2X45 | | | | 190 | 12/2 | 11/1/2007* |
| 412 | MILAN | JONATHAN | 2X30 | | | | IS 821 | 15/8 | 10/30/2007* |
| 413 | MILTZ | AVI | | 2X30 | | | | 22 | 9/28/07 |
| 414 | MIRANDA | NOAH | 2X30 | | | | PS 086 | 10/1 | 10/30/2007* |
| 415 | MITCHELL | MYFAITH | 2X30 | | | | 86 | 10/1 | 10/30/2007* |
| 416 | MOHABER, SHARONA | 249-367-277 | 2X60 | | | | | R7/75 | |
| 417 | MOLINA | JESSICA | 2X30 | | | | 125 | 24/4 | |
| 418 | MONFIL | KENNETH | 2X40 | | | | K 610 | 14/8 | 11/1/2007* |
| 419 | MONTENEGRO** | ALEXIS | 2X30 | | | | 186 | 20 | 10/15/07 |
| 420 | MONTGOMERY | BARRY | 2X45 | | | | 610 | 14/8 | 11/1/2007* |
| 421 | MONTILA COLON | MICHELLE | 1X30 | | | | PS 084 | 14/8 | 11/19/2007* |
| 422 | MONTILLA | ALEXA | 2X30 | | | | 273 | 12/2 | 10/23/2007* |
| 423 | MONTILLA | ALEXA | 1X30 | | | | 273 | 12/2 | *10/30/200 |
| 424 | MOORER** | RAVIA | 2X45 | | | | | 14/8 | 10/2/07 |
| 425 | MORAN** | STEVEN | 2X45 | | | | | 14/8 | 10/2/07 |
| 426 | MORANT | STEVE | 2X30 | | | | PS 084 | 14/8 | 11/19/2007* |
| 427 | MORELL | BRANDON | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 428 | MORILLO | MIGUEL | 2X30 | | | | IS 190 | 12/2 | 11/1/2007* |
| 429 | MORRISON | CHRISTINA | 2X30 | | | | 273 | 12/2 | 10/18/2007* |
| 430 | MOSESON | YEHUDA | | 5X60 | | | | 22 | 10/21/07 |
| 431 | MOSESON | YEHUDA | 4X30 | | | | | 22 | 10/25/07 |
| 432 | MOSESON | YEHUDA | 2X60 | | | | | 22 | 10/22/07 |
| 433 | MOSESON** | YEHUDA | 1X30 | | | | | 22 | 10/25/07 |
| 434 | MUNIZ | ARTURA | 2X30 | | | | 86 | 10/1 | 10/30/2007* |
| 435 | MUNOZ | SILVIA | 2X30 | | | | PS 035 | 9/2 | 10/31/2007* |
| 436 | MUNOZ** | DANNY | 2X30 | | | | 186 | 20 | 10/15/07 |
| 437 | MURATOV | AHARON | 1X30 | | | | | 22 | 10/10/07 |
| 438 | MURILLO | ROSA | 2X30 | | | | PS 377 | 32/4 | 11/13/2007* |
| 439 | MUSCHEL, CHANA | 249-361-213 | | | 5X45 | | | R7/21 | |
| 440 | NAPOR | SAM | 1X30 | | | | | 14 | 10/9/07 |
| 441 | NAPOR, SAM | 268-273-257 | | 2X30 | | | | R8/15 | |
| 442 | NAROZNIAK | ANTHONY | 2X30 | | | | | 20 | 12/11/07 |

SCHOOLS GROSS CARE 2007-2008

| # | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 443 | NASR | YASMIN | 2X30 | | | | | | 20 | 12/11/07 |
| 444 | NAVA** | MARK | 2X30 | | | | | | 14/8 | 10/2/07 |
| 445 | NAVON | YOSEF | 2X30 | PSYCH | | | | | 22 | |
| 446 | NESMITH | KHARI JUSTIN | | 2X30 | | | | | 17 | 10/29/07 |
| 447 | NESMITH | KHARI JUSTIN | 1X30 | | | | | | 17 | 10/29/07 |
| 448 | NESMITH** | KHARI JUSTIN | 2X30 | | | | | | 17 | 10/29/07 |
| 449 | NEUWIRTH | SHARON | | 2X30 | | | | | 22 | 10/22/07 |
| 450 | NEWMARK** | EZRIEL | 1X30 | PSYCH | | | | | 22 | 10/4/07 |
| 451 | NEWMARK** | EZRIEL | 2X30 | | | | | | 22 | 12/11/07 |
| 452 | NG | KATIE | 4X30 | | | | | | 20 | |
| 453 | NIAZOV, YEHUDA | 262-293-368 | | | 2X30 | | R6/22 | | | |
| 454 | NIEVES | ELI | 2X30 | | | | | 86 | 10/1 | 10/30/2007* |
| 455 | NOBOA | DANIEL | 1X30 | | | | | PS 035 | 9/2 | 10/31/2007* |
| 456 | NOEL, RODNEY | 274-686-161 | | | 2X30 | 2X30 | R7/20 | | | |
| 457 | NOLASCO | EMILY | 2X30 | | | | | 86 | 10/1 | 10/30/2007* |
| 458 | NORRIS | JOSHUA | 2X45 | | | | | IS 190 | 12/2 | 11/1/2007* |
| 459 | NUNEZ | BRANDON | 2X30 | | | | | 821 | 15/8 | 10/31/2007* |
| 460 | NUNEZ | STEVEN | 1X30 | | | | | PS 035 | 9/2 | 10/31/2007* |
| 461 | NUNEZ | STEVEN | 2X40 | | | | | K 610 | 14/8 | 11/1/2007* |
| 462 | NUSSBAUM | SAM | | | | 2X30 | | | 22 | 10/3/07 |
| 463 | NUSSBAUM** | SAM | 1X45 | | | | | | 22 | 10/15/07 |
| 464 | NUSSBAUM, SAM | 254-200-793 | PSYCH | 1X30 | | | R6/22 | | | |
| 465 | NYLA | ABRAHAMS | 1X30 | | | | | 35 | 9/2 | 11/5/2007* |
| 466 | O'BRIEN, JAMES | 207-604-513 | 3X30 | | | | R6/22 | | | |
| 467 | OCHOA | NICHOLAS | 1X30 | | | | | PS 102 | 24/4 | 12/12/2007* |
| 468 | OHAYON, ABRAHAM | 265-400-713 | PSYCH | 1X30 | | | R6/22 | | | |
| 469 | OHAYON, GRACE | 203-889-951 | | | 2X30 | 2X30 | R6/22 | | | |
| 470 | OLIVARES | JOSE | 2X30 | | | | | IS 821 | 15/8 | 10/30/2007* |
| 471 | OMOTOSHO** | BIANCA | 2X30 | | | | | | 2 | 10/11/07 |
| 472 | OPPERISANO | ANTHONY | 2X30 | | | | | | 20 | 12/11/07 |
| 473 | ORTA | JOSEPH | 2X30 | | | | | 610 | 14/8 | 11/5/2007* |
| 474 | ORTEGA | ASHLEY | 2X45 | | | | | K 610 | 14/8 | 11/1/2007* |
| 475 | ORTEGA | CARLOS | 2X30 | | | | | PS 086 | 10/1 | 10/30/2007* |
| 476 | ORTEGA | DEYANERIA | 3X30 | | | | | 273 | 12/2 | 10/23/2007* |
| 477 | ORTEGA | JENNY | 2X45 | | | | | IS 190 | 12/2 | 11/1/2007* |
| 478 | ORTEGA | JOSHUA | 2X30 | | | | | 35 | 9/2 | 10/31/2007* |
| 479 | ORTIZ | KIANA | 2X30 | | | | | PS 377 | 32/4 | 11/13/2007* |
| 480 | OTTENSTEIN | SHOLOM | 1X30 | | | | | | 22 | 10/10/07 |
| 481 | OTTENSTEIN | SHOLOM | 1X30 | PSYCH | | | | | 22 | 10/22/07 |
| 482 | OTTENSTEIN** | SHOLOM | 2X30 | | | | | | 22 | 10/10/07 |
| 483 | OVIEDO | DOUGLAS | 2X30 | | | | | PS 377 | 32/4 | 11/13/2007* |
| 484 | PACHECO | HENDRY | 2X30 | | | | | PS 035 | 9/2 | 10/31/2007* |
| 485 | PACURUCU** | JASON | 2X30 | | | | | 102 | 24 | 11/19/07 |
| 486 | PADILLA | ANTHONY | 2X30 | | | | | 86 | 10/1 | 10/30/2007* |
| 487 | PAGON | ANTONIO | 2X30 | | | | | PS 377 | 32/4 | 11/13/2007* |
| 488 | PALACIOS | HILLARY | 2X30 | | | | | PS 226 | 10/1 | 10/25/2007* |
| 489 | PANIAGUA | JOSHUA | 2X45 | | | | | IS 190 | 12/2 | 11/1/2007* |
| 490 | PANUCCI | DIANA | 1X30 | | | | | 102 | 24/4 | 12/12/2007* |
| 491 | PARRA** | BRIAN | 2X30 | | | | | | 14/8 | 10/2/07 |

| # | Surname | Given | Code | | | School | Grade | Date |
|---|---------|-------|------|---|---|--------|-------|------|
| 492 | PAULK** | DEVONTA | 2X30 | | | 273 | 12 | 10/18/07 |
| 493 | PAYAMPS** | YENIFER | 2X30 | | | 102 | 24 | 11/26/07 |
| 494 | PAYS | WILLIE | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 495 | PENA | GERMAN | 1X30 | | | 35 | 9/2 | 10/31/2007* |
| 496 | PERALTA** | FREDDY | 2X45 | | | | 14/8 | 10/2/07 |
| 497 | PERCIVAL** | ANTHONY | 1X30 | | | 273 | 12 | 10/23/07 |
| 498 | PERCIVAL** | NURSE | 2X30 | | | 86 | 10/1 | 11/13/2007* |
| 499 | PEREZ | CHRISTIAN | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 500 | PEREZ | JESUS | 2X30 | | | | 20 | 12/11/07 |
| 501 | PEREZ | KAYLEE | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 502 | PEREZ | TERENCE | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 503 | PEREZ** | GABRIEL | 2X30 | | | | 14/8 | 10/2/07 |
| 504 | PERRY** | AARON | 2X45 | | | | 14/8 | 10/2/07 |
| 505 | PERRY** | TAMIKA | 2X30 | | | | 14/8 | 10/2/07 |
| 506 | PHIPPS | SHANNON | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 507 | PICHARDO | JASMIL | 2X40 | | | IS 190 | 12/2 | 11/1/2007* |
| 508 | PIMENTAL | CALVIN | 2X30 | | | 273 | 12/2 | 10/30/2007* |
| 509 | PIMENTAL | RAMON | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 510 | PINKHASOV | ISAAK | | | 4X60 | | 75 | 9/18/07 |
| 511 | PINKHASOV | ISAAK | 4X30 | | | | 75 | 9/18/07 |
| 512 | PINKHASOV, ISAAC | 203-580-485 | | 4X60 | | | R7/75 | |
| 513 | PINTO | ASHLEY | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 514 | PISCIOTTE | KEVIN | 3X30 | | | | 20 | 12/11/07 |
| 515 | PITRE | ANTHONY | 2X30 | | | | 20 | 12/11/07 |
| 516 | POLLACK | ISRAEL | 2X30 | PSYCH | | | 22 | |
| 517 | PORTORREAL | RODDY | 2X30 | | | PS 273 | 12/2 | 10/23/2007* |
| 518 | PRETZANTZIN** | CESAR | 2X30 | | | 186 | 20 | 10/15/07 |
| 519 | PUELLO | GREGORY | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 520 | PULGARIN | JON PIER | 2X30 | | | 102 | 24/4 | |
| 521 | QUEZADA | ENRIQUE | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 522 | QUIZHPI | THELMO | 2X30 | | | 102 | 24 | 11/21/07 |
| 523 | RAGIN | JUNE | 1X40 | | | 273 | 12/2 | 10/23/2007* |
| 524 | RAMIREZ | PETER | 3X30 | | | | 20 | 12/11/07 |
| 525 | RAMIREZ | STEPHANIE | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 526 | RAMIREZ TEPI** | JONATHAN | 2X30 | | | 102 | 24 | 11/21/07 |
| 527 | RAMIREZ** | MYRKA | 2X30 | | | 102 | 24 | 11/21/07 |
| 528 | RAMIREZ** | YANNELYN | 3X45 | | | | 14/8 | 10/2/07 |
| 529 | RAMOS | JOSE | 2X30 | | | | 20 | 12/11/07 |
| 530 | RAWLINS | MEKHI | 1X30 | | | 86 | 10/1 | 10/31/2007* |
| 531 | REICH | YISROEL | 2X45 | PSYCH | | | 22 | |
| 532 | REYES | LUIS | 2X30 | | | 125 | 24/4 | 10/22/2007* |
| 533 | REYES | NAOMY | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 534 | REYES** | MAGDALENA | 2X45 | | | | 14/8 | 10/2/07 |
| 535 | RICARDO | BALBUENA | 2X30 | | | 821 | 15/8 | |
| 536 | RICKS** | NEHEMIAH | 2X30 | | | 102 | 24 | 11/21/07 |
| 537 | RIGAULT | JEREMY | | | 2X30 | | 18 | 9/21/07 |
| 538 | RILEY | CHANEL | 2X45 | | | 610 | 14/8 | 11/1/2007* |
| 539 | RIOS | BRIANA | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 540 | RIVAS | MARJIRIE | 3X30 | | | 821 | 15/8 | 10/30/2007* |
| 541 | RIVERA | AMANDA | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 542 | RIVERA | ASHLEY | 2X45 | | | 190 | 12/2 | 11/2/2007* |

SCHOOLS GROSS CARE 2007-2008                 11

| # | Last | First / ID | | | | | | Date |
|---|---|---|---|---|---|---|---|---|
| 543 | RIVERA | DONOVIN | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 544 | RIVERA | JUSTIN | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 545 | RIVERA | VERONICA | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 546 | RIVERA | WILLIAM | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 547 | RIVERA** | EMMANUEL | 2X30 | | | 102 | 24 | 11/26/07 |
| 548 | RIVERA** | LLOYD | 1X45 | | | | 14/8 | 10/2/07 |
| 549 | RIVERA, ANTHONY | 208-454-082 | | 2X30 | | | R8/16 | |
| 550 | ROBINOSN** | CHRISTOPHER | 2X45 | | | 273 | 12 | 10/23/07 |
| 551 | ROBINSON | BRANDON | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 552 | ROBLES | THALIA | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 553 | RODRIGUEZ | BRITNEY | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 554 | RODRIGUEZ | EVA | 2X30 | | | 273 | 12/2 | 10/30/2007* |
| 555 | RODRIGUEZ | EVARISTO | 2X45 | | | 125 | 24/4 | 11/19/2007* |
| 556 | RODRIGUEZ | JENNIFER | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 557 | RODRIGUEZ | JOENXI | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 558 | RODRIGUEZ | RANDY | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 559 | RODRIGUEZ** | ALBERTO | 1X40 | | | 125 | 24 | 10/22/07 |
| 560 | RODRIGUEZ** | FRANCISCO | 2X45 | | | | 14/8 | 10/2/07 |
| 561 | RODRIGUEZ** | TIMOTHY | 2X30 | | | 186 | 20 | 10/15/07 |
| 562 | ROJAS | MARIA | 2X30 | | | 821 | 15/8 | 10/29/2007* |
| 563 | ROLON | ALEXANDER | 3X/30 | | | 35 | 9/2 | 10/31/2007* |
| 564 | ROMAN** | MARK | 2X30 | | | 186 | 20 | 10/15/07 |
| 565 | ROMERO** | KELLY | 2X30 | | | 102 | 24 | 11/26/07 |
| 566 | RONDELL | WALLACE | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 567 | ROSA | DAYANA | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 568 | ROSA | JOSE | 2X40 | | | 610 | 14/8 | 11/1/2007* |
| 569 | ROSARIO | ADAURY | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 570 | ROSARIO | MIA | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 571 | ROSAS** | JUAN | 2X45 | | | 125 | 24 | 10/22/07 |
| 572 | ROTBERG | YM | | 2X30 | | | 22 | |
| 573 | ROTBERG | YM | 3X30 | | PSYCH | | 22 | |
| 574 | RUBIN, DINA | 203-692-132 | | 2X30 | | | R7/20 | |
| 575 | RUBIN, LIBA | 206-204-653 | | 2X30 | | | R7/20 | |
| 576 | RUBIN, SCHNEUR | 207-107-467 | | 2X30 | | | R6/22 | |
| 577 | RUBINOV | DANIEL | | | 3X45 | | 21 | 9/28/07 |
| 578 | RUIZ | CHRISTIAN | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 579 | RUIZ | JESSICA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 580 | SABBAGH | JOSEPH | 3X30 | | | | 20 | 10/5/07 |
| 581 | SAKS | DOV | | 2X30 | | | 22 | 10/26/07 |
| 582 | SAKS | DOV | 2X30 | | | | 22 | 10/10/07 |
| 583 | SAKS** | DOV | 1X45 | | PSYCH | | 22 | 10/15/07 |
| 584 | SALAMON | ARYE | 3X30 | | | | 22 | 10/11/07 |
| 585 | SALCEDO | EDWARD | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 586 | SALDANA | ALEXIS | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 587 | SALINAS | HUGO | 2X30 | | | 821 | 15/8 | 10/29/2007* |
| 588 | SALLES | CHRISTIAN | 2X40 | | | 610 | 14/8 | 11/1/2007* |
| 589 | SANCHEZ | ANAI | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |
| 590 | SANCHEZ | ELIJAH | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 591 | SANCHEZ | ROLANDO | 2X30 | | | 86 | 10/1 | 11/7/2007* |
| 592 | SANCHEZ** | NICHOLAS | 2X30 | | | | 14/8 | 10/2/07 |

SCHOOLS GROSS CARE 2007-2008

| No | Last | First | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 593 | SANCHEZ** | WILLIAM | 2X30 | | | 125 | 24 | 10/22/07 |
| 594 | SANCLEMENTE** | EDUARDO | 2X30 | | | 102 | 24 | 11/19/07 |
| 595 | SANTANA | ANABEL | 3X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 596 | SANTIAGO | BRIAN | 2X30 | | | 102 | 24/4 | 12/10/2007* |
| 597 | SANTIAGO | IVETTE | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 598 | SANTIAGO | KEVIN | 2X40 | | | 610 | 14/8 | 11/1/2007* |
| 599 | SANTIAGO | KIMBERLY | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 600 | SANTIAGO COLON** | CHRISTIAN | 2X30 | | | 226 | 10 | 10/25/07 |
| 601 | SANTIAGO** | MILAI | 2X30 | | | 226 | 10 | 11/1/07 |
| 602 | SANTOS | MACAULAY | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 603 | SANTOS | MELANIYA | 2X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 604 | SAUNDERS | REUEL | 2X30 | | | K 610 | 14/8 | 11/1/2007* |
| 605 | SAVOY** | DANIELLE | 2X30 | | | 273 | 12 | 10/23/07 |
| 606 | SCHACHTER | JEFFREY | | | 4X30 | | | 10/26/07 |
| 607 | SCHACHTER** | JEFFREY | 2X30 | | | | 75 | 10/10/07 |
| 608 | SCHACHTER, JEFFREY | 249-360-801 | | 1X30-2X30 | Para | R6/22 | | |
| 609 | SCHMELCZER | ABRAHAMS | | 3X30 | 2X30 | | 22 | |
| 610 | SCHMELCZER | ABRAHAMS | 2X45 | PSYCH | | | 22 | 10/10/07 |
| 611 | SCHNITZLER | JOSEPH | SPLIT | 1X30 | | | 22 | 10/1/07 |
| 612 | SCHNITZLER | JOSEPH | SPLIT | 1X30 | | | 22 | 10/19/07 |
| 613 | SCHNITZLER | SAUL | | 1X30 | | | 22 | 10/19/07 |
| 614 | SCHNITZLER | SAUL | | 2X30 | | | 22 | 10/19/07 |
| 615 | SCHUMACHER | RYAN | 3X40 | | | 125 | 24/4 | 11/19/2007* |
| 616 | SCHWARTZ** | CHAYA | 1X30 | PSYCH | | | 22 | 10/22/07 |
| 617 | SEMENDOFF** | SABRINA | 2X30 | | | 186 | 20 | 10/15/07 |
| 618 | SEPULVEDA, ANTHONY | 204-029-334 | | 2X30 | | R8 | | |
| 619 | SHACKLEWOOD, DANIEL | 268-210-622 | | 2X60 | | R8/13 | | |
| 620 | SHARABI, TAL | 275-214-567 | | 2X30 | | R6/22 | | |
| 621 | SHEMTOV, CHAYA | 248-716-680 | | Para | | R7/20 | | |
| 622 | SHEPHERD | MALCOM | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 623 | SHIHADEH** | MOHAMMED | 2X30 | | | 186 | 20 | 10/15/07 |
| 624 | SHILMAN | ALIZA | | 1X30 | | | 22 | 9/28/07 |
| 625 | SHILMAN | ALIZA | | 2X30 | | | 22 | 9/28/07 |
| 626 | SICERON | ANTHONY | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 627 | SIERRA PEREZ | CHRISTIAN | 2X30 | | | 821 | 15/8 | 10/31/2007* |
| 628 | SIKDER** | SAM | 2X30 | | | 102 | 24 | 11/19/07 |
| 629 | SILLAH | ISATOO | 2X30 | | | 86 | 10/1 | 10/31/2007* |
| 630 | SILUS | CLIFFORD | 1X30 | | | | 22 | 10/5/07 |
| 631 | SILUS | CLIFFORD | 4X30 | | | | 22 | 10/5/07 |
| 632 | SILVA, VANESSA | 265-599-191 | | 1X60 | | R7/20 | | |
| 633 | SISSOKO | OUMAN | 1X30 | | | 226 | 10/1 | 10/25/2007* |
| 634 | SMITH | DARNELL | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 635 | SMITH | RASHARD | 2X40 | | | K 610 | 14/8 | 11/1/2007* |
| 636 | SOCHET | RACHEL | 3X60 | PSYCH | | | 22 | 10/15/07 |
| 637 | SOCHET, RACHEL | 256-158-734 | 5X30 | 3X30 | | R6/22 | | |
| 638 | SOLANO | STEVEN | 1X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 639 | SOLANO | STEVEN | 1X30 | | | PS 084 | 14/8 | 11/19/2007* |
| 640 | SOSA | IVETTE | 2X30 | | | | 20 | 12/11/07 |
| 641 | SOSA | JUSTIN | 2X30 | | | IS 821 | 15/8 | 10/30/2007* |

SCHOOLS GROSS CARE 2007-2008          13

| # | Last | First | | | | | | |
|---|------|-------|---|---|---|---|---|---|
| 642 | SOTO | ELIZABETH | 2X45 | | | 125 | 24/4 | 11/19/2007* |
| 643 | SOTO | MICHAEL | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 644 | SOTTO | MATTEW | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 645 | SPERA | JOSEPH | 2X30 | | | | 20 | 12/11/07 |
| 646 | STERLING | HORAYSHA | 2X30 | | | 273 | 12/2 | 10/23/2007* |
| 647 | SUAREZ | KEVIN | 2X30 | | | 125 | 24/4 | 10/22/2007* |
| 648 | SUCUZHANAY | DAISY | 1X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 649 | SULEIMAN | IBRAHAM | 2X30 | | | | 20 | 12/11/07 |
| 650 | SULKER, DREW | 270-917-255 | | 2X30 | | | R6/17 | |
| 651 | TANH** | WILLIAM | 2X30 | | | 186 | 20 | 10/15/07 |
| 652 | TAPIA | RENYA | 2X30 | | | 610 | 14/8 | 11/5/2007* |
| 653 | TEJEDA | ANEUDIS | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 654 | TELLER | NOACH | 5X30 | | | | 22 | 10/18/07 |
| 655 | THOMPSON | JAMEL | 2X45 | | | 190 | 12/2 | 11/1/2007* |
| 656 | TIBURCIO | ANELIN | 2X30 | | | 226 | 10/1 | 10/25/2007* |
| 657 | TORRES | ANGELA | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 658 | TORRES | JIMMY | 2X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 659 | TORRES | MABELIS | 2X30 | | | 821 | 15/8 | 10/31/2007* |
| 660 | TORRES | RAMON | 2X45 | | | 610 | 14/8 | 11/1/2007* |
| 661 | TORRES | VANESSA | 2X30 | | | 821 | 15/8 | 10/30/2007* |
| 662 | TORRES** | BRIAN | 1X30 | | | 186 | 20 | 10/15/07 |
| 663 | TORRES** | GERARDO | 2X45 | | | | 14/8 | 10/2/07 |
| 664 | TRAIL | TRAVON | 1X30 | | | IS 190 | 12/2 | 11/1/2007* |
| 665 | TRAVIS | TYTEANJA | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 666 | TRIGGS | KELLY | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 667 | TRIVINO | LIZBETH | 2X30 | | | 226 | 10/1 | 11/1/2007* |
| 668 | TSARUHAS** | KALLIOPI | 2X30 | | | 186 | 20 | 10/15/07 |
| 669 | ULERIO | XAVIER | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 670 | URBINA | ERIC | 2X40 | | | IS 190 | 12/2 | 11/1/2007* |
| 671 | VACHNINE, NESS | 263-856-940 | | 5X30 | 4X60 | | R6/22 | |
| 672 | VALDES | JUSTIN | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 673 | VALDEZ | MARIA | 3X30 | | | 821 | 15/8 | 10/29/2007* |
| 674 | VALOY | FRANK | 2X30 | | | 35 | 9/2 | 10/31/2007* |
| 675 | VARGAS | JOHN | 2X30 | | | 86 | 10/1 | 10/30/2007* |
| 676 | VARGAS TEJADA** | BRYAN | 2X30 | | | 102 | 24 | 11/19/07 |
| 677 | VARGAS** | JONATHAN | 2X45 | | | | 14/8 | 10/2/07 |
| 678 | VASQUEZ | ALEXANDERO | 2X40 | | | 273 | 12/2 | 10/23/2007* |
| 679 | VASQUEZ | ANTHONY | 2X30 | | | 86 | 10/1 | 11/13/2007* |
| 680 | VASQUEZ | BRITTANY | 2X30 | | | | 20 | 12/11/07 |
| 681 | VASQUEZ | MIGUEL | 2X30 | | | 226 | 10/1 | 10/26/2007* |
| 682 | VASQUEZ | RANDY | 1X30 | | | PS 377 | 32/4 | 11/13/2007* |
| 683 | VAZQUEZ** | ANTHONY | 2X30 | | | 102 | 24 | 11/21/07 |
| 684 | VEGA | XAVIER | 2X30 | | | PS 086 | 10/1 | 10/30/2007* |
| 685 | VELLA | LIANA | | | 1X60 | | 20 | 11/19/07 |
| 686 | VIERRA | KAITLIN | 2X30 | | | 821 | 15/8 | 10/30/2007* |
| 687 | VILLALONA | MARINO | 2X45 | | | IS 190 | 12/2 | 11/1/2007* |
| 688 | VILLANUEVA | EVELYN | 2X30 | | | PS 035 | 9/2 | 10/31/2007* |
| 689 | WACHOLDER | JACOB | | 2X30 | | | 22 | 9/17/07 |
| 690 | WACHOLDER | JOSHUA | | 2X30 | | | 22 | 9/17/07 |
| 691 | WACHOLDER | KAYLA | | 2X30 | | | 22 | 9/17/07 |
| 692 | WAGSCHAL | ALTER | | 3X30 | | | 22 | 9/20/07 |

SCHOOLS GROSS CARE 2007-2008                14

| # | Name | | | | | | | | Date |
|---|------|---|---|---|---|---|---|---|------|
| 693 | WAGSCHAL | ALTER | | | | 5X45 | | 22 | 9/20/07 |
| 694 | WAGSCHAL | ALTER | 2X60 | PSYCH | | | | 22 | 10/1/07 |
| 695 | WAGSCHAL | ALTER | 2X30 | | | | | 22 | 10/1/07 |
| 696 | WAGSCHAL** | ALTER | 1X30 | | | | | 22 | 10/1/07 |
| 697 | WAGSCHAL, ALTER | 264-664-202 | | | 5X45 | | | R6/22 | |
| 698 | WARNER | KUSHIMA | 2X45 | | | | 610 | 14/8 | 11/1/2007* |
| 699 | WASHINGTON | ADAM | 2X30 | | | | 610 | 14/8 | 11/5/2007* |
| 700 | WEINER** | AVROHOM | | 5X30 | | | | 22 | |
| 701 | WEINER** | JONATHAN | 2X30 | | | | 226 | 10 | 10/25/07 |
| 702 | WEINSCHNEIDER, AARON | 206-942369 | | 2X60 | | | | R6/22 | |
| 703 | WEISZ | AVRAHAM | | | 2X30 | | | 22 | 10/3/07 |
| 704 | WEISZ | CHAIM YITZCHOK | | 2X30 | | | | 22 | 10/15/07 |
| 705 | WEISZ | YAAKOV | | | 2X30 | | | 22 | 10/15/07 |
| 706 | WEISZ** | PAUL | 2X30 | | | | | 27 | 10/16/07 |
| 707 | WEISZ, YAAKOV | 206-148-389 | | | 2X30 | | | R6/22 | |
| 708 | WEST | CHEYANNE | 2X30 | | | | IS 190 | 12/2 | 11/1/2007* |
| 709 | WIEDER | DOV | 5X30 | | | | | 22 | 10/10/07 |
| 710 | WIEDER | WOLFE | 1X45 | PSYCH | | | | 22 | 10/31/07 |
| 711 | WIEDER | WOLFE | | 5X30 | | | | 22 | 10/1/07 |
| 712 | WIEDER | WOLFE | | | 2X30 | | | 22 | 10/1/07 |
| 713 | WILLIAM | KYLE | | 1X30 | | | | 22 | 10/1/07 |
| 714 | WILLIAMS** | KYLE | 2X30 | | | | | 17 | 10/29/07 |
| 715 | WILLIAMS** | RASHAWN | 2X30 | | | | 610 | 14/8 | 11/5/2007* |
| 716 | WILLIAMS** | TORAY | 2X30 | | | | 226 | 10 | 10/26/07 |
| 717 | WILLIAMS, JALEN | 208-692-772 | 2X30 | | | | | R8 | |
| 718 | WILLNER | TZVI | | 2X30 | | | | 22 | 10/1/07 |
| 719 | WILLNER | TZVI | | | 2X30 | | | 22 | 11/11/07 |
| 720 | WILLNER** | TZVI | 1X45 | | | | 610 | 14/8 | 11/1/2007* |
| 721 | WILSON | EMANUEL | 2X40 | | | | | 75 | 10/23/07 |
| 722 | WINGATE** | MIRACLE | 2X30 | | | | | 75 | 9/25/07 |
| 723 | WINGATE** | MIRACLE | | 1X30 | | | | 75 | |
| 724 | WINGATE, MIRACLE | 248-706-699 | | | 3X30 | | | R7/5 | |
| 725 | WINTER, MIRIAM | 254-177-892 | | Para | | | | R7/75 | |
| 726 | WOLF | HERSCHEL | 2X45 | | | | | 22 | 10/11/07 |
| 727 | WOLF | HERSCHEL | | 3X45 | | | | 22 | 10/1/07 |
| 728 | WOLF | HERSCHEL | | | 3X45 | | | 22 | 10/1/07 |
| 729 | WOLF** | HERSCHEL | 2X30 | | | | 86 | 10/1 | 10/30/2007* |
| 730 | WOODS | STAR | 2X30 | | | | 610 | 14/8 | 11/1/2007* |
| 731 | WRIGHT | KADEEM | 2X30 | | | | | 14/8 | 10/2/07 |
| 732 | WRIGHT** | STEVEN | 2X30 | | | | K 610 | 14/8 | 11/1/2007* |
| 733 | YOUNG | COREY | 2X45 | | | | | 22 | |
| 734 | YOUSSOPOV | SHLOMI | | | 2X30 | | | 22 | |
| 735 | YSABEL | RAYMOND | 2X30 | | | | 86 | 10/1 | 10/30/2007* |
| 736 | ZAMORA RAMIREZ | EDWIN | 2X30 | | | | 86 | 10/1 | 10/30/2007* |
| 737 | ZARINMANESH | EPHRAIM | SPLIT | 1X30 | | | | 22 | 11/27/07 |
| 738 | ZARINMANESH | EPHRAIM | SPLIT | 1X30 | | | | 22 | 11/27/07 |
| 739 | ZARINMANESH | EPHRAIM | | | 1X30 | | | 22 | 9/26/07 |
| 740 | ZARINMANESH | NISSIM | SPLIT | 1X30 | | | | 22 | 11/2/07 |
| 741 | ZARINMANESH | NISSIM | SPLIT | 2X30 | | | | 22 | 11/2/07 |
| 742 | ZARINMANESH | NISSIM | | | 2X30 | | | 22 | 10/15/07 |

SCHOOLS GROSS CARE 2007-2008                     15

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 743 | ZARINMANESH, AVIGAIL | 274-627-447 | | 2X30-1X30 | | | R7/20 | |
| 744 | ZARINMANESH, EPHRAIM | 205-732-811 | | 1X30-1X30 | | | R6/22 | |
| 745 | ZITO, MOSHE | 203-862-222 | 1X60 | | | | R7/20 | |

SCHOOLS GROSS CARE 2007-2008                16