Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiffs*



08 CV 00168

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKLYN COMMUNITY MANAGEMENT LLC, GROSS CARE INC. and SUMNER PLACE LLC, d/b/a SUMNER HEALTH PROVIDERS,<br><br>      Plaintiffs,<br><br>    - against -<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, JOEL I. KLEIN as CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, AVA J. MOPPER as DIRECTOR OF THE OFFICE OF RELATED AND CONTRACTUAL SERVICES OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, DAVID N. ROSS as EXECUTIVE DIRECTOR OF THE DIVISION OF CONTRACTS AND PURCHASING OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, THOMAS R. FRIEDEN, M.D. as COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK STATE EDUCATION DEPARTMENT, RICHARD P. MILLS as COMMISSIONER OF THE NEW YORK STATE EDUCATION DEPARTMENT, NEW YORK STATE DEPARTMENT OF HEALTH, RICHARD F. DAINES, M.D. as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH,<br><br>      Defendants. | Docket No. 08- |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
A PRELIMINARY INJUNCTION PURSUANT TO 20 U.S.C. § 1415(j)**

Plaintiffs Brooklyn Community Management, LLC ("BCM"), Gross Care, Inc. ("Gross Care") and Sumner Health Providers ("Sumner") (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their motion pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) for a preliminary injunction (i) requiring defendants to reimburse plaintiffs for special education and related services that they presently provide to New York City handicapped children pursuant to certain contracts with defendant New York City Department of Education; (ii) prohibiting defendants from disqualifying plaintiffs from providing such services during the pendency of this proceeding; and (iii) ordering defendants to timely fund plaintiffs for these services they provide.

## PRELIMINARY STATEMENT

New York City and the Department of Education receive hundreds of millions of dollars a year in federal assistance for its special education programs. These funds are supposed to be used to provide handicapped children with special education services as part of the federal mandate that each child must be provided with a free, appropriate public education. Plaintiffs have been dedicated and conscientious providers of special education related services to more than 8,000 New York City handicapped children. This specialized instruction is costly, and the defendants, and especially the New York City Department of Education (the "DOE"), must shoulder this financial burden.

Unfortunately, the defendants, led by the DOE, have embarked on a planned and meticulous scheme to save money on these special education programs at the dear cost to handicapped children. The tactics include unreasonable delay in reimbursing providers and in trumped up charges of impropriety aimed at disqualifying providers from delivering

reimbursable services. By disqualifying providers, especially in the middle of a school year, the defendants deprive children of their special education because there are not enough qualified substitute therapists to provide these services.

The plaintiffs provide special education services to 893 New York City handicapped students, half of whom are the most severely handicapped cases. Almost all of these children attend at least two and three sessions per week. In order to deprive these special children of their sorely needed instruction, the DOE has disqualified plaintiffs from providing services to these students and has taken egregious steps to try to bankrupt the plaintiffs and deny these children the free public school education the federal government has financed.

The DOE has engaged in this plan by asserting trumped up allegations of false billing against plaintiff BCM. Between 2004 and 2007, BCM provided 5,000 weekly sessions of special education services to more than 2,300 children and billed the DOE $25 million. Yet, on December 11, 2007, the DOE concluded that because BCM improperly billed $450 in connection with a single child over an eight-week period in 2006, BCM should be disqualified from doing business with the DOE. To date, DOE has withheld $1.4 million in reimbursements for work BCM has done between 2006 and 2007 all because of this four hundred fifty dollar oversight.

Moreover, to further support its outrageous position, in November 2007 DOE reported to the Internal Revenue Service that BCM's manager owed penalties for unpaid employment taxes in 2001 (which is being vehemently challenged) and has disparaged BCM by telling dozens of other special education providers that BCM is unfit to provide services.

The DOE's disqualification of BCM has already caused over 1,500 handicapped children to lose their special education services. But the DOE is not satisfied to merely deprive these

1,500 children with an education. They seek to deprive another 893 children of their special education by withholding more than $1,000,000 in reimbursement to plaintiffs Gross Care and Sumner merely because they share BCM's facilities and have some ownership overlap with BCM.

Under 20 U.S.C. § 1415(j) of the IDEA, this court is required during the pendency of this action to insure that children remain in their special education placements with the plaintiffs. Unless the DOE begins timely paying for the services plaintiffs provide, plaintiffs will go out of business and 893 children will be deprived of their sorely needed special education.

## STATEMENT OF FACTS

The Court is respectfully referred to the Verified Complaint dated January 8, 2008, and the Declaration of George Lebovits, dated January 8, 2008, for a full statement of the facts that form the background and basis of this action.[1] For the sake of brevity, those facts will not be repeated here.

## ARGUMENT

## POINT I

## PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED

A.  **Federal Law Mandates That Each Child Receive A Free Appropriate Public Education**

The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "Act" or the "IDEA"), "provides federal money to assist state and local agencies in educating handicapped children, and conditions such funding upon a State's compliance with extensive goals and procedures." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 179 (1982).

---

[1] References to the Declaration of George Lebovits appear as "Lebovits Decl., ¶___". References to the Verified Complaint appear as "Complaint ¶__".

The Act mandates that "all children with disabilities residing in the State between the ages of 3 and 21" be provided a "free appropriate public education" (a "FAPE"). 20 U.S.C. § 1412(a)(1)(A). The Act defines a FAPE to mean special education and related services that (1) have been provided at public expense; (2) meet the state's educational standards; (3) include preschool, elementary or secondary school education; and (4) are provided pursuant to an individualized education program created for that child. 20 U.S.C. § 1401(9). A handicapped child referred to a private agency by a public agency has all the rights of a handicapped child serviced by a public agency. *Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir. 1982).

"Chief among [the Act's] procedural safeguards is the 'opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Somoza v. Dep't of Educ.*, 475 F.Supp.2d 373, 383 (S.D.N.Y. 2007), *quoting* 20 U.S.C. §1415(b)(6)(A).

Plaintiffs are private agencies that provide special education and related services to disabled children in New York City. It has been explicitly held that such providers have standing to bring suit pursuant to the IDEA where the conduct of a state or local educational agency (i.e. the DOE) in refusing to reimburse providers such as plaintiffs threatens the IDEA's guarantee of a 'free, appropriate, public education.' *See Brooklyn School for Special Children v. Crew*, 1997 WL 539775 (S.D.N.Y. Aug. 28, 1997) (holding that under IDEA special education schools like plaintiffs had standing to sue for payments of special education services to handicapped children); *Family & Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1061 (7th Cir. 1994) ("Following the plain language of § 1415, and reading that statute as a whole, we are convinced that Congress has implicitly granted standing under the IDEA to the

limits of Article III."). As set forth in the Leibovits Declaration, there can be no doubt that the defendants' conduct threatens the FAPE of nearly 900 children and directly impacts the plaintiffs.

In the instant matter, DOE's stated intent to cease funding plaintiffs and its refusal to reimburse plaintiffs for services already provided, is actionable conduct under the IDEA. "IDEA creates an enforceable substantive guarantee to providers of a state-created system of reimbursement that provides meaningful assurance that compensation will be paid for the services they render." *Brooklyn School for Special Children*, 1997 WL 539775 at *11.

B.   **The IDEA Provides for An Automatic Preliminary Injunction In The Event A Dispute Arises**

In the event an action is commenced pursuant to Section 1415, the Act provides for the maintenance of the status quo until the matter is resolved. 20 U.S.C. § 1415(j). "Section 1415(j) contains what is known as the IDEA's 'pendent placement' or 'stay put' provision." *Cosgrove v. Bd. of Educ.*, 175 F.Supp.2d 375, 383 (N.D.N.Y. 2001). The purpose of this provision is to provide "stability and consistency in the education of a disabled child." *Arlington Cent. School Dist. v. L.P.*, 421 F.Supp.2d 692, 697 (S.D.N.Y. 2006). The provision provides in part that

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child ... until all such proceedings have been completed.

20 U.S.C. § 1415(j).

The Second Circuit has made clear that this provision acts as "an automatic preliminary injunction. The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of the hardships." *Zvi D.*, 694 F.2d at

906. *See also Gabel v. Bd. of Educ.*, 368 F.Supp.2d 313, 324 (S.D.N.Y. 2005) ("[p]endency has the effect of an automatic injunction which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."). A unilateral cut off of public funds amounts to a change in the child's educational placement and is prohibited by the Act. *Zvi D.*, 694 F.2d at 906.

As set forth in the Complaint and the Lebovits Declaration, the defendants have made clear their intention to cease funding the plaintiffs' services to 893 New York City disabled children and have refused to reimburse plaintiffs for services already provided. These actions will imminently result in the loss of statutorily required services for these children. There is already a shortage of service providers in New York City and defendants' actions will only exacerbate the situation. Should the defendants succeed, most of these children will no longer be able to receive a FAPE as mandated by the Act. This is precisely the circumstance the stay put provision was intended to alleviate. Accordingly, the Court should issue a preliminary injunction prohibiting the defendants from disqualifying plaintiffs from providing services during the present school year and ordering defendants to reimburse plaintiffs for services already provided.[2]

---

[2] Because plaintiffs are suing under federal law, and seek only injunctive relief and monetary relief as an incident of prospective injunctive relief they do not have to first file a notice of claim with any of the defendants. *Brooklyn School for Special Children*, 1997 WL 539775 at *16. Similarly, while plaintiffs do not believe they have any further recourse within the defendant agencies, even if they did, they do not have to exhaust those remedies which would be futile in light of the allegations asserted against the defendants and would cause a delay that would bankruptcy the plaintiffs and defeat the purpose for the review. *See id.* at *17; Complaint ¶ 61; Lebovits Decl., ¶ 42.

## CONCLUSION

For all of the reasons set forth above, plaintiffs respectfully request that this Court grant their motion in its entirety.

Dated: New York, New York
January 8, 2008

WACHTEL & MASYR, LLP

By: /s/ *signature*
Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
110 East 59th Street
New York, NY 10022
(212) 909-9500
*Attorneys for Plaintiffs*