UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

BROOKLYN COMMUNITY MANAGEMENT LLC,
GROSS CARE INC. and SUMNER PLACE LLC, d/b/a
SUMNER HEALTH PROVIDERS,

                                        Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
JOEL KLEIN as CHANCELLOR OF THE NEW YORK
CITY DEPARTMENT OF EDUCATION, AVA J.
MOPPER as DIRECTOR OF THE OFFICE OF
RELATED AND CONTRACTUAL SERVICES OF THE
NEW YORK CITY DEPARTMENT OF EDUCATION,
DAVID N. ROSS as EXECUTIVE DIRECTOR OF THE
DIVISION OF CONTRACTS AND PURCHASING OF
THE NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, THOMAS R.
FRIEDEN M.D. as COMMISSIONER OF THE NEW
YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, NEW YORK STATE
EDUCATION DEPARTMENT, RICHARD P. MILLS as
COMMISSIONER OF THE NEW YORK STATE
EDUCATION DEPARTMENT, NEW YORK STATE
DEPARTMENT OF HEALTH, RICHARD F. DAINES,
M.D. as COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF HEALTH,

                                        Defendants.

**DEFENDANTS'
MEMORANDUM OF LAW
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
INJUNCTIVE RELIEF**

08 CV 168 (B. S. J.)

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

        Defendants, the New York City Department of Education ("DOE"), Joel Klein as Chancellor of DOE, Ava J. Mopper as Director of The Office of Related and Contractual Services of DOE, David N. Ross as Executive Director of The Division of Contracts and Purchasing of DOE, New York City Department of Health and Mental Hygiene and Thomas R.

Frieden M.D. as Commissioner of The New York City Department of Health and Mental Hygiene, (collectively referred to as "the municipal defendants"), submit this Memorandum of Law in opposition to the plaintiffs' application for injunctive relief, specifically requiring DOE to make payments for special education Related Services allegedly provided by plaintiffs, Gross Care Inc. ("Gross Care") and Sumner Place LLC d/b/a Sumner Health Providers ("Sumner"), from January 9, 2008 until the end of the school year. Plaintiffs' application should be denied on the grounds that they have no standing to seek such relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1415(j) and have failed to meet the standard for granting a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure ("Fed.R.Civ.P.").

**STATEMENT OF FACTS**

The court is respectfully referred to the Declaration of Ava J. Mopper, dated January 17, 2008 and the exhibits thereto and the Affidavit of Christopher McKay, sworn to on January 18, 2008, for a full statement of facts. For the convenience of the Court a brief summary follows:

In accordance with federal and state law, DOE provides Special Education Related Services ("Related Services") tailored to a child's unique needs, by means of an Individualized Education Program or IEP. See Declaration of Ava J. Mopper, dated January 17, 2008 ("Mopper Dec.") at ¶ 4. Related Services include, but are not limited to, counseling, hearing education services, school health services, speech/language therapy, occupational therapy and physical therapy. Id. at ¶ 6.

DOE provides Related Services to school age students (ages 5-21) through a three tier hierarchy. Whenever possible, DOE employs its own staff to provide services to students in schools during the school day. Where DOE is unable to meet the mandate with its in-house staff,

it contracts with agencies, through the Request for Proposals ("RFP") process for the provision of Related Services. Finally, in cases when neither DOE staff nor a contracted vendor is able to provide the required services, DOE issues a Related Service Authorization ("RSA") to parents enabling them to secure the services of an appropriately licensed, independent provider at public expense. Id. at ¶ 7.

Essentially, an RSA functions as an agreement between the parent and the independent provider which allows the parent to obtain the required service from an independent provider of his or her choice. Id. at ¶12. Independent providers are not required to be employees of an agency, and providers who are not employees of an agency are paid directly by DOE. Contracted agencies may provide RSA Related Services to any student for any discipline in any district other than the district and discipline the contract covers. Id. at ¶ 14, RSAs expire at the end of the school year and are not automatically renewed. Id. at ¶15.

Through the RFP process Plaintiff, Brooklyn Community Management, LLC ("BCM") was awarded a contract with a three year term, 2004-2007, to provide speech therapy services to District 75 students in Regions 5 and 6. Additionally, its therapists were able to provide other Related Services through RSA agreements separate from of the speech therapy services it was under contract to provide in the two regions. Id. at ¶ 14

In 2007, BCM was initially considered for the award of the contract for Hearing Education Services for Citywide District 75[1] in Regions 5 and 6, however, prior to approval of a final award determination DOE received a report prepared by Richard J. Condon, Special

---

[1] Citywide District 75, consists of approximately 23,000 special needs students. Its mission is to provide appropriate standards-based educational programs with related service supports to students with moderate to severe challenges, commensurate with their abilities.

- 3 -

Commissioner of Investigation for the New York City School District ("SCI") [2] dated July 6, 2007, regarding an SCI investigation into BCM. Id. at ¶¶ 11, 16. The report, which cited billing irregularities and apparent misrepresentations by BCM, recommended that BCM "should be found to be unqualified as a vendor for the DOE." Id. at ¶ 17.

Because the 2007 contract awards were imminent, DOE determined to exclude BCM from the list of vendors submitted to the Chancellor for approval of awards for Related Service contracts, and accordingly notified all Related Services contract vendors and key DOE personnel that, until further notice, BCM was deemed ineligible to provide any services to students either as an agency or RSA provider.[3] Id. at ¶¶ 17-18.

Despite this prohibition, Mr. Lebovits the CEO of BCM, took it upon himself to, in effect, transfer many of the students who had been previously served through BCM, either in its capacity as a contract vendor or through a RSA agreements, to two other companies he manages, Gross Care and Sumner. Id. at ¶ 19. DOE extended the ineligibility determination on December 11, 2007 to include BCM's affiliates, Gross Care and Sumner. See Exhibit 7 of the Lebovits Declaration, dated January 8, 2008, "Lebovits Dec". Additionally, DOE notified BCM of its intention to audit all its contract-related billings. Id.

---

[2] The Office of the Special Commissioner of Investigation has broad authority to investigate fraud, misconduct, conflicts of interest, and other wrongdoing within the New York City School District. SCI was created pursuant to Mayoral Executive Order 11 of 1990 and Chapter 34 of the New York City Charter and operates independently of the Chancellor and the Department of Education.

[3] In Region 6, an award was made to Stivright Inc. (Hearing Education Services in English) and FTH Audiology and Speech Pathology (Hearing Education Services in Yiddish) in District 22. (Exhibit B, p. 42 of 196). Students in the other Region 6 districts, in addition to Citywide District 75 students in Region 6, can obtain Hearing Education Services from any of the other vendors awarded a contract for this discipline. Mopper Aff. At ¶ 11.

# ARGUMENT

## POINT I

### PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

**A. Plaintiffs Have No Standing To Sue Under IDEA**

The Individuals with Disabilities Education Act ("IDEA")[4] provides that a child with a disability must receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), comprising special education and related services provided at public expense, which meet the standards of the State educational agency. 20 U.S.C. § 1401(9). Such services must be administered according to an Individualized Education Program ("IEP"), "which school districts must implement each year for each student with a disability." D.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598 (2d Cir. 2005). At the State level, boards of education are required to prepare an IEP for each student with a disabling condition, setting forth the goals and objectives for the student, and the recommended educational program and related services to attain those goals and objectives. 20 U.S.C. § 1414(d).

Pursuant to 20 U.S.C. § 1415(a), any State that accepts IDEA funding "shall establish and maintain procedures in accordance with this section to ensure that *children with disabilities and their parents are guaranteed procedural safeguards* with respect to the provision of a [FAPE]." See also 20 U.S.C. 1412(a)(6). (emphasis added). Among these safeguards is a

---

[4] Congress generally amended the IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004), which took effect on July 1, 2005.

requirement that states implement an impartial administrative process to allow the filing by "any party" of complaints with state or local educational authorities. 20 USCS § 1415(b)(6).

When a complaint is filed, "the *parents* involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted… as determined by State law or by the State educational agency." Id. § 1415(f)(1) (emphasis added).  Thereafter, "any party aggrieved by the findings and decisions [of the administrative proceedings] shall have the right to bring a civil action… in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." Id. § 1415(i)(2)(A).  See also Bd. of Educ. v. Rowley, 458 U.S. 176, 182-183 (U.S. 1982)

Thus, the plain language of the statute explicitly provides disabled children and their parents with administrative remedies when a dispute arises in connection with a child's FAPE, and it is only after exhausting these remedies that the "aggrieved party" may initiate an action.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 568, (1979). ("The question of the existence of a statutory cause of action is, of course, one of statutory construction.").  In determining whether a federal statute creates an implied right of action the Supreme court has held that Congressional intent is "dispositive." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 23-24 (1979).

Here, plaintiffs have failed to make any showing that in their capacity as Related Services providers, they are entitled to benefit from IDEA's procedural safeguards and thus acquire standing under the statute.  See New York City Envtl. Justice Alliance v. Giuliani, 214 F.3d 65, 73 (2d Cir. 2000) ("The person seeking a private remedy bears the burden of demonstrating that Congress intended to make one available").  Indeed, in a recent 2d Circuit decision, the Court found that "[s]ince Congress expressly provided a private right of action in

favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under § 1415(i)(2)(A), but did not expressly provide a private right of action [under IDEA] in favor of a county, educational agency *or any other entity*,…we find it extremely unlikely that Congress intended to do so." County of Westchester v. New York, 286 F.3d 150, 152 (2d Cir. 2002). (emphasis added.). As the clearly stated purposes of IDEA are to provide children with disabilities a [FAPE] § 1400(d)(1)(A), and " to ensure that the rights of disabled children and their parents are protected." § 1400(d)(1)(B), it is apparent that Congress intended that the statute protect the rights and interests of disabled children and their parents and not the rights of private business entities such as the plaintiffs.

Plaintiffs rely heavily on this Court's holding in Brooklyn School for Special Children v. Crew, 1997 U.S. Dist. Lexis 12974 (S.D.N.Y. 1997), as the basis for asserting their standing under IDEA. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Mem.") at p. 5. However this reliance is misplaced.

The plaintiffs in Brooklyn School were twenty schools that provided special education and early intervention services to disabled infants and toddlers. *25. The Court found that the plaintiffs had standing to sue to ensure that these service providers can "challenge procedures that are or become too cumbersome or ineffective to meet the mandate of IDEA." Id. at *37. However, the aforementioned holding in County of Westchester v. New York apparently undermines Brooklyn School and implicitly repudiates it.

Moreover, plaintiffs' situation in the instant matter is easily distinguishable from that confronted by the Court in Brooklyn School. In that case, under the early intervention program then in effect, the schools were required to prepare petitions for tuition reimbursements on behalf of the parents of disabled infants and toddlers for Family Court approval. The Court

found that, because the City had established this system, it thus "gave effect to IDEA's guarantee of a FAPE," because the burden had been placed on the schools to petition for reimbursements and "removes the burden from children and their parents to initiate the petitions and maneuver through the procedural obstacles to reimbursement." Id. *37. Thus, the Court held that under these circumstances, the schools had standing under IDEA otherwise, "such a suit will not transpire until the reimbursement mechanisms have so broken down that the service providers are no longer providing services." Id. *37-*38].

Unlike the plaintiffs in Brooklyn School, BCM, Gross Care and Sumner are not special education schools seeking tuition reimbursements on behalf of the parents of disabled children. Rather, they are agencies whose therapists provide Related Services to school-age children either as a contracted vendor and/or under an RSA agreement. (Mopper Dec. at ¶ 7) Furthermore, the systemic breakdown of services cited by the Brooklyn School Court simply is not the case here, as Gross Care and Sumner only began to provide RSA related services as recently as September 2007 (Lebovits Dec. at ¶ 35, Exhibit 7) and have only generated modest billings to-date. See Affidavit of Christopher McKay at ¶ 6. Plaintiffs are no more than aggrieved providers who represent neither the children nor the parents receiving services and thus should be denied standing under IDEA. Accordingly, Plaintiff's complaint should be relegated to State Court for an Article 78 proceeding and/or breach of contract action.

**B. Plaintiffs Are Not Entitled To Injunctive Relief**

Even assuming, *arguendo,* that Plaintiffs do have standing to bring this claim under the IDEA, their assertion that the statute's "stay put provision" applies to the instant matter is wholly erroneous. Rather, this provision was intended solely to protect children from a school district's unilateral decision to change a child's placement. Andersen v. District of Columbia,

877 F.2d 1018. Indeed, the main purpose of this section is "to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." Id at 1024. As this is not the case here, plaintiffs should be held to meet the standard for granting a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure ("Rule 65"). In order to obtain such relief, the movant must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." See Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 314-15 (2d Cir. 1982); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

The Second Circuit has deemed the threshold showing of "irreparable harm" to be of particular significance under Rule 65, regardless of the strength of the movant's case on the merits. Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) ("a showing of probable irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction'") (quoting Bell & Howell: Mamiya Co. v. Masel Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983)). Thus, "irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd., 190 F. Supp. 2d 577, 581 (S.D.N.Y. 2002). The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." Id.

Here, plaintiffs seek an injunction to compel DOE to make payments to Sumner and Gross Care from January 9, 2008 to at least until the end of the school year. Moreover, their underlying Complaint (¶ 4) seeks $1.4 million dollars for monies allegedly withheld by DOE as

a result of the SCI investigation into BCM's billing discrepancies. Thus, the alleged injury is one that can be fully remedied by monetary damages and as such, plaintiffs fail to meet the minimum threshold of irreparable harm and should be denied injunctive relief.

Although plaintiffs allege that the children serviced through thier agencies' staff would be harmed if DOE is not compelled to make payments to Gross Care and Sumner, (Lebovits Dec. at¶¶ 36-37), it was Mr. Lebovits' own actions that created the very harm he now complains of to this Court. Although Mr. Lebovits was fully aware of the investigation into BCM as early as July 2007 and aware that as of August 17, 2007 BCM was prohibited from providing any Related Services in any capacity, Mr. Lebovits took it upon himself to, in effect, transfer some of the students who had been previously served through BCM, either as a contract vendor or through an RSA agreement, to Gross Care and Sumner, companies he manages. Mopper Dec. at ¶19. Rather than contacting DOE to discuss the situation, Mr. Lebovits chose to bypass the DOE entirely without any regard to the effect of the on-going investigation on his ability to provide services to students if he transferred their care to another company under his control. Id. It is clear that Gross Care and Sumner are simply surrogates for BCM. See Mopper Dec. at ¶¶ 16, 20-21. Indeed, Mr. Lebovits does not even know how many children Gross Care and Sumner are serving, and evidently considers contracts and children as equivalent. Id. at 22; See also McKay Aff. at ¶ 5.

Under these circumstances, plaintiffs should be denied equitable relief.

## CONCLUSION

For the foregoing reasons, the municipal defendants respectfully request that plaintiffs' motion for injunctive relief be denied.

Dated: New York, New York
January 17, 2008

        MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for the Municipal Defendants
100 Church Street, Room 3-102
New York, New York 10007
(212) 788-1263
By:       /S      
    SUSAN SMOLLENS (SS 0884)
    Assistant Corporation Counsel