UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKLYN COMMUNITY MANAGEMENT LLC, et al., <br><br> Plaintiffs, <br><br> - against - <br><br> NEW YORK CITY DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | Civ. A. No. 08-00168 (BSJ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................(ii)

ARGUMENT .............................................................................................................................1

POINT I .....................................................................................................................................3

    PLAINTIFFS HAVE STANDING UNDER THE IDEA........................................................3

POINT II ....................................................................................................................................7

    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION..............................7

POINT III ...................................................................................................................................9

    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
    UNDER THEIR SECTION 1983 CAUSE OF ACTION........................................................9

CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bay Shore Union Free School District v. Kain*,
485 F.3d 730 (2d Cir. 2007)......................................................................................................... 7

*Brooklyn School for Special Children v. Crew*,
1997 WL 539775 (S.D.N.Y. Aug. 28, 1997).......................................................................... 4-7, 10

*County of Westchester v. State of New York*,
286 F.3d 150 (2d Cir. 2002)..................................................................................................... 6, 7

*Domenech v. City of New York*,
919 F.Supp. 702 (S.D.N.Y. 1996) ............................................................................................. 11

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)..................................................................................................................... 9

*Family & Children's Center, Inc. v. School City of Mishawaka*,
13 F.3d 1052 (7th Cir. 1994), *cert. denied*, 513 U.S. 961 (1994)............................................... 5, 6

*Gen Elec. Co. v. New York State Dep't of Labor*,
936 F.2d 1448 (2d Cir. 1991)..................................................................................................... 10

*Mamot v. New York State Board of Regents*,
01 Civ. 0205, Jones, Barbara S., U.S.D.J.) ................................................................................. 7

*Otokoyama Co. Ltd v. Wine of Japan Import, Inc.*,
175 F.3d 266 (2d Cir. 1999)......................................................................................................... 8

*Phillip v. Fairfield University*,
118 F.3d 131 (2d Cir. 1997)......................................................................................................... 8

*Piedmont Behavioral Health Center, LLC v. Stewart*,
413 F.Supp.2d 746 (S.D.W.V. 2006)........................................................................................... 6

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*,
749 F.2d 124 (2d Cir. 1984)......................................................................................................... 8

*Travelers Int'l AG v. Trans World Airlines, Inc.*,
684 F.Supp. 1206 (S.D.N.Y 1988) .............................................................................................. 8

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989)......................................................................................................... 9

**Statutes**

F.R.C.P. 65 ................................................................................................................... 2

20 U.S.C. § 1412(12) ................................................................................................... 6

20 U.S.C. § 1415(j) ...................................................................................................... 2

42 U.S.C. § 1983 ..................................................................................................... 4, 10

Plaintiffs Brooklyn Community Management, LLC ("BCM"), Gross Care, Inc. ("Gross Care") and Sumner Health Providers ("Sumner") (collectively, "Plaintiffs"), submit this Reply Memorandum of Law in further support of their motion pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) and pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction (i) requiring the DOE to reimburse plaintiffs for special education and related services that they presently provide to New York City handicapped children pursuant to certain contracts with defendant New York City Department of Education; (ii) prohibiting the DOE from disqualifying plaintiffs from providing such services during the pendency of this proceeding; and (iii) ordering the DOE to timely fund plaintiffs for these provided services.

## ARGUMENT

The DOE's[1] opposition papers concede that even after the plaintiffs' purported disqualification on December 11, 2007, it has issued hundreds of contracts to Sumner and Gross Care to provide special education related services to New York City handicapped children. McCkay Aff., ¶ 5. Indeed, the DOE has been consistently issuing contracts to plaintiffs even as recently as January 10, 2008. See Hefter Reply Dec., Ex. B. While the DOE argues that Sumner and Gross Care are not parties to these agreements, the contracts speak for themselves. In each case, the RSA identifies either Sumner or Gross Care as the Provider's Agency and is signed by the specific therapist on behalf of his agency, Sumner or Gross Care. *Id.* Defendants do not dispute that special education related services provided pursuant to these RSAs are conducted in large part at the plaintiffs' educational facilities in Brooklyn and that all services are billed by the plaintiffs who directly receive reimbursement from the DOE. There can be no dispute that Sumner and Gross Care are contracted parties under these RSA contracts.

---

[1]   Plaintiffs do not seek a preliminary injunction against the State defendants.

1

The DOE argues that the hundreds of handicapped children currently being served by Gross Care and Sumner can find other providers, but they do not submit any affidavits from any providers who are capable of absorbing these children in the middle of the school year. Indeed, as set forth in the Hefter Reply Declaration, the DOE is contractually prohibited from compelling parents to switch providers in the middle of year. Further, as Mr. Hefter explains, the only reason the DOE issues an RSA in the first place is because the City's schools and contract providers have no capacity to provide the special services needed and therefore the parents are permitted to select their own providers. Indeed, just last week the DOE sent plaintiffs an email asking them to provide services to 290 children from various New York City special education schools that are not receiving special education related services. See Hefter Reply Declaration, Ex. D.

Further, the DOE has offered no explanation at all to justify its absurd act of disqualifying BCM, who for years had been providing special education related services to thousands of New York City handicapped children and had billed the DOE without incident in excess of $25 million, merely because of a $450 billing error concerning a single child. The DOE merely suggests that it may conduct a further audit which may uncover other problems. However, the June 2007 special investigation report upon which the DOE relies so heavily did not even recommend a further audit of BCM. *See* Lebovits Dec., Ex. 3 at 10.

In short the DOE does not make a serious effort to dispute the allegations in the Complaint that it has engaged in an absurd course of conduct to bankrupt three separate businesses that have provided special education related services to thousands of New York City handicapped children and continue to presently provide these services to hundreds of these children.

Because the DOE has no credible defense to the underlying merits of this case, it relies on procedural arguments to defeat this motion. First, it argues that plaintiffs lack standing under the IDEA. Second, it argues that the IDEA's stay put provision is inapplicable and that plaintiffs cannot satisfy the traditional preliminary injunction test. However, as set forth below, plaintiffs have standing under the IDEA, the stay put provision is applicable, and plaintiffs satisfy the traditional preliminary injunction analysis.

Further, plaintiffs may also pursue a preliminary injunction under the Third Claim for Relief in the Complaint; violation of the Takings Clause, which is actionable under 42 U.S.C. § 1983. As set forth in the Complaint and as further explained in the accompanying Hefter Reply Declaration, the DOE has engaged in a conscious policy decision that has resulted in a pattern of conduct by it to deny agencies and providers with the related serviced reimbursements they are contractually obligated to pay for. Accordingly, under this claim as well, plaintiffs are entitled to a preliminary injunction.

## POINT I

## PLAINTIFFS HAVE STANDING UNDER THE IDEA

As set forth in plaintiffs' moving papers, Judge Preska's decision in *Brooklyn School for Special Children v. Crew*, 1997 WL 539775 (S.D.N.Y. Aug. 28, 1997) ("*Brooklyn School*"), is directly on point. There, 20 special education facilities brought suit under the IDEA on behalf of parents and children who were being deprived of their free, appropriate public education because the DOE would not fund the schools' services to these children. In a well-reasoned opinion, the court held that under New York's implementation of the IDEA, providers "form an integral part of IDEA's framework . . . [and] have assumed responsibility for bringing petitions for tuition funding in the names of children they serve." *Id.* at *9.

Similarly here, plaintiffs Gross Care and Sumner operate substantial facilities at which special education related services are provided by therapists employed by the plaintiffs. Like the schools in *Brooklyn School*, plaintiffs cannot continue to provide these services if the DOE does not pay for them as it is required to do under the IDEA. And, like the schools in *Brooklyn School,* under New York's implementation of the IDEA, the plaintiffs are the ones that must petition the DOE for payment of the services they provide to these children. For unless plaintiffs are reimbursed, they cannot continue to pay the therapists that provide these services. It makes no sense to deny plaintiffs standing in order to compel more than 640 parents whose children presently receive services from plaintiffs to bring 640 separate lawsuits against the DOE.

*Brooklyn School* relied in part on the Seventh Circuit's decision in *Family & Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052 (7th Cir. 1994), *cert. denied*, 513 U.S. 961 (1994) ("*Mishakawa*"). In *Mishakawa*, a private operator of child care and group home facilities sued the local education agency pursuant to the IDEA claiming that the defendant refused to reimburse the plaintiff for rent and related expenses associated with educating disabled children at plaintiff's facilities. *Id.* 13 F.3d at 1056-7. In reversing the district court's dismissal of the complaint for lack of standing, the court held that plaintiff had both Article III standing and prudential standing to pursue its action under the IDEA. "[W]e are convinced that Congress has implicitly granted standing under the IDEA to the limits of Article III." *Id.* 13 F.3d at 1061.

Although *Brooklyn School* was brought by twenty plaintiffs, the number of aggrieved parties is irrelevant. The court's analysis of standing in *Brooklyn Community* did not turn on the number of aggrieved parties or how widespread the problem there had become. The analysis focused on the role of special education providers under the IDEA and their traditional status as

representing the handicapped children they serve. Those precise issues present themselves here as to BCM, Sumner and Gross Care and *Brooklyn School*'s holding that special education service providers have standing to sue under the IDEA should be applied here as well.

The DOE's main response to *Brooklyn School* is that it is not consistent with the Second Circuit's holding in *County of Westchester v. State of New York*, 286 F.3d 150 (2d Cir. 2002). But *County of Westchester* is distinguishable. There the Court held that State Counties that had sued New York State under a specific section of the IDEA, § 1412(12), dealing with interagency agreements between the state and municipalities, which are mechanisms to ensure coordination between the state and local educational agencies in connection with the implementation of special education services. There was no discussion at all about the risk of children losing their special education services. And, the plaintiffs there did not claim that they were suing on behalf of handicapped children.

Further, *County of Westchester* did not discuss or distinguish the Seventh Circuit's holding in *Mishakawa*, which according to the DOE, directly conflicts with the Second Circuit's holding if it were applied to a provider's right to sue under the IDEA to prevent handicapped children from losing their free, appropriate public education that is mandated by the IDEA.[2] It is highly unusual for the Second Circuit to reach a decision that supposedly directly contradicts the holding of another Circuit Court without even discussing or distinguishing the countervailing authority.

---

[2] Another case relied on by State Defendants, *Piedmont Behavioral Health Center, LLC v. Stewart*, 413 F.Supp.2d 746 (S.D.W.V. 2006), is also distinguishable, and in fact distinguished itself, from *Brooklyn School* and *Mishakawa*. In *Piedmont*, the plaintiff sued for services it had provided to a disabled child in the past. Notably, the court in its decision finding that plaintiff did not have standing under the IDEA, stated that "the plaintiffs do not contend that [the child] did not receive an adequate education or that he likely will be deprived of such an education if the court does not grant relief pursuant to the IDEA." *Piedmont*, 413 F.Supp.2d at 755. Here, however, that is <u>exactly</u> plaintiffs' claim. *Piedmont* distinguished itself from *Brooklyn School* and *Mishakawa* noting that New York and Indiana, the defendant states in those cases, had "adopted broader regulatory schemes than the IDEA requires and thus expanded IDEA's safeguards." *Piedmont*, 413 F.Supp.2d at 754 n. 2.

Finally, the issue in *Brooklyn School* was whether third parties can vindicate the claims of handicapped children. It held that special education providers could. The court in *County of Westchester* recognized children's rights to sue under the IDEA and did not at all discuss whether third parties could vindicate their rights. Accordingly, the DOE's reliance on *County of Westchester* is misplaced.[3]

The State Defendants' reliance on this Court's unpublished decision in *Mamot v. New York State Board of Regents*, 01 Civ. 0205, Jones, Barbara S., U.S.D.J., is also misplaced. In *Mamot*, the state changed certain licensing requirements governing therapists and teachers working with disabled children. The plaintiff claimed that this action which barred him from providing services to disabled children was a violation of the IDEA because it denied his services to children covered by the IDEA.

Although the *Mamot* decision has little in the way of facts, it appears that plaintiff's claim there that "children are unjustly being deprived of his professional services" was an abstract, theoretical claim and there was no reference to actual children being affected. (State Br. Appendix p. 6). To the contrary, here plaintiffs are providing services to hundreds of children who will, without doubt, be without services should DOE's scheme to shut plaintiffs down succeed.

---

[3] State Defendants also cite to a recent Second Circuit case, *Bay Shore Union Free School District v. Kain*, 485 F.3d 730 (2d Cir. 2007), for the suggestion that a court has jurisdiction to hear complaints from aggrieved parties under the IDEA only if they are "challenging an impartial due process hearing." (State Br. at 7, n. 4). However, *Bay Shore Union,* which dealt with a benefit provided to disabled children under the New York Education Law, merely stands for the unremarkable proposition that a federal court has no jurisdiction over an action brought to enforce a state law where there is no diversity between the parties or federal question at issue. *See Bay Shore Union*, 485 F.3d at 734, 736 ("This case turns entirely on a state-law issue, and as such it cannot form the basis of federal question jurisdiction. . . . We decline, however, to construe 20 U.S.C § 1415(i)(2)(A) to permit an issue of state law to be challenged in federal court independent of a federal question."). Here, however, there is a federal question involving the defendants conduct which threatens rights guaranteed to disabled children under the IDEA

# POINT II

## PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

The DOE argues that the IDEA's stay put provision is inapplicable here. However, the plain language of the statute states that during the pendency of an action under the IDEA the child's placement cannot be changed. That is the precise relief plaintiffs seek here.

However, even if the stay put provision were not applicable, plaintiffs readily satisfy the tests for a preliminary injunction. "A party seeking a preliminary injunction must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999).[4]

First, as set forth in both plaintiffs' moving and reply declarations, should a preliminary injunction not issue, plaintiffs would be forced to immediately cease operations. It is well settled that where a business is faced with financial ruin or bankruptcy and the loss of its employees and customers absent an injunction, such a loss in deemed an irreparable injury. *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125-126 (2d Cir. 1984) (the loss of "an ongoing business representing many years of effort and the livelihood of its [] owners, constitutes irreparable harm"); *Travelers Int'l AG v. Trans World Airlines, Inc.*, 684 F.Supp. 1206, 1216 (S.D.N.Y 1988) ("loss of a business constitutes irreparable injury and

---

[4] State Defendants argue that plaintiffs seek to alter the "status quo" and therefore are subject to a higher standard of "a clear or substantial showing of likelihood of success." (State Br. at 6). While plaintiffs maintain that it is DOE's conduct, which will destroy plaintiffs' businesses and threatens the free, appropriate public education of hundreds of children, that alters the status quo, the Court need not decide that question. A party meets the higher standard where it demonstrates that "extreme or very serious damage" will result from a denial of an injunction. *Phillip v. Fairfield University*, 118 F.3d 131, 133 (2d Cir. 1997). Plaintiffs' allegations with respect to the "irreparable harm" prong clearly demonstrate extreme or very serious damage absent the injunction.

thus is not compensable by a damage award"); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (threat of possible bankruptcy absent injunctive relief meets the standard for irreparable injury); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (same).

Second, the DOE has not even tried to justify its disqualification of the plaintiffs based on a single $450 billing error, or that their disqualification of the plaintiffs will deprive hundreds of children with a free, appropriate public education under the IDEA. Thus, plaintiffs have shown a likelihood of success on the merits. At a minimum, plaintiffs have demonstrated sufficiently serious questions going to the merits to make them a fair ground for litigation.

The balance of hardships tips decidedly in plaintiffs' favor. On the one hand, plaintiffs face financial ruin, the loss of their business and reputation, the loss of their therapists and students, and the loss of millions of dollars that they have spent to provide services to handicapped children that the DOE would have had to provide in the first instance. On the other hand, the DOE faces almost no hardship and is merely called upon to comply with the IDEA and to pay for services it has contracted for and which have been provided by the plaintiffs.

Finally, the public interest is better served by having more than 640 children continue with the special education related services currently being provided to them by Sumner and Gross Care than by having those services abruptly stopped. As set forth in Mr. Lebovits' moving declaration, a cessation of services will have devastating effect on these children and will not only hamper their progress but will, in may cases, cause these children to regress. This will seriously diminish the chances for these children to lead productive lives. Clearly, the public interest is better served by insuring that handicapped children receive special education related services and lead productive independent lives, rather than becoming non-productive adults that require life-long state assistance and other public help.

Accordingly, plaintiffs satisfy the preliminary injunction analysis.

## POINT III

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER THEIR SECTION 1983 CAUSE OF ACTION

Even assuming, *arguendo*, that plaintiffs lack standing under the IDEA, they may still maintain this action under their remaining Constitutional causes of action and are entitled to a preliminary injunction under these claims.

In their Third Claim for Relief, plaintiffs allege that the DOE has violated their Constitutional Rights under the Takings Clause which provides that "private property [shall not] be taken for public use without just compensation." This violation is actionable under 42 U.S.C. § 1983. Plaintiffs have alleged that the DOE has improperly withheld $2.4 million for special education related services plaintiffs have provided pursuant to contracts with the DOE. (Complaint ¶ 4, 6).[5]

In *Brooklyn School,* the court held that providers of special education services stated a claim against the DOE under the Takings Clause where the DOE refused to reimburse them for services it was obligated to pay for. 1997 WL 539775 at *14. *See also Gen Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991) ("It is well established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause.")

Further, to state a claim against the DOE, plaintiffs must allege that the acts complained of are either part of a policy or custom. "To prove the existence of a policy or custom, a plaintiff must establish one of the following: (1) a formal policy, officially promulgated or adopted by the [government agency] caused a violation of her constitutional rights; (2) an official with final

---

[5] The State Defendants briefed the potential for a preliminary injunction under Section 1983. The City Defendants did not reach the issue in their papers.

policy-making authority violated her constitutional rights;  (3) the existence of an unlawful practice by subordinate [agency employees] violated her rights, and this practice was so manifest as to imply the constructive acquiescence of policy-making officials; or (4) liability based on a failure to train or supervise, such failure amounting to "deliberate indifference" on the part of the defendants." *Domenech v. City of New York*, 919 F.Supp. 702, 709 (S.D.N.Y. 1996).

Plaintiffs have alleged that the DOE has not taken action against them merely by chance, but that this is part of a concerted and official policy by the DOE to reduce its special education related services costs.  The Complaint alleges that the DOE, through Chancellor Klein, Ava Mopper and David Ross, all of whom are senior DOE officials who have policy making decision power in connection with reimbursing related services providers, have engaged in a policy of denying reimbursement to these providers in order to reduce related services costs. Specifically, the Complaint alleges that the DOE has failed to provide special education services to more than 1500 handicapped children that had previously been served by the BCM; that it has routinely delayed reimbursement to providers for long periods of time thereby causing them enormous financial strain which leads to cutbacks in services; that the DOE is presently investigating other large New York City agencies with a goal of disqualifying or sharply curtailing their contract awards; that the 2007-2010 contract for citywide District 75 children was never awarded. (Complaint ¶¶ 2, 6, 34, 52, 55, 56).

Further, plaintiffs allege that the DOE's actions are not limited merely to BCM, Gross Care and Sumner.  Indeed, as set forth in the Hefter Reply Declaration, for the past two years, the DOE has embarked in a conscious, sustained and concerted practice to withhold substantial funds from related services providers throughout New York City thereby causing them severe financial hardship.  This has resulted in fewer services to handicapped children and the denial of

services to many other entitled children – both of which provide substantial, indeed enormous, savings to the DOE. Moreover, the withholding of funds has caused these providers to lose the employ of therapists which is yet another reason for the denial of services to handicapped children. *See* Hefter Reply Dec., ¶ 19.

Mr. Hefter further states that he knows of at least three other major New York City agencies that are experiencing these problems with the DOE, and one has recently stated to management at BCM that it is owed more than $4 million by the DOE which is causing it great financial hardship and is forcing it to cut services to handicapped children. *Id.*, ¶ 19.

Indeed, the DOE's actions here against the plaintiffs are so irrational and bizarre, it cannot be explained other than as set forth above; the DOE has embarked on a formal policy to cut back on its special education costs and thereby is harming agencies and providers by either paying late, or not paying at all based on unjustifiable grounds. As demonstrated in plaintiffs' papers, Sumner and Gross Care are presently providing special education related services pursuant to 1,250 RSAs for approximately 640 children. This has generated billings of more than $1 million for September through December 2007. If one were to extrapolate this number to the 1,500 children BCM is no longer serving because of its wrongful disqualification, it would amount to another $2 million in billing for that four month period. Extending this analysis to the entire year brings the total savings to the DOE to $9 million. Finally, when one factors in all the District 75 children, that typically require 5 sessions a week that no one is serving because the City failed to award their contract to BCM or anyone else, the savings to the DOE approach more than $20 million a year. *See* Hefter Reply Dec., ¶ 21.

In short, the DOE knows exactly what it is doing here. It has purposely unjustly disqualified the plaintiffs, and is withholding millions of dollars to plaintiffs as part of a conscious decision and policy to reduce its special education related services costs.

As set forth above, supra Point II, plaintiffs readily satisfy the traditional preliminary injunction test. Accordingly, plaintiffs' motion should be granted.

## CONCLUSION

For all of the reasons set forth above, plaintiffs respectfully request that this Court grant their motion in its entirety.

Dated: New York, New York
      January 22, 2008

                                        WACHTEL & MASYR, LLP

By: /s/ Howard Kleinhendler
                                      Howard Kleinhendler (HK 5712)
                                      David Yeger (DY 1393)
                                      110 East 59th Street
                                      New York, NY 10022
                                      (212) 909-9500
                                      *Attorneys for Plaintiffs*