Howard Kleinhendler (HK 5712)
David Yeger (DY 1393)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKLYN COMMUNITY MANAGEMENT LLC, GROSS CARE INC. and SUMNER PLACE LLC, d/b/a SUMNER HEALTH PROVIDERS,<br><br>Plaintiffs,<br><br>- against -<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, JOEL I. KLEIN as CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, AVA J. MOPPER as DIRECTOR OF THE OFFICE OF RELATED AND CONTRACTUAL SERVICES OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, DAVID N. ROSS as EXECUTIVE DIRECTOR OF THE DIVISION OF CONTRACTS AND PURCHASING OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, THOMAS R. FRIEDEN, M.D. as COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK STATE EDUCATION DEPARTMENT, RICHARD P. MILLS as COMMISSIONER OF THE NEW YORK STATE EDUCATION DEPARTMENT, NEW YORK STATE DEPARTMENT OF HEALTH, RICHARD F. DAINES, M.D. as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH,<br><br>Defendants. | Civ. A. No. 08-168 (BSJ)<br><br><br><br>**REPLY DECLARATION OF C. HANINA HEFTER IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

C. Hanina Hefter, being over the age of eighteen years, hereby declares:

1. I am a director of plaintiffs Brooklyn Community Management LLC ("BCM"), Gross Care Inc. ("Gross Care") and Sumner Health Providers ("Sumner"). I have been involved in providing special education related services to New York City children since 2003. I submit this supplemental declaration in further support of plaintiffs' motion for a preliminary injunction.

2. In this declaration I will demonstrate that Gross Care and Sumner presently provide special education related services to handicapped New York City children pursuant to over 1,250 contracts with the DOE, some dated as recently as January 10, 2008, that run until the end of this school year in June 2008. Further, the DOE's own documents confirm that the services provided by Gross Care and Sumner cannot presently be provided by the DOE, and that the DOE may not interrupt these services in the middle of the school year.

### The RSA Process

3. Handicapped children in New York City are entitled by law to receive special education related services at no charge. In the first instance, these services are provided by New York City public schools. However, the City's schools do not have the capacity to provide services to all handicapped children in need. Thus, the Department of Education (the "DOE") contracts with providers to deliver these services (the "Contract Providers"). Between 2004 and 2007, BCM was a Contract Provider. But the Contract Providers do not either have the capacity to provide service to all eligible handicapped children because there is a shortage of licensed therapists in New York City.

4.  When neither the public schools nor the Contract Providers can provide special education related services, parents of handicapped children are referred to the Related Service Authorization (the "RSA") procedure. The DOE will issue to the parent a Related Service Authorization. This initial RSA, is referred to by the DOE as RSA-1 Form, and contains the name of the child and the recommended regimen of special education that has been approved by the DOE.

5.  The RSA-1 is sent by the DOE to the parent with instructions on what steps to take to further the process. The instruction form is referred to as Related Service Authorization – Questions and Answers (the "Q&A Form"), a true copy of which is attached here as **Exhibit A**.

6.  The Q&A Form lays out important facts admitted by the DOE. First, the Q&A Form admits that the DOE does not have the capacity to service the child:

> Your child has been recommended for the Related Service listed on the enclosed form. The New York City Department of Education does not currently have staff available to provide this service. This RSA allows you to obtain this service from an Independent non-Board of Education provider of your choice at no cost to you.

*Id.* at p. 1.

7.  The Q&A Form continues by pointing out that it has enclosed a list of providers on a Registry but that the parent "may use any provider on this Registry or you may locate your own provider." *Id.* The chosen provider "must be licensed or certified by the New York State Education Department," id., and also agrees to provide the services under certain conditions. *Id.* at pg. 2. This licensure requirement is for the individual therapist, and does not apply to the agency that the therapist works for.

3

8.  Once the parent has selected a provider, the parent and provider must complete an RSA-2 Form, which identifies the child, the parent, the services to be provided and the maximum charge for those services, the name of the provider and agency providing the service and the location where the service is to be provided. The Q&A Form confirms that only the chosen provider may provide services to the child:

> Please be advised that only the Independent provider listed on the RSA-2 Form may provide service to your child. If your child is being seen at the provider's place of business you must ensure that only the independent provider you have authorized is serving your child.

*Id.* at 3.

9.  The RSA-2 Form is then returned to the DOE for approval. However, it can take weeks or even months for the DOE to return the approved RSA-2 Form to the provider. Accordingly, the DOE has agreed that if an RSA-2 Form is not returned within one week of its submission, the provider may commence providing services and will be paid retroactively once the RSA-2 Form is approved:

> Once received, all information will be reviewed. If the form is complete, within one week of your submitting the RSA-2 Form, your provider will receive written authorization for this service. Should we fail to notify you of this approval, the provider is authorized to initiate service and is assured of payment by the Board of Education if the individual has the appropriate licensure and/or certification and no conflict of interest is found to exist.

*Id.* at p. 3.

10. Notably, the DOE does not condition payment on the licensure or certification of the agency to which the provider is affiliated. In fact, a provider may work for any agency that has submitted the appropriate tax identification forms to the DOE.

4

11. Finally, the Q&A Form explains that even if service from the DOE becomes available during the school year, the child may stay with his Independent provider until the end of the school year:

> Should this service become available by the New York City Department of Education staff before your child begins receiving it from an Independent provider, the Board of Education will provide the service. If, however, your child begins receiving these services from an Independent provider, you will have the option of continuing this service with the Independent provider through the end of the school-year.

*Id.* at p. 4. Thus, the DOE itself recognizes that it is contractually barred from switching a child's provider in the middle of the school year without the parent's consent.

**Gross Care and Sumner Are Presently Working Under 1,250 DOE Contracts**

12. Presently, Gross Care and Sumner are named providers in 482 approved RSA-2 Forms which mandate services to 335 handicapped children.[1] True copies of these forms, in chronological order, are attached here as **Exhibit B.** These are unquestionably binding contracts between the DOE, Gross Care and Sumner and parents of handicapped children. Indeed, some of these RSA-2 Forms returned to Gross Care and Sumner were approved by the DOE as recently as January 10, 2008, (Ex. B), long after the DOE's supposed December 11, 2007 disqualification of BCM and "its affiliates." (See Lebovits Moving Declaration, Ex. 7.)

13. Additionally, Gross Care and Sumner have been chosen as providers by parents that have received RSA-1 Forms. Some of these RSA-1 Forms were issued as recently as last week and Gross Care and Sumner have just begun providing their children with services. So far this school year, parents of 356 handicapped children have asked Sumner

---

[1] In our moving papers we referred to 893 children receiving services. That was a reference to the number of RSA contracts, both RSA1s and RSA2s that plaintiffs were working under. However, some children require several different areas of therapy and each area requires a separate RSA. To date, Sumner and Gross care are serving approximately 640 children under more than 1,250 RSAs.

and Gross Care to provide services pursuant to 774 RSA-1 Forms, which are attached as **Exhibit C**. Even though Gross Care and Sumner are still waiting for the DOE's authorization of RSA-2 Forms they have submitted based on these RSA-1s, as set forth above, Gross Care and Sumner may provide services one week after the RSA-2 has been submitted and the DOE must pay for these services retroactive to the date of the commencement of the service.

14.  In sum, the documentary evidence proves beyond peradventure that Gross Care and Sumner are presently serving approximately 640[2] New York City handicapped children pursuant to 1,256 RSA1 and RSA2 contracts with the DOE. This number continues to increase on a daily basis as parents continue to choose Gross Care and Sumner as their providers because of their excellent facilities and dedicated therapists and health professionals.

15.  Indeed, just last week, the DOE sent plaintiffs a list of 9 special education schools which have 290 children still waiting for special education services. See **Exhibit D**. We would love to help these children if we could be assured of reimbursement from the DOE.

16.  To date, the DOE owes Gross Care and Sumner over $1,000,000 for services provided pursuant to RSAs since the beginning of this school year. Although the DOE claims that they have only received invoices for about $40,000 in services, this is incorrect. We have billed the DOE more than $300,000 in paper invoices and are in the process of electronically billing another $600,000 through electronic billing. Additionally, there are at least another $900,000 that Sumner and Gross Care have

---

[2] As set forth above, there are 335 RSA2 children and 356 RSA1 children, totaling 691 children, named on the attached RSA1 and RSA2 Forms. However, because some children services in multiple therapeutic categories, there is an overlap of children who are receiving services pursuant to both RSA2s and RSA1s.

provided but which it cannot bill until the RSA2s are approved. Sumner and Gross Care cannot continue operating under this deficit.

17. Under the IDEA, Gross Care and Sumner should be permitted to continue providing these services. In order to do that, the DOE must immediately begin paying their invoices. Otherwise, Gross Care and Sumner will be forced to stop providing services and these children will lose their free appropriate public education that is federally mandated by the IDEA. Further, Gross Care will be forced to shut their operations. Were this to happen Gross Care and Sumner could not readily recover should it prevail in this case. It will no longer be able to maintain its facilities and its reputation in the field will be irreparably damaged. Parents who have been bringing their children to Sumner and Gross care for years will have no place to go.

18. The DOE's action to disqualify the plaintiffs from providing special education related services and withholding millions of dollars in reimbursement for services already provided, all because of a $450 billing error, is part of a concerted plan and official policy by the DOE to save money on its special education related services costs. The facts speak for themselves: The DOE has purposely failed to provide special education services to more than 1500 handicapped children that had previously been served by the BCM; it has routinely delayed reimbursement to providers for long periods of time thereby causing them enormous financial strain which leads to cutbacks in services; the DOE is presently investigating other large New York City agencies with a goal of disqualifying or sharply curtailing their contract awards; the 2007-2010 contract for citywide District 75 children was never awarded.

19.  These actions are part of an official policy at the highest levels of the DOE, which, as the State Defendants admit in their papers, is responsible for the policies relating to special education related services. For the past two years, the DOE has embarked in a conscious, sustained and concerted practice to withhold substantial funds from related services providers thereby causing them severe financial hardship. This has resulted in fewer services to handicapped children and the denial of services to many other entitle children – both of which provide substantial, indeed enormous, savings to the DOE. Moreover, the withholding of funds has caused these providers to lose therapists which is yet another reason for the denial of services to handicapped children.

20.  I know of at least three other major New York City agencies that are experiencing these problems with the DOE, and one has recently stated to management at BCM that it is owed more than $4 million by the DOE which is causing it great financial hardship and is forcing it to cut services to children. I am reluctant to identify these agencies by name as I fear the DOE would seek retribution against them.

21.  Indeed, the DOE's actions here against the plaintiffs are so irrational and bizarre, it cannot be explained other than as set forth above -- the DOE wants to save money on its special education costs and thereby is harming agencies and providers by either paying late, or not paying based on some weak excuse. As demonstrated above, Sumner and Gross Care are presently providing special education related services pursuant to 1,250 RSAs for approximately 640 children. This has generated billings of nearly $1 million for September through December 2007. If one were to extrapolate this

number to the 1,500 children BCM is no longer serving because of its wrongful disqualification, it would amount to another $2 million in billing for that four month period. Extending this analysis to the entire year brings the total savings to the DOE to $9 million. Finally, when one factors in all the District 75 children, that typically require 5 sessions a week that no one is serving because the City failed to award their contract to BCM or anyone else, the savings to the DOE approach more than $20 million a year.

22. In short, the DOE knows exactly what it is doing here. It purposely disqualified plaintiffs and is withholding millions of dollars to that is owed to them as part of a policy and conscious decision to save money on its special education related services costs.

I declare, under the penalties of perjury, that the foregoing is true.

Dated: New York, New York
January 22, 2008

_____
C. Hanina Hefter



**The New York City Department of Education**
JOEL I. KLEIN, Chancellor

Marcia V. Lyles, Ed.D., Regional Superintendent
Instructional Leadership Division 8

131 Livingston Street, Brooklyn, New York 11201

Elaine Gorcberg
Deputy Regional Superintendent

Region 8
Joyce Henderson
Lead Regional Administrator, Sp. Ed
718-935-4523 - FAX 718-935-4469

Deborah Guffey-Jackson
OSE Chairperson
718 - 935-4322

## RELATED SERVICE AUTHORIZATION
### Questions and Answers

**What is a Related Service Authorization (RSA)?**
Your child has been recommended for the Related Service listed on the enclosed form. The New York City Department of Education does not currently have staff available to provide this service. The RSA allows you to obtain this service from an independent non-Board of Education provider of your choice at no cost to you.

**How can I locate an independent non-Board of Education provider?**
To help you locate a provider, we have enclosed a **Registry of Independent Providers of Related Services (RSA-5 Form)**. You may use any provider on this **Registry** or you may locate your own provider. If you require assistance in locating a provider please telephone our REGION at 718 935-4900. Please remember the following, when choosing a provider they must possess the following credentials:

- They must be licensed or certified by New York State Education Department to provide the Related Service recommended.
- They must meet established bilingual proficiency requirements, where applicable.

Counseling Services must be provided by a New York State licensed psychologist, or certified social worker.

Occupational Therapy must be provided by a New York State licensed Occupational Therapist.

Physical Therapy must be provided by a New York State licensed Physical Therapist.

Speech Therapy Services must be provided by a New York State licensed Speech/Language Pathologist, who is also a Certified Teacher of the Speech and Hearing Handicapped or who agrees to submit an Application for Employment of Uncertified Teacher to the State Education Department with the cost of such an application to be incurred by the individual. Bilingual Speech Therapy Services can only be provided by an individual meeting the aforementioned requirements and who possesses a New York State Bilingual Extension Certificate.

Vision Education Services must only be provided by a New York State licensed or certified Teacher of the Blind and Partially Sighted or certified Orientation/Mobility Specialist. Bilingual Vision Education Services can only be provided by an individual meeting the aforementioned requirements and who possesses a New York State Bilingual Extension Certificate.

Hearing Education Services must only be provided by a New York State licensed or certified Teacher of the Deaf and Hard of Hearing; or an appropriately trained, licensed or certified Sign Language Interpreter. Bilingual Hearing Education Services can only be provided by an individual meeting the aforementioned requirements and who possesses a New York State Bilingual Extension Certificate.

Health Services by a Registered Nurse must only be provided by a New York State licensed or certified Registered Nurse; or appropriately trained, licensed or certified Health Aide.

In addition, when choosing a provider they must agree to the following:

- To charge the New York City Department of Education no more than the maximum rate listed below. This rate is for direct service only and is the rate regardless of the size of the group being served.
- Provide the service at the frequency, duration and in the language specified by the Board of Education as per the most current IEP. Providers must obtain a copy of the student's IEP from the parent or the CSE.
- Be available to attend the IEP conference and/or complete the appropriate pages of the IEP upon request, at no additional cost.
- Provide services in accordance with the New York City Department of Education school calendar.
- Provide make-up sessions only during the same week. Make-up sessions, may not, however, be conducted on the same day as a regular session.
- That they are not to be a current or former employee (for one year) of the Board of Education or any other New York City agency.
- They are not the evaluator who completed the assessment unless permission has been granted by Office of Related and Contractual Services.
- Receive security clearance, as a result of fingerprinting, with the cost to be incurred by the provider.
- Request no more than the maximum rate allowed as payment in full for these services.
- Make no requests to the parent/guardian for payments for services rendered.
- Maintain daily attendance records on the official Board of Education attendance card and participate in the collection of data or information requested by New York State or city agencies at no additional cost to the Board of Education in order for the Board of Education to receive Medicaid reimbursement.

**What are the maximum rates allowed by the New York City Department of Education for independent non-Board of Education providers?**

| Type of Related Service | Maximum Rate | Session Length |
|---|---|---|
| Counseling (with a Psychologist) | $45 | 30 minutes |
| Counseling (with a Social Worker) | $40 | 30 minutes |
| Health (with a Registered Nurse) | $45 | 30 minutes |
| Health (with a Health Aide) | $20 | 60 minutes |
| Hearing Education Services | $45 | 30 minutes |
| Sign Language Interpreter | $30 | 30 minutes |
| Occupational Therapy | $45 | 30 minutes |
| Physical Therapy | $45 | 30 minutes |
| Speech Therapy | $45 | 30 minutes |
| Vision Education Services | $45 | 30 minutes |

2

| Orientation/Mobility Specialist | $45 | 30 minutes |

The rate charged by independent providers must be no higher than the lowest rate normally charged by them, and should be pro-rated, as necessary.

**What am I required to do once I have selected a provider?**
You and the selected independent provider must complete the RSA-2 Form, then both of you must sign the form and attach a copy of the provider's license or certificate. You should keep a copy of the independent provider's license or certificate. Please be advised that only the independent provider listed on the RSA-2 Form may provide service to your child. If your child is being seen at the provider's place of business you must ensure that only the independent provider you have authorized is serving your child. The completed RSA-2 Form must be submitted to:

    Tina Arbetinos or JoAnn Sutton
    RELATED SERVICE UNIT
    COMMITTEE ON SPECIAL EDUCATION
    131 LIVINGSTON STREET  RM #406
    BROOKLYN N.Y. 11201

**After I have submitted the RSA-2 Form, when can the provider begin?**
Once received, all information will be reviewed. If the form is complete, within one week of your submitting the RSA-2 Form, your provider will receive written authorization for this service. Should we fail to notify you of this approval, the provider is authorized to initiate service and is assured of payment by the Board of Education if the individual has the appropriate licensure and/or certification and no conflict of interest is found to exist. The provider must also return the RSA-2 form which will indicate the exact date of initiation or termination of service. Only the independent provider listed on the RSA-2 Form is authorized to provide services. If there is a change in independent provider, a new RSA-2 Form must be submitted. The independent provider you have selected must present himself/herself for fingerprinting, with the cost to be incurred by the provider, to the Office of Related and Contractual Services, 52 Chambers Street, Room 216, New York, NY. Independent providers will not be authorized to initiate services until such time as security clearance is received.

**Where can the Related Service be provided?**
At your child's school, at your home or at the provider's place of business.

**Can I be reimbursed for my transportation costs if I take my child to the provider's place of business?**
Yes, as follows:

1. Public Transportation:      $1.50 per fare on bus and/or subway.
2. Private Car:                Prevailing allowable mileage rate set by the IRS currently at $.28 per mile.
3. Metered Taxicab:            Metered taxi cab rate and reasonable tip.*
4. Private Car Service:        Parents and/or private car services will be reimbursed for car service taken to and from the student's mandated Related Services only using the private car service rate and reasonable tip.* (Please see guidelines for private car service.) This includes modes of transportation required for physically disabled students. If that type of vehicle has an established Medicaid rate, their charge shall not exceed that rate.*

3

\* Maximum of $50 per round-trip.

All requests for transportation reimbursement must be made on the enclosed RSA-3 or RSA-3A Form Transportation Reimbursement Voucher. The independent provider must provide you with a copy of the approved RSA-2 form and bill for services or a statement indicating the dates of service, which must be attached to the RSA-3 or RSA-3a Form along with the required receipts from the transportation provider. In all cases, no payment will be processed without the approved original authorizing signatures on all the required forms. You must sign the RSA-3 or RSA-3a Forms indicating the actual dates your child was transported. Under no circumstances should you sign blank RSA-3 or RSA-3a Forms or sign for transportation services not as yet provided.

How will the provider be paid?

When the provider receives written authorization to provide this service, they will also receive information on how and to whom to submit their invoices. All invoices must be submitted on the designated form. The original must be sent to the Bureau of Contract Aid. No out-of-pocket expenses are to be paid by you. The provider may not charge more than the maximum rate allowed as payment in full for these services. The provider will make no requests to the parent/guardian for payments for services provided if the service is provided at your home or the provider's office you must sign the provider's invoice indicating the actual dates your child received the services. You must not sign blank invoices or sign for sessions not as yet provided.

Is the provider required to write IEPs or Student Progress Reports?

The provider will be required to maintain daily attendance records on the form designated by the New York City Department of Education for this purpose, weekly progress notes for the service provided, and to complete a Related Service Student Progress Report when requested by school staff or the Committee on Special Education. In addition, upon request for an Annual Review and/or if there is a Requested Review, the provider must be available to attend the IEP conference and to complete the appropriate pages of the IEP at no additional cost. Progress reports must be submitted annually.

What if the Related Service becomes available by New York City Department of Education staff?

Should this service become available by New York City Department of Education staff before your child begins receiving it from an independent provider, the Board of Education will provide the service. If, however, your child begins receiving this service from an independent provider, you will have the option of continuing this service with the independent provider through the end of the school-year.

Who can I call for assistance?

If assistance is needed to understand these forms or to locate an independent provider, please telephone our REGION at (718) 935-3459 OR 935-3773